## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PROTECT DEMOCRACY PROJECT,
2020 Pennsylvania Ave., NW, Ste. 163
Washington, D.C. 20006

        Plaintiff,

    v.

U.S. OFFICE OF MANAGEMENT & BUDGET
725 17th Street, NW
Washington, D.C. 20503

and

RUSSELL T. VOUGHT, *Director of the U.S. Office of Management and Budget*
725 17th Street, NW
Washington, D.C. 20503

        Defendants.

Civil Action No. _____

**COMPLAINT**

## <u>INTRODUCTION</u>

1.    This case raises simple, but fundamental, principles of the rule of law. Under our Constitution, Congress makes the laws, U.S. CONST. art. I, § 1, and the executive branch must faithfully execute those laws, *id.* art. II, § 3. Congress's legislative powers are at their apex on matters of the public fisc, as the Constitution "exclusively grants the power of the purse to Congress, not the President." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018) (citing U.S. CONST. art. I, § 9, cl. 7).

2.    In 2022 and 2023, Congress enacted laws to safeguard its constitutional power of the purse. Congress mandated through these laws that the U.S. Office of Management and

Budget (OMB) make public a critical part of its implementation of appropriations laws: the apportionment of congressionally appropriated funds. Specifically, Congress required OMB to implement an "automated system" for posting apportionment documents and related information on a publicly accessible website in a format that facilitates public use.

3.      Congress mandated prompt transparency for apportionments to prevent abuses of power and strengthen Congress's and the public's oversight of the spending process. Absent this transparency, the president and OMB may abuse their authority over the apportionment of federal funds without public or congressional scrutiny or accountability.

4.      OMB complied with its statutory mandates from July 2022 through March 24, 2025. Plaintiff Protect Democracy Project was at the forefront of utilizing the information made available for the public's benefit, creating a user-friendly website known as "OpenOMB" that displayed the apportionment information in an interactive format to help the public track and understand the government's spending activities.

5.      On March 24, Defendants OMB and Director Russell Vought decided that they no longer wished to comply with the law. The required apportionments website went dark, without explanation. Five days later, Defendant Vought notified Congress that OMB would no longer carry out its statutory duties, citing vague and unsubstantiated concerns about disclosing "deliberative" information and risking "national security."

6.      Protect Democracy files this action to require Defendants to comply with their legal duties, and to enable Protect Democracy to resume informing the public about whether its money is being spent in a manner that our elected leaders have required.

**JURISDICTION AND VENUE**

7.    This Court has jurisdiction under 28 U.S.C. § 1331 because the claims arise under

the Constitution and laws of the United States; 28 U.S.C. § 1346(a)(2) because Defendants are a

United States agency and official; and 28 U.S.C. § 1361 to the extent that it seeks a remedy in

the nature of mandamus.

8.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1) because

OMB is an agency of the United States.

**PARTIES**

9.    Plaintiff Protect Democracy Project ("Protect Democracy") is a nonpartisan,

nonprofit organization whose mission is to prevent American democracy from declining into a

more authoritarian form of government. Protect Democracy engages in public education about

threats to democratic norms and institutions and how the American people can best confront

them. It advances its mission through research, analysis, technology, and litigation to stand up

for free and fair elections, the rule of law, fact-based debate, and a better democracy for future

generations. *See* Protect Democracy, *About Us,* https://protectdemocracy.org/about/ (last visited

Apr. 8, 2025).

10.    Part of Protect Democracy's work promoting checks and balances and the

constitutional separation of powers includes efforts to support Congress's power of the purse, a

critical check against abuses of executive authority. For example, Protect Democracy recently

published an extensive report correcting mischaracterizations of the history of presidential

impoundments. *See* Protect Democracy, *The Myth of Presidential Impoundment Power* (Mar.

2025), protectdemocracy.org/impoundment-myth; *see also* Protect Democracy, *Checking*

*Presidential Impoundment of Federal Funds* (Jan. 30, 2025), https://tinyurl.com/yc8hcpxw

(collecting more of Protect Democracy's relevant work).

11.     As described in more detail below, in October 2024, Protect Democracy launched

OpenOMB, which—until OMB ceased operating its public apportionment website—drew on

files OMB posted on its website as required by statute. Protect Democracy displayed them in a

user-friendly, interactive format to help Congress, the press, and the public better track and

understand apportionments. *See About OpenOMB,* OpenOMB.org/about (last visited Apr. 10,

2025).

12.     Defendant OMB is a federal agency with responsibility for government-wide

financial management policies for executive agencies and numerous financial management

functions. *See* 31 U.S.C. §§ 503(a), 504. It is part of the Executive Office of the President, *id.* §

501, and maintains a headquarters in Washington, D.C.

13.     Defendant Russel T. Vought is the Director of OMB and is sued in his official

capacity.

## BACKGROUND AND FACTUAL ALLEGATIONS

### The "Apportionment" Process

14.     The Constitution grants the power of the purse to Congress, stating that "[n]o

money shall be drawn from the Treasury, but in consequence of appropriations made by law."

U.S. CONST. art. I, § 9, cl. 7; *see, e.g.*, *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S.

416, 420 (2024) ("Our Constitution gives Congress control over the public fisc.").[1]

15.     To protect and enforce this power, Congress passed two related statutes: the

Antideficiency Act and the Impoundment Control Act. The Antideficiency Act, enacted in 1870,

---

[1] Separating the power of the purse from the executive power is foundational to the
Constitution's separation of powers. *See* 2 The Debates in the Several State Conventions on the

prohibits agencies from obligating funds in excess of the amounts appropriated by Congress. 31 U.S.C. §§ 1341, 1349, 1511-19. On the other side of the equation, the Impoundment Control Act ensures that the president *must* spend funds that Congress appropriated for particular purposes. The Impoundment Control Act permits the president to "defer" (*i.e.*, delay) obligating or expending funds only in limited circumstances pursuant to a process prescribed by Congress. 2 U.S.C. §§ 682, 684. The Act also allows the president to *propose* to Congress that funds be permanently rescinded; the Act does not allow the President to do so unilaterally. *Id.* § 683.

16.     To ensure agencies spend no more than Congress has appropriated, the Antideficiency Act "established a new administrative process"—called "apportionment"—that "requires that budget authority provided to federal agencies in appropriations acts be allocated in installments, rather than all at once." Cong. Rsch. Serv., R46240, *Introduction to the Federal Budget Process* 28 (2023), https://www.congress.gov/crs-product/R46240; *see* 31 U.S.C. §§ 1512-13. Apportioning funds in such installments promotes prudent spending by the executive by "prevent[ing] obligation or expenditure at a rate that would indicate a necessity for a deficiency or supplemental appropriation." 31 U.S.C. § 1512(a).

17.     The Antideficiency Act requires the president to apportion appropriations for federal agencies. *Id*. § 1513(b).

18.     An individual apportionment is a "legally binding" plan that sets the rate of agency expenditure. OMB Circular No. A-11, § 120.1 (2024), https://tinyurl.com/5n8kab4w. "It typically limits the obligations [an agency] may incur for specified time periods, programs,

---

Adoption of the Federal Constitution 349 (Jonathan Elliot ed., 1836), https://tinyurl.com/3tnneueu (Hamilton averring that "[w]here the purse is lodged in one branch, and the sword in another, there can be no danger"); The Federalist No. 58, https://tinyurl.com/5t3kwd6d (Madison describing Congress's power of the purse as "that powerful instrument" for "reducing. . . all the overgrown prerogatives of the other branches of the government").

activities, projects, objects, or any combination thereof." *Id.* Or put simply, apportionments specify what appropriated funds an agency may spend as well as when and on what the agency may spend them.

19.    In requiring the president to apportion appropriations for federal agencies, Congress provided that the president "shall apportion in writing" appropriations "available to" federal agencies and "shall notify" agency heads of the apportionment "action taken" within timelines set forth in statute. 31 U.S.C. § 1513(b).

20.    By statute, federal expenditures that exceed an apportionment are not only prohibited, but also subject the responsible federal officers and employees to administrative discipline and criminal liability. *See id*. §§ 1517(a)(1) (federal officers and employees are prohibited from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding . . . an apportionment"), 1518 (violators of § 1517(a) "shall be subject to appropriate administrative discipline"), 1519 (knowing and willful violators of § 1517(a) "shall be fined not more than $5,000, imprisoned for not more than 2 years, or both"). This liability extends to violations of conditions set forth in certain footnotes provided by OMB in issuing apportionments (known as "A" footnotes), which may describe further legal requirements related to the use of apportioned funds. OMB Circular No. A-11, § 120.34.

21.    The president has delegated his apportionment authority to the OMB Director, and the OMB Director has further delegated the authority to other OMB officials. Prior to the first Trump Administration, such authority was delegated to Deputy Associate Directors, senior career officials within OMB. *See* Project 2025, Heritage Found., *Mandate for Leadership: The Conservative Promise* 45 (2023), https://tinyurl.com/mryu9k4h. In the first Trump Administration, apportionment authority was re-delegated to Program Associate Directors

(PADs), political appointees within OMB. *Id.* During the Biden Administration, the authority was restored to OMB career officials. 87 Fed. Reg. 19138 (Apr. 1, 2022). Most recently, Defendant Vought re-delegated apportionment authority to OMB's political appointees (*i.e.*, the PADs). 90 Fed. Reg. 9737 (Feb. 18, 2025).

22.    In his chapter of Project 2025's *Mandate for Leadership* outlining policy changes for a future Trump Administration's OMB, Defendant Vought described the change in apportionment authority from career to political officials as "open[ing] wide vistas of oversight that had escaped the attention of policy officials." *Mandate for Leadership*, *supra*, at 45. And he recommended that a future Trump Administration avoid choosing an OMB Director "who is unwilling to restore apportionment decision-making to the PADs' personal review, who is not aggressive in wielding the tool on behalf of the President's agenda, or who is unable to defend the power against attacks from Congress." *Id.*

### Apportionment Transparency

23.    Administrations of both parties have been criticized for abusing the apportionment process. By not apportioning funds that the president does not want agencies to spend for policy reasons, the president and OMB can delay or preclude agencies from using funds that Congress appropriated for particular purposes.

24.    President Roosevelt used apportionments during World War II to halt funding for programs that Congress had enacted into law but that the president deemed non-essential to the war effort. These allegedly illegal impoundments drew objections from Congress and the public alike. *See, e.g.*, *First Supplemental National Defense Appropriation Bill for 1944: Hearings on H.R. 3598 Before a Subcomm. of the S. Comm. on Appropriations,* 78th Cong. 336-42 (1943), https://tinyurl.com/3dmav2uk; *Departments of State, Justice, and Commerce Appropriation Bill*

*for 1944: Preliminary Hearings Before the Subcomm. of the S. Comm. on Appropriations*, 78th

Cong. 56-61 (1943), https://tinyurl.com/53xnnc32; J.D. Williams, *The Impounding of Funds by*

*the Bureau of the Budget* (1955) (Inter-University Case Program, Case Series No. 28), *in*

*Executive Impoundment of Appropriated Funds: Hearings Before the Subcomm. on Separation*

*of Powers of the S. Comm. on the Judiciary*, 92d Cong. 378-94 (1971),

https://tinyurl.com/5vyd9h8b. President Nixon used apportionments, among other tools, to

impound funds for an array of domestic programs, *see, e.g.*, Letter from OMB Director Roy Ash

to Sen. Spiro Agnew, President of the Senate (Feb. 5, 1973), *in* 119 Cong. Rec. S3282-86,

https://tinyurl.com/m423hnfc, leading to extensive litigation and the passage of the

Impoundment Control Act. *See, e.g.*, *Berends v. Butz*, 357 F. Supp. 143 (D. Minn. 1973) (noting

OMB apportionment's cap on funds available to the Department of Agriculture); Congressional

Budget & Impoundment Control Act of 1974, Pub. L. No. 93-344, tit. X, § 1002, 88 Stat. 297,

332 (1974) (amending the Antideficiency Act to narrow the circumstances in which

apportionments may be used to hold appropriated funds in reserve, and requiring that reserves be

reported to Congress); *see also* 31 U.S.C. § 1512. And more recently, in 2019, President Trump

used the apportionment process to withhold military aid to Ukraine, an action the Government

Accountability Office (GAO) determined violated the Impoundment Control Act. GAO, B-

331564, *Office of Management and Budget—Withholding of Ukraine Security Assistance* (Jan.

16, 2020), https://tinyurl.com/nhea99ck.

     25.    In March 2022, as part of the Fiscal Year 2022 Consolidated Appropriations Act,

Congress enacted new legislation requiring OMB to make apportionments public. Congress

directed that:

> Not later than 120 days after the date of enactment of this Act, the Office of
> Management and Budget shall complete implementation of an automated system

to post each document apportioning an appropriation, pursuant to section 1513(b) of title 31, United States Code, including any associated footnotes, in a format that qualifies each such document as an Open Government Data Asset (as defined in section 3502 of title 44, United States Code), not later than 2 business days after the date of approval of such apportionment, and shall place on such website each document apportioning an appropriation, pursuant to such section 1513(b), including any associated footnotes, already approved the current fiscal year, and shall report the date of completion of such requirements to the Committees on Appropriations and the Budget of the House of Representatives and Senate.

Each document apportioning an appropriation pursuant to section 1513(b) of title 31, United States Code, that is posted on a publicly accessible website pursuant to such section shall also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts: Provided, That the Office of Management and Budget or the applicable department or agency shall make available classified documentation referenced in any apportionment at the request of the chair or ranking member of any appropriate congressional committee or subcommittee.

Pub. L. No. 117-103, div. E, tit. II, § 204(b)-(c), 136 Stat. 49, 256-57 (2022) (codified at 31 U.S.C. § 1513 note) (hereinafter "2022 Appropriations Act").

26.     The "Open Government Data Asset" format required by § 204(b) is defined as "a public data asset that is—(A) machine-readable; (B) available (or could be made available) in an open format; (C) not encumbered by restrictions, other than intellectual property rights, including under titles 17 and 35, that would impede the use or reuse of such asset; and (D) based on an underlying open standard that is maintained by a standards organization." 44 U.S.C. § 3502. This definition was enacted as part of the Open, Public, Electronic, and Necessary Government Data Act or the ''OPEN Government Data Act," Pub. L. No. 115-435, tit. II, 132 Stat. 5529, 5534-35 (2019), which "establishe[d] a default of openness, meaning government data should be available to and usable by the public to the greatest extent possible," H.R. Rep. No. 115-411, at 12 (2017), https://tinyurl.com/4jysd2e6.

27.     Representative Rosa DeLauro, then Chairwoman of the House Appropriations Committee, released a division-by-division summary of the 2022 Appropriations Act that lists

the apportionment transparency provisions among other "Important Policy Changes" that "[s]trengthen[] our democracy" by "mak[ing] apportionments of appropriations publicly available in a timely manner." Chair Rosa DeLauro, H.R. 2471, *Funding for the People: Division-by-Division Summary of Appropriations Provisions* 18, https://tinyurl.com/bdf447pj (last visited Apr. 9, 2025).

28.     In December 2022, Congress made the requirements imposed by the 2022 Appropriations Act permanent.

29.     Specifically, in the Consolidated Appropriations Act of 2023, Congress directed that,"[i]n fiscal year 2023 and each fiscal year thereafter," OMB "shall operate and maintain the automated system required to be implemented by section 204 of the [2022 Appropriations Act]." Pub. L. No. 117-328, div. E, tit. II., § 204, 136 Stat. 4459, 4667 (2022) (codified at 31 U.S.C. § 1513 note) (hereinafter "2023 Appropriations Act"). Congress further directed that OMB "shall continue to post each document apportioning an appropriation" (including "any associated footnotes") in the format and subject to the requirements specified in the 2022 Appropriations Act. *Id.*

30.     In July 2022, in compliance with the law, OMB began making apportionments public at https://apportionment-public.max.gov. *See* Press Release, Protect Democracy, *OMB Implements Apportionment Transparency Program, a Key Pro-Democracy Reform* (July 13, 2022), https://tinyurl.com/4e3d8kxd.

**Protect Democracy Launches OpenOMB**

31.     After OMB launched its public apportionment website, Protect Democracy organized and led a virtual training for congressional staff in October 2022 on "how to read apportionments, navigate and use OMB's website, and find the apportionments associated with a

particular appropriation or Treasury account." *See* Protect Democracy, *Experts Explain How to Read Apportionments and Navigate OMB's New Apportionment Website*, YouTube (Oct. 17, 2022), https://tinyurl.com/yd6urbxe. Protect Democracy made a recording of the training and other resources for Congress available online. *See Using OMB's Apportionment Website: Resources for Congress*, Protect Democracy (Nov. 3, 2022), https://tinyurl.com/297a79m2.

32.    In May 2024, the Princeton Initiative on Restoring the Constitutional Powers of Congress published recommendations from leading experts to "improv[e] transparency and accountability to Congress." Princeton Initiative, *The Power of the Purse* 1 (May 2024), https://tinyurl.com/3av4dbdx. The group applauded the recently passed apportionment transparency requirement, but described the OMB website as "unnecessarily difficult to navigate" because it provided links to apportionment documents organized by agency and by Treasury Appropriation Fund Symbol, "which may not be easily recognized as programs of interest by members of Congress, staff members, or members of the public." *Id.* at 5. The report also noted that "[r]eviewing information from the website also requires downloading discrete data files rather than allowing users to interact with the information directly online." *Id.* The group's recommendations to improve the website included using titles that reflect program names, identifying apportionment footnotes clearly, and identifying changes in apportionments for the same program or activity over the course of the year. *Id.*

33.    In October 2024, Protect Democracy launched OpenOMB.org ("OpenOMB"). *See* Protect Democracy (@protctdemocracy), X (Oct. 2, 2024, 10:55 PM), https://tinyurl.com/4a7rvzea; William Ford, *et al.*, *Is the president following the law when it comes to spending?*, If You Can Keep It (Oct. 2, 2024), https://tinyurl.com/2j6k4v6e. OpenOMB

11

aims to make oversight of OMB's apportionments easier for Congress, the press, and the public. *See About OpenOMB*, *supra*.

34.    OpenOMB "uses a simple process to provide easier access to apportionment files. Each day, OpenOMB pulls the primary source data from OMB's site and stores the files in a database in a manner that allows them to be searched, filtered, and indexed. OpenOMB's search function then provides a means to query that database, searching for information in and across apportionments. The site is, in short, a user-friendly interface that provides access to a store of primary source data that is updated daily and contains searchable and well-organized files." *See* Ford, *et al.*, *supra*.

35.    OpenOMB has a wide range of users beyond Protect Democracy, including Congress, litigants, journalists, public policy organizations, academics, libraries, budget experts, and the Wikipedia community. For example:

a.    Congressional appropriators have stated in press releases that they monitor OpenOMB to identify apportionment abuses. *See* Fact Sheet, House Appropriations Committee Democrats, Background on Unlawful Impoundment in President Trump's Executive Orders (Jan. 29, 2025), https://tinyurl.com/5ce9tuhf ("Nevertheless, we will be monitoring OpenOMB.org. . . .").

b.    Litigants have cited OpenOMB's apportionment information. *See, e.g.*, Mem. Of Law in Supp. of Pls.' Renewed Mot. for a TRO at 36, *AFL-CIO, et al. v. Dep't of Labor et al.*, No. 25-cv-00339 (Feb. 12, 2025), ECF No. 29-1, https://tinyurl.com/2s48d7hn (citing OpenOMB); Mem. In Supp. of Pl.'s Mot. For Prelim. Inj. At 2, *Citizens for Responsibility & Ethics in Wash. V. U.S. DOGE*

*Service, et al.*, No. 25-cv-00511 (Feb. 20, 2025), ECF No. 2-1,

https://tinyurl.com/3bt8667p (same).

c.  Journalists have used OpenOMB as a source in their news reporting. *See*

Aleksandra Wrona, *Exploring DOGE's creation, legality and purpose*, Yahoo

News (Mar. 27, 2025), https://tinyurl.com/32czhcpj (same); Paul Krawzak, *White*

*House scraps public spending database*, Roll Call (Mar. 24, 2025),

https://tinyurl.com/54zaeye6 (same).

d.  Public policy organizations have cited OpenOMB information in issue briefs. *See,*

*e.g.*, Citizens for Responsibility & Ethics in Washington, *Key Concepts Related to*

*the Impoundment Control Act of 1974* (Jan. 2025), https://tinyurl.com/24bn7k6j;

Governing for Impact, *Challenging DOGE* (Feb. 2025),

https://tinyurl.com/592euzkz.

e.  Academics have recognized that the apportionment transparency laws have

"enabl[ed] a number of good government groups to better track spending at sites

like openomb.org." *See* Matthew B. Lawrence, *Secret Conditions Move from*

*DOGE to OMB*, Yale J. Reg. (Apr. 3, 2025), https://tinyurl.com/278erknm.

f.  Libraries have shared OpenOMB as a resource to help the communities they serve

understand developments in government. *See* John M. Pfau Library, *U.S.*

*Government Information: Archived and Alternative Sources, Tracking Tools*, Cal.

State Univ., San Bernardino, https://tinyurl.com/mwb3ht8m (last visited Apr. 10,

2025) (listing OpenOMB as the resource for tracking apportionments); The

Library, *U.S. Government Information: Trump Trackers*, UC San Diego,

https://tinyurl.com/2p99bz8n (last visited Apr. 10, 2025) (same).

g. Budget experts have highlighted OpenOMB as a tool to "help track" apportionments and potential spending abuses. *See* Bobby Kogan (@bbkogan.bsky.social), BlueSky (Feb. 21, 2025, 3:20 PM), https://tinyurl.com/knjkvh38.

h. Wikipedia entries cite OpenOMB as an external link. *See, e.g.*, Wikipedia, *Apportionment (OMB)*, https://tinyurl.com/4fp2yjdh (last visited Apr. 10, 2025); Wikipedia, *Centers for Medicare & Medicaid Services*, https://tinyurl.com/327w32ba (last visited Apr. 10, 2025).

**The Trump Administration's Intent to Impound Funds**

36.    During the 2024 presidential campaign, then-candidate Trump openly stated that he intended to impound appropriated funds if elected. In a campaign statement, he claimed that: "For 200 years under our system of government, it was undisputed that the President had the Constitutional power to stop unnecessary spending through what is known as Impoundment." Donald J. Trump, *Using Impoundment to Cut Waste, Stop Inflation, and Crush the Deep State*, Agenda47 (June 20, 2023), https://tinyurl.com/2n4nu6mj. He made clear that, if elected, he would "use the president's long-recognized Impoundment Power." *Id.*

37.    After the election, Defendant Vought left little doubt that the incoming Administration would follow through on the president's intent to impound funds. At his confirmation hearing, when asked to disclaim any intention to violate the Impoundment Control Act, Vought responded that "the President has run on that issue" and "believes [the Impoundment Control Act is] unconstitutional." Russell Vought Confirmation Hearing, https://tinyurl.com/wreyh37d (last visited Apr. 12, 2025). Vought reiterated the claim that "[f]or

200 years, presidents had the ability to spend less than an appropriation . . ." *Id*; *but see The Myth of Presidential Impoundment Power, supra.*

38.    The laws requiring transparency for apportionments make it more difficult for the executive branch to impound funds unlawfully outside the view of Congress and the public.

**OMB's Failure to Follow the Law**

39.    OMB made apportionments public as required by law until March 24, 2025, when the website began showing a "page not found" error. *See* Cong. Rsch. Serv., *Office of Management and Budget (OMB) Reporting on Apportionments* (Mar. 31, 2025), https://www.congress.gov/crs-product/IN12538?s=1&r=18; Krawzak, *supra*.

40.    On March 29, 2025, Defendant Vought sent a letter to the House and Senate Appropriations Committee's Ranking Members, Representative Rosa DeLauro and Senator Patty Murray, stating that OMB "will no longer operate and maintain" the website mandated by law. *See* Sen. Patty Murray (@PattyMurray), X (Mar. 31, 2025, 5:30 PM), https://tinyurl.com/4xpjy8ur; Cong. Rsch. Serv., *Office of Management and Budget (OMB) Reporting on Apportionments*, *supra*.

41.    Defendant Vought's letter claimed that complying with the law "requires the disclosure of sensitive, predecisional, and deliberative information," and that disclosing the required information "may pose a danger to national security and foreign policy." *Id.* The letter did not point to any specific examples where OMB's compliance with the law has required disclosure of privileged information or would pose a danger to national security or foreign policy.

42.    Without public access to the apportionment documents and information previously made available on the OMB website, Protect Democracy can no longer provide

updated information about apportionments to the public through OpenOMB, or otherwise use the

site to monitor the apportionments, footnotes, and written explanations for potential violations of

the law.

43.    After OMB took its website down, Protect Democracy posted the following

header on OpenOMB: "The OMB website that provides the underlying data used by OpenOMB

is offline. There will be no new apportionments posted on OpenOMB until that site is back

online." OpenOMB.org, https://openomb.org (last visited Apr. 10, 2025).

## CAUSES OF ACTION

### COUNT ONE
### Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C)
### (Agency Action Not in Accordance with Law, Contrary to Constitutional Right or Power, and in Excess of Statutory Authority)

44.    Protect Democracy hereby incorporates by reference the foregoing paragraphs of

the Complaint as if set forth herein.

45.    OMB is an agency within the meaning of the Administrative Procedure Act

("APA"). *See* 5 U.S.C. § 551.

46.    Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency

action, findings, and conclusions found to be . . . not in accordance with law," "contrary to

constitutional power [or] right," or "in excess of statutory jurisdiction, authority, or limitations,

or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

47.    Federal law provides that OMB "shall operate and maintain [an] automated

system" online where it "shall continue to post each document apportioning an appropriation,

pursuant to section 1513(b) of title 31, United States Code, including any associated footnotes, in

a format that qualifies each such document as an open Government data asset." 2023

Appropriations Act, div. E, title II, § 204, 136 Stat. at 4667.

48.     Federal law further requires that OMB post each apportionment "not later than 2 business days after the date of approval of such apportionment," and that in posting each apportionment, OMB "shall also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." *See* 2022 Appropriations Act, div. E, tit. II, § 204(b)-(c), 136 Stat. at 256-57.

49.     Defendants have openly admitted that they are not complying with these statutory requirements. Defendants' decision to entirely stop complying with applicable law and their ongoing failure to post apportionments and related required information on a public website violates the 2022 and 2023 Appropriations Acts, as well as the constitutional separation of powers.

50.     Defendants' actions are "not in accordance with law," "contrary to constitutional right [or] power," and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

### COUNT TWO
### Administrative Procedure Act, 5 U.S.C. § 706(1)
### (Agency Action Unlawfully Withheld or Unreasonably Delayed)

51.     Protect Democracy hereby incorporates by reference the foregoing paragraphs of the Complaint as if set forth herein.

52.     OMB is an agency within the meaning of the APA. *See* 5 U.S.C. § 551.

53.     Under the APA, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

54.     Federal law provides that OMB "shall operate and maintain [an] automated system" online where it "shall continue to post each document apportioning an appropriation, pursuant to section 1513(b) of title 31, United States Code, including any associated footnotes, in

a format that qualifies each such document as an open Government data asset." 2023

Appropriations Act, div. E, title II, § 204, 136 Stat. at 4667.

55.    Federal law further requires that OMB post each apportionment "not later than 2

business days after the date of approval of such apportionment," and that in posting each

apportionment, OMB "shall also include a written explanation by the official approving each

such apportionment stating the rationale for any footnotes for apportioned amounts." *See* 2022

Appropriations Act, div. E, tit. II, § 204(b)-(c), 136 Stat. at 256-57.

56.    In no longer fulfilling its statutory obligations to post apportionments and related

required information on a public website, Defendants have "unlawfully withheld or unreasonably

delayed" taking actions required by law. 5 U.S.C. § 706(1).

**COUNT THREE**
**Administrative Procedure Act, 5 U.S.C. § 706(2)(A)**
**(Arbitrary and Capricious Agency Action)**

57.    Protect Democracy hereby incorporates by reference the foregoing paragraphs of

the Complaint as if set forth herein.

58.    OMB is an agency within the meaning of the APA. *See* 5 U.S.C. § 551.

59.    Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency

action, findings, and conclusions found to be arbitrary, capricious, [or] an abuse of discretion." 5

U.S.C. § 706(2)(A).

60.    Federal law provides that OMB "shall operate and maintain [an] automated

system" online where it "shall continue to post each document apportioning an appropriation,

pursuant to section 1513(b) of title 31, United States Code, including any associated footnotes, in

a format that qualifies each such document as an open Government data asset." 2023

Appropriations Act, div. E, title II, § 204, 136 Stat. at 4667.

61.     Federal law further requires that OMB post each apportionment "not later than 2 business days after the date of approval of such apportionment," and that in posting each apportionment, OMB "shall also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." *See* 2022 Appropriations Act, div. E, tit. II, § 204(b)-(c), 136 Stat. at 256-57.

62.     OMB's decision to abruptly shut down the apportionments website required by law is arbitrary and capricious. On March 24, 2025, when the OMB website began showing a "page not found" error, Defendants failed to offer *any* explanation, much less a reasonable one, for their actions. And to the extent it was intended as an explanation, Defendant Vought's March 29, 2025 letter is unreasonable because it: ignores the plain requirements of the 2022 and 2023 Appropriations Act; relies on factors which Congress did not intend OMB to consider; entirely fails to consider reliance interests and the ways OMB's breach of legal obligation affects Congress and the public; and runs counter to nearly three years of OMB's compliance with statutory requirements. The letter also relies on spurious claims that the legal requirement for OMB to disclose its *final*, unclassified actions to apportion funds to agencies, which have immediate legal effect in enabling agencies to spend funds, somehow "requires the disclosure of sensitive, predecisional, and deliberative information" or "may pose a danger to national security and foreign policy." Defendants have provided no evidence or other substantiation for these claims.

63.     Thus, Defendants' actions are "arbitrary" and "capricious." 5 U.S.C. § 706(2)(A).

## COUNT FOUR
### Nonstatutory Claims and *Ultra Vires* Actions

64.     Protect Democracy hereby incorporates by reference the foregoing paragraphs of the Complaint as if set forth herein.

65.    Federal district courts have jurisdiction to enjoin federal officials from violating the Constitution, including the separation of powers. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

66.    Plaintiffs also may bring a nonstatutory action to challenge Defendant Vought's *ultra vires* actions that are a "clear departure by the [agency] from its statutory mandate" and are "blatantly lawless" violations of statutory requirements. *Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022).

67.    Defendant Vought's complete abdication of his duties to post apportionment data online violates the separation of powers and represents a "clear departure" from statutory mandates that is "blatantly lawless." *Id.*

68.    Defendants Vought should be enjoined from his ongoing constitutional and statutory violations.

## COUNT FIVE
## Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202

69.    Protect Democracy hereby incorporates by reference the foregoing paragraphs of the Complaint as if set forth herein.

70.    Protect Democracy is entitled to declaratory relief on the basis of all claims identified.

71.    There is a substantial and ongoing controversy between the parties, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish and affirm that Defendants' decision to stop fulfilling OMB's statutory obligations and their ongoing failure to post apportionments and related required information on a public website violate the 2022 and 2023 Appropriations Acts.

## COUNT SIX
## Writ of Mandamus

72.     Protect Democracy hereby incorporates by reference the foregoing paragraphs of the Complaint as if set forth herein.

73.     If relief is not available on Plaintiff's other counts, Protect Democracy is entitled to a writ of mandamus. The 2022 and 2023 Appropriations Acts impose on OMB clear, mandatory duties to act that are not within OMB's discretion to decline.

74.     By law OMB "*shall* operate and maintain [an] automated system" online where it "*shall* continue to post each document apportioning an appropriation." 2023 Appropriations Act, div. E, title II, § 204, 136 Stat. at 4667 (emphasis added). And by law, OMB "*shall* also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." 2022 Appropriations Act, div. E, tit. II, § 204(b)-(c), 136 Stat. at 256-57 (emphasis added).

75.     Defendants' refusal to fulfill their statutory obligations and their ongoing failure to post apportionments and related required information on a public website violate the clear duties imposed by the 2022 and 2023 Appropriations Acts.

76.     Mandamus is warranted "to correct transparent violations of a clear duty to act" by federal officials. *In re Aiken Cnty.*, 725 F.3d 255, 258 (D.C. Cir. 2013) (quotations omitted) (Kavanaugh, J.).

77.     Protect Democracy is entitled to a writ of mandamus compelling Defendants to comply with these statutory requirements and, absent this Court granting the relief sought by the counts above, there is no other adequate means of redress.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Protect Democracy Project requests that this Court:

A. Declare unlawful and set aside Defendants' failure and refusal to operate and maintain the automated system required by the 2022 and 2023 Appropriations Acts, including Defendants' failure and refusal to publish apportionments, associated footnotes, and related information on a public website in an Open Government Data Asset format;

B. Enter a preliminary and permanent injunction requiring Defendants to publish, on an ongoing basis, all information about apportionments required by the 2022 and 2023 Appropriations Acts (including all information Defendants have unlawfully failed to post since March 24, 2025), either by restoring the previous public website (https://apportionment-public.max.gov) or establishing a similar publicly accessible site;

C. Enter a preliminary and permanent injunction prohibiting Defendants from ceasing to operate and maintain a public website publishing the information currently required by the 2022 and 2023 Appropriations Acts without statutory authorization;

D. Grant relief in the nature of mandamus compelling Defendants to perform all nondiscretionary duties required by the 2022 and 2023 Appropriations Acts, including publishing, on an ongoing basis, all information about apportionments required by the 2022 and 2023 Appropriations Acts (including all information Defendants have unlawfully failed to post since March 24, 2025), either by restoring the previous public website (https://apportionment-public.max.gov) or establishing a similar publicly accessible site;

E. Award Protect Democracy Project its costs and reasonable attorneys' fees; and

F.   Grant such other and further relief as this Court may deem just and proper.


Dated: April 14, 2025                                    /s/ Daniel F. Jacobson
                                                        Daniel F. Jacobson (D.C. Bar # 1016621)
                                                        Kyla M. Snow*
                                                        JACOBSON LAWYERS GROUP PLLC
                                                        1629 K Street NW, Suite 300
                                                        Washington DC, 20006
                                                        (301) 823-1148
                                                        dan@jacobsonlawyersgroup.com

                                                        * Not admitted in the District of
                                                        Columbia. Practiced limited to matters
                                                        before U.S. courts. *Pro hac vice* motion
                                                        forthcoming

                                                        *Counsel for Plaintiffs*

23

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be served on Defendants in accordance with Fed.

R. Civ. P. 4.


*/s/ Daniel F. Jacobson*
Daniel F. Jacobson