# Exhibit 4

# CIRCULAR NO. A–11

# PART 4

# INSTRUCTIONS ON BUDGET EXECUTION



**EXECUTIVE OFFICE OF THE PRESIDENT**

**OFFICE OF MANAGEMENT AND BUDGET**

**JULY 2024**

**SECTION 120—APPORTIONMENT PROCESS**

**Table of Contents**

*Introduction to Apportionments*
120.1   What is an apportionment?
120.2   What terms and concepts should I understand to work with apportionments?
120.3   Are apportionments made at the Treasury appropriation fund symbol (TAFS) level?
120.4   What TAFSs are required to be apportioned?
120.5   What TAFSs are exempt from apportionment?
120.6   Can a portion of my TAFS be exempt from apportionment?
120.7   Do I need to submit an apportionment every fiscal year for TAFSs that are multi-year/no-year?
120.8   Can I incur obligations without an apportionment?
120.9   Can I use an apportionment to resolve legal issues about the availability of funds?

*What is in an Apportionment?*
120.10  How is the apportionment organized?
120.11  Why is the Budgetary Resources section needed?
120.12  After OMB approves an apportionment, can I obligate against all budgetary resources?
120.13  What is the format of the Applications of Budgetary Resources section and what categories does OMB use to apportion funds?
120.14  What is the format of the Guaranteed Loan Levels and Applications section?
120.15  What other kinds of information may an apportionment include?

*Preparing the Apportionment Request*
120.16  How can I submit an apportionment request?
120.17  Is there a standard, set number of lines to show in an apportionment request?
120.18  What header information at the top of the apportionment must I complete?
120.19  What do I put in each column of the apportionment request?
120.20  Do I need to follow special conventions to show the portion of discretionary balances in split accounts (TAFSs with both mandatory and discretionary funds)?
120.21  Can I use amounts that include decimal points or cents in an apportionment?
120.22  Should I use a specific numeric format in the Excel file that holds my request?
120.23  When are apportionments due at OMB for a new fiscal year?
120.24  When is the apportionment system open for a new fiscal year?
120.25  Can I combine TAFSs on a single apportionment?
120.26  Should I assemble apportionment requests for multiple TAFSs in a single package or file?
120.27  Can I cross-check information in the Budgetary Resources section?
120.28  Who can approve the apportionment request for the agency?
120.29  Who is responsible for preparing the apportionment request for allocation (parent/child) accounts?

*Submitting Apportionment Requests*
120.30  How do I submit apportionment requests to OMB?
120.31  What functions will I perform using the apportionment system?
120.32  How do I gain access to the apportionment system?
120.33  Are there situations when I would not use the apportionment system?

**Table of Contents—Continued**

*Footnotes to Apportionments*

120.34   What are apportionment footnotes (and footnote indicators)?
120.35   Do footnotes starting with the letter A correspond to Category A apportioned amounts while those starting with the letter B relate to Category B apportioned amounts?
120.36   Will footnotes and additional tabs/attachments become part of the apportionment?
120.37   What footnotes are required for agencies to include in their apportionment requests?
120.38   Are there footnotes that are automatically applied to annual and multi-year apportionments?

*Approving Apportionment Requests*

120.39   How will OMB indicate its approval of an apportionment?
120.40   When can I expect OMB to approve my first apportionment request for the fiscal year?
120.41   In the case of newly enacted full-year appropriations, am I under an automatic apportionment until OMB approves my first full-year enacted apportionment request?

*After You Have Received Your Approved Apportionment*

120.42   How should I execute the apportionment?
120.43   What if I think that I may have obligated more than the amounts apportioned?
120.44   Must I control funds below the apportionment level?
120.45   How should I allot once I receive an apportionment?
120.46   How do I treat anticipated budgetary resources that are apportioned in the current fiscal year but not yet realized, and do I need to reapportion them once realized?
120.47   What is the relationship between the apportionment and the Funds Control System?

*Changes to Previously Approved Apportionments for the Current Fiscal Year*

120.48   What types of situations could require me to request a new apportionment?
120.49   What adjustments can I make without submitting a reapportionment request?
120.50   What other types of adjustments can I request OMB to allow me to make without submitting a new apportionment request?
120.51   What is the status of previously approved apportionments when a new apportionment is approved in the same fiscal year?

*Apportionments by Time Period*

120.52   Will OMB apportion funds into future fiscal years?
120.53   How do I present deferrals or proposed rescissions on my request?
120.54   Can OMB reapportion a past period?
120.55   Do unobligated resources apportioned in earlier time periods of the same fiscal year remain available?
120.56   Must I request that funds apportioned in one fiscal year be apportioned in the next fiscal year if the funds were not obligated and remain available?
120.57   What is the status of approved apportionments from a previous fiscal year on apportionments in the current fiscal year?
120.58   How does the last approved apportionment govern the actions a TAFS takes when the TAFS enters the expired phase?

**Table of Contents—Continued**

*Apportionments Affected by a Continuing Resolution (CR)*
120.59   During a CR, what happens to TAFSs that were apportioned before the start of a fiscal year (e.g., no-year TAFSs)?
120.60   After a CR has been replaced by a full-year enacted appropriation, what do I show in the Previous Approved column?'
120.61   After a short-term CR has been replaced by a full-year enacted appropriation, what do I show in the Agency Request column?
120.62   What do I do if the full-year enacted appropriation changes the period of availability of funds apportioned under a short-term CR?

*What Other Important Things Do I Need to Know About Apportionments*
120.63   What types of resources are apportioned by OMB?
120.64   Are all apportionments based on authority to incur obligations?
120.65   How do I treat extensions of the availability of unobligated balances in an apportionment?

*Handling Deficiencies in Apportionments*
120.66   When do I submit requests anticipating the need for the Congress to enact supplemental budget authority?

*Program Reporting Categories*
120.67   What is the purpose of program reporting categories?
120.68   Do my estimates of program reporting category obligations limit the amount I can obligate?
120.69   What do OMB and the agency need to do to start using program reporting categories?
120.70   How do I fill in the program reporting category tab?
120.71   Why does OMB send the names of program reporting categories and Category B projects to Treasury for use in GTAS?

*Exhibits—Sample Formats*
https://community-dc.max.gov/x/N4RNlg

Ex–120A   Program Reporting Categories Format

*When Your Appropriations are Enacted in a Timely Manner*
Ex–120B   One-Year Appropriation—First Apportionment for the Current Fiscal Year
Ex–120C   No-Year Appropriation—First Apportionment for the Current Fiscal Year
Ex–120D   No-Year Appropriation—Reapportionment

*When You Operate Under a Continuing Resolution*
Ex–120E   One-Year Appropriations Under Continuing Resolution
Ex–120F   Appropriations and Unobligated Balances Under a Continuing Resolution
Ex–120G   Apportionment Following a Continuing Resolution (No-Year TAFS)
Ex–120H   Apportionment Following a Continuing Resolution (Annual TAFS, Category A)

*When You Encounter Unusual Circumstances*
Ex–120I   Public   Enterprise   (Revolving)   or   Intragovernmental   (Revolving)   Fund—Reapportionment

**Table of Contents—Continued**

Ex–120J       Trust Fund Limitation
Ex–120K       Negative Amount Due to Reduced Unobligated Balance
Ex–120L       Apportionments in Future Fiscal Years for Multi-Year Accounts
Ex–120M       Trust Fund with Contract Authority, Appropriation to Liquidate Contract Authority, and Obligation Limitation
Ex–120N       Trust Fund (or Special Fund) with Collections Precluded from Obligation
Ex–120O       Allocation Transfer Apportionment Format, Apportioning Programs
Ex–120P       Allocation Transfer Apportionment Format, Apportioning Parent and Child
Ex–120Q       Allocation Transfer Apportionment Format, Child Only
Ex–120R       Allocation Transfer Apportionment Format, Parent Only
Ex–120S       Sequester Apportionment
Ex–120T       Appropriations with Different Periods of Availability Executed by Non-Expenditure Transfer
Ex–120U       Rescissions and Reappropriations of Unobligated Balances as of September 30th
Ex–120V       Initial Apportionment of an Appropriation Reduced by Offsetting Collections and Receipts
Ex-120W       Apportionment of an Appropriation Reduced by Offsetting Collections and Receipts during CR period to invoke term and condition of the CR (section 123.10)

**Summary of Changes**

Clarifies guidance on display of the previous approved column for an account specific apportionment made during a CR period for an account that also receives an automatic apportionment (section 120.37).

Allows agencies to reflect 30-day automatically apportioned funds as they would be apportioned normally (either Category A or Category B) without OMB concurrence (section 120.41).

Updates list of situations that could require a reapportionment request to include a scenario where a TAFS needs to increase an indefinite appropriation but the previously approved apportionment did not include an "A" footnote providing automatic apportionment authority (section 120.48).

Provides link (in Table of Contents above) to view Excel versions of section 120 Exhibits on OMB MAX Community (Exhibits 120A-W).

Updates section 120 Exhibits throughout to more consistently follow section 120 guidance (Exhibits 120A-W).

Provides an example of how to show an account-specific apportionment to account for a term and condition of the CR (Exhibit 120W).

# INTRODUCTION TO APPORTIONMENTS

## 120.1   What is an apportionment?

An *apportionment* is an OMB-approved plan to use budgetary resources (31 U.S.C. 1513(b); Executive Order (E.O.) 6166, as amended by E.O. 12608.  It typically limits the obligations you may incur for specified time periods, programs, activities, projects, objects, or any combination thereof.  An

apportionment is legally binding, and obligations and expenditures (disbursements) that exceed an apportionment are a violation of, and are subject to reporting under, the Antideficiency Act (31 U.S.C. 1517(a)(1), (b)). See section 145 for more on reporting violations of the Antideficiency Act.

**120.2    What terms and concepts should I understand to work with apportionments?**

*Account-specific apportionments* are approved by an OMB Deputy Associate Director (or designee) or an OMB official that has been delegated apportionment authority and typically include specific amounts. They are in contrast to automatic apportionments, described below.

A Treasury Appropriation Fund Symbol (TAFS) has *adjustment authority* if OMB has approved an apportionment with a footnote in the Application of Budgetary Resources section (footnote indicator that starts with A) describing what new or additional resources are automatically apportioned without the need for OMB to approve a new apportionment and a YES is in the Line Split column of the adjustment authority line (AdjAut). For instance, OMB may provide adjustment authority for cases where actual earned reimbursements exceed the estimate on the apportionment. For more on adjustment authority, see sections 120.49 and 120.50.

The *Antideficiency Act* prohibits Federal employees from obligating or disbursing amounts in excess of an appropriation, an apportionment (or in its absence), an allotment, a suballotment or any other subdivisions of funds that are identified in your agency's administrative control of funds. For more on the Antideficiency Act, see section 145.

An amount is *apportioned* for obligation in the current fiscal year when it appears on the Category A, Category B, or Category AB lines. Amounts apportioned for obligation in future fiscal years appear on the Category C lines. The Application of Budgetary Resources section also includes lines for amounts that are exempt from apportionment or not apportioned for either current or future fiscal years.

An *automatic apportionment* is approved by the OMB Director in the form of a Bulletin or provision in Circular A-11, and typically describes a formula that agencies will use to calculate apportioned amounts. An automatic apportionment is in contrast to the account-specific apportionments, described above, which typically include specific amounts, and which are approved by an OMB Deputy Associate Director (or designee) or an OMB official that has been delegated apportionment authority.

*Carryover amounts* are unobligated balances that are available from the prior fiscal year(s) in multi-year and no-year accounts. See section 120.23 regarding the submission, for OMB approval, of requests for the apportionment of carryover amounts. Pursuant to sections 120.7 and 120.56, carryover amounts are automatically apportioned at zero until an account-specific apportionment is issued for such amounts.

*Category A, Category B, Category AB or Category C*—Apportioned amounts appear on different groups of lines in the Application of Budgetary Resources section of an apportionment. Amounts are identified in an apportionment:

- by time (Category A);

- by program, project, or activity (Category B);

- by a combination of program, project, or activity and time period (Category AB); or

- for future years (only for multi-year/no-year accounts) (Category C).

You must report obligations to Treasury with the same categories as used on the apportionment.

_Exception apportionment_ is a colloquial term that describes a type of account-specific apportionment that can be issued for operations under a continuing resolution (CR), in lieu of the OMB-issued automatic apportionment. This excludes account-specific written apportionments for an anomaly provided in the CR. OMB approves exception apportionment requests only in extraordinary circumstances. See section 123.9 for additional guidance.

_Footnotes_ provide additional information and direction beyond the line stubs and dollar amounts. See section 120.34 for more information.

_Impoundment_—Pursuant to the Impoundment Control Act, apportionments may also set aside all or a portion of the amounts available for obligation.

- Amounts _deferred_ through the apportionment process are those portions of the total amounts available for obligation that are specifically set aside as temporarily not available until released by OMB.

- Amounts withheld pending _rescission_ are those portions that are set aside pending the enactment of legislation reducing the authority to obligate such funds.

For further information on deferrals and rescissions, including the difference between an impoundment and a cancellation proposed by the President, see section 112.

The _line split_ column allows you to provide information about a line or to distinguish between two or more budgetary resource amounts that you would otherwise put on a single line. For more details on line splits, see section 120.19.

_Memo obligations_ are amounts obligated during the current fiscal year at the time the apportionment request is prepared. The date of the obligations is at the top of the column.

_Program reporting category_—Agencies and OMB will work together to determine the program reporting categories (if any, section 120.67) under which the agencies will report their obligations in their SF 133 Reports on Budget Execution and Budgetary Resources (see section 130). Program reporting categories should be based on elements that agencies track in their financial systems. Though you are encouraged to use program reporting categories, there are some cases where OMB and agencies will choose not to use any.

The program reporting categories are not used to apportion funds and are not subject to the Antideficiency Act (Appendix G).

_Reapportionments_ are made when you need to make changes to the previously approved apportionment for the current year (section 120.48). For example, you should request a reapportionment when approved apportionments are no longer appropriate or applicable because the amounts available for obligation have increased or unforeseen events have occurred.

The _Treasury Appropriation Fund Symbol (TAFS)_ combines the Treasury agency or department code, the Federal account symbol, and the period of availability of the resources in the account (section 20.3). The period of availability may be annual, multi-year, or no-year (section 20.4(c)). Annual TAFSs have funds that are available for obligation for no longer than one fiscal year. Multi-year TAFSs have funds that are available for a specified period of time in excess of one fiscal year. No-year TAFSs have funds that are available until expended. See section 20.4 for more details.

The Department of the Treasury's list of account symbols may be found here: http://fiscal.treasury.gov/fsreports/ref/fastbook/fastbook_home.htm.

**120.3   Are apportionments made at the Treasury appropriation fund symbol (TAFS) level?**

Yes, apportionments are only made at the TAFS level.  See section 20.11 for more details on TAFSs.  For cases of allocation transfers, see section 120.29.

**120.4   What TAFSs are required to be apportioned?**

All TAFSs are required to be apportioned, except in the case of a TAFS that is in its entirety exempt from apportionment. See section 120.6 for a TAFS that is partially exempt from apportionment.

OMB is required to post all approved apportionment documents on a public website. Those apportionments can be found here: https://apportionment-public.max.gov/.

**120.5   What TAFSs are exempt from apportionment?**

The following types of TAFSs are exempt from apportionment:

- TAFSs specifically exempted from apportionment by 31 U.S.C. 1511(b) or other laws.

- TAFSs for which budgetary resources:

    o have expired and therefore the expired TAFS cannot be reapportioned in the expired phase (in this case, the last apportionment during the unexpired phase applies);

    o have been fully obligated before the beginning of the fiscal year; or

    o are available only for transfer to other TAFSs (unless OMB determines otherwise), which can include TAFSs where the sole purpose of the TAFSs is to effectuate an expenditure transfer between fund types (e.g., between Federal funds and trust funds) (see below for additional information).

Because transfer-only TAFSs that require expenditure transfers (due to crossing Federal fund group to a trust fund) involve an obligation, you must request a letter from your OMB Deputy Associate Director for proper funds control documentation that the TAFS is exempt from apportionment because the funds are available only for transfer to other TAFSs.

- TAFSs of the following types, which the OMB Director may exempt from apportionment pursuant to 31 U.S.C. 1516:

    o Trust funds or working funds if an expenditure from the fund has no significant effect on the financial operations of the United States Government;

    o Management funds (Treasury TAFSs with the symbols 3900–3999);

    o Payment of claims, judgments, refunds, and drawbacks;

    o Payment under private relief acts and other laws that require payment to a designated payee in the total amount provided in such acts;

- Foreign currency fund TAFSs (unless OMB requests), section 120.63;

- Interest on, or retirement of, the public debt; and

- Items the President has determined to be of a confidential nature for apportionment and budget execution purposes.

In order to request that the OMB Director exempt a TAFS from apportionment pursuant to 31 U.S.C. 1516, you must send in a formal request with the justification. Your OMB Deputy Associate Director (DAD) or an OMB official that has been delegated apportionment authority will formally notify you in writing about your exemption request. Memoranda that the DAD or delegated official provides to the agency providing an exemption will also be posted within the apportionment system.

If your exemption request is pursuant to 31 U.S.C. 1516 and specifically for a trust fund or working funds with expenditures that do not have significant effect on the financial operations of the United States Government, your request needs to demonstrate that fact using historical information such as the magnitude of the gifts and donations funding compared to the overall size of the agency's budget, the pattern of obligations in that fund, etc.

To see a list of TAFSs that are exempt from apportionment, a report is available through the apportionment system.

### 120.6   Can a portion of my TAFS be exempt from apportionment?

Yes, in a very limited number of cases, only a portion of the budgetary resources for a TAFS must be apportioned. In these cases, agencies must show the full amount of budgetary resources—both exempt from apportionment and non-exempt—in the Budgetary Resources section and show the amounts subject to apportionment on apportioned lines, and the amounts not subject to apportionment on Line 6183, Exempt from apportionment in the Application of Budgetary Resources section.

### 120.7   Do I need to submit an apportionment every fiscal year for TAFSs that are multi-year/no-year?

Yes. Multi-year/no-year TAFSs with unexpired budgetary resources available for obligation MUST be apportioned every fiscal year, unless exempt under section 120.5. See also section 120.56.

### 120.8   Can I incur obligations without an apportionment?

No, an obligation cannot be incurred without an OMB approved apportionment (account-specific or automatic), except when the relevant account, from which the amounts are being obligated, is exempt from apportionment. The Antideficiency Act (section 145) prohibits the incurring of obligations that exceed the approved apportionment amount (including, e.g., purchase services or merchandise). See section 145 for specifics on the Antideficiency Act.

### 120.9   Can I use an apportionment to resolve legal issues about the availability of funds?

No. The apportionment of funds is not a means for resolving any question dealing with the legality of the amounts available by law or the legality of using funds for the purpose for which they are apportioned. Any question as to the legality of the amounts available by law, or the legality of using funds for a particular purpose, must be resolved through agency legal channels. Importantly, OMB's approval of an apportionment request does not reflect OMB's concurrence with an agency's legal position.

## WHAT IS IN AN APPORTIONMENT?

### 120.10  How is the apportionment organized?

The top of the apportionment shows the name and account number of the TAFS being apportioned, and often includes other descriptive information, e.g., agency name, bureau name, budget account name and number.

The apportionment always includes two sections: Budgetary Resources and Application of Budgetary Resources.  The Budgetary Resources section always appears toward the top of the apportionment, and must show all budgetary resources available to the TAFS (e.g., appropriations, reductions, non-expenditure transfers). The Application of Budgetary Resources shows apportioned amounts, which are legal limits that restrict how much an agency can obligate, when it can obligate, and what projects, programs, and activities it can obligate for.

Apportionments for guaranteed loan accounts include a third section, Guaranteed Loan Levels and Applications.

Each section of an apportionment includes line numbers and descriptions of all pertinent amounts. See Appendix F1 for a complete list of line numbers and detail descriptions for each line.

### 120.11  Why is the Budgetary Resources section needed?

The Budgetary Resources section is necessary for several reasons.

- First, it provides sufficient detail for OMB to see what level of funding is coming into the TAFS and therefore available to be apportioned.  In many cases, apportioned amounts tie back to amounts on specific budgetary resource lines.

- Second, budgetary resource lines on apportionments match the lines used in the President's Budget Program and Financing schedule and SF 133 Report on Budget Execution and Budgetary Resources.  The reason that these three presentations use the same line numbers is to facilitate comparisons that provide agencies and OMB with a basis to know they are looking at the right numbers.  In addition, the Budget Enforcement Act (BEA) category (i.e., discretionary or mandatory) information in this section is provided to the Treasury Department to facilitate agency reporting of BEA information in budget execution reports.

- Third, the apportionment is the first step in a fiscal year's budget execution process, and provides the basis for agencies to post information in their funds control and financial systems.

### 120.12  After OMB approves an apportionment, can I obligate against all budgetary resources?

Not necessarily.  You should not obligate until apportioned amounts have been allotted in accordance with your agency's OMB-approved funds control regulations (see section 150, Administrative Control of Funds). There are other circumstances in which you cannot obligate funds following an apportionment.  For example, you cannot obligate against anticipated resources.  You must wait until the resources are realized before incurring obligations.  Additionally, in some cases, a footnote to the apportionment will state that amounts are apportioned, but are only available for obligation when specified events occur (such as an agency taking certain action).

**120.13  What is the format of the Application of Budgetary Resources section and what categories does OMB use to apportion funds?**

OMB usually uses one of four categories to apportion budgetary resources in a TAFS.

*Category A* apportions budgetary resources by fiscal quarters, e.g., quarter one (October 1 through December 31) and quarter two (January 1 through March 31). Lines 6001 through 6004 are used for quarters one through four, respectively.

*Category B* apportions budgetary resources by program, project, activities, objects or a combination of these categories. Lines 6011 through 6110 are used for Category B apportioned amounts. One TAFS can potentially have dozens of Category B apportionments, each pertaining to specific activities, projects, and so on. There are also cases when it makes programmatic sense for OMB to use a single, Category B apportionment for a given TAFS.

*Category AB* apportions budgetary resources by a combination of fiscal quarters and projects. You may use Lines 6111 through 6159 to apportion in this manner. See section 8 of Appendix F for a full list of line numbers and descriptions.

*Category C* apportions budgetary resources in multi-year and no-year TAFSs into future fiscal years. Lines 6170 thru 6173 are used for Category C apportioned amounts. (Note: Category C amounts that OMB apportions in one year are not available for you to obligate against in the following year. For these amounts to be available, OMB must approve a new request in the following year that apportions these amounts on Category A, B, or AB lines.) See section 120.52 for additional information.

Apportionments may include a combination of categories.

In some cases (uncommon), resources in the Budgetary Resources section are not apportioned. In such cases, the non-apportioned budgetary resources are shown using one of four apportionment lines —

    (1) 6180, Withheld pending rescission (rarely used),

    (2) 6181, Deferred (rarely used),

    (3) 6182, Unapportioned balance of a revolving fund, and

    (4) 6183, Exempt from apportionment (uncommon, and used in TAFSs with both budgetary resources subject to and exempt from apportionment — at the bottom of the section on the Application of Budgetary Resources).

Agencies must report obligations to Treasury (GTAS) using the same level of specificity as appears on the apportioned section of your most recent approved apportionment. For instance, if OMB uses a single Category B project with five program reporting categories, you must report obligations for each program reporting category. Likewise, if OMB uses ten Category B projects and you incur obligations for each of these projects, your GTAS submission and SF 133 budget execution report must show obligations for each of these ten Category B projects and continue to report them in the expired phase.

**120.14  What is the format of the Guaranteed Loan Levels and Applications section?**

An apportionment for guaranteed loan financing accounts can have a third section, Guaranteed Loan Levels and Applications section. This section shows limitations on loan levels by program level either from the current year and/or unused from prior year(s), and the application of the program level by quarter, risk

category, or a combination. The total of the limitation on loan levels by program level should equal the total of the application of the program levels.

**120.15  What other kinds of information may an apportionment include?**

Many kinds of additional information can be integrated into an apportionment request. Here are some examples.

*Allocations*. The allocations tab (if required by your RMO examiner) includes a list of all transfer allocation (or children) accounts that are expected to receive a non-expenditure transfer of funds from the parent TAFS being apportioned. The allocation accounts are subject to the Antideficiency Act. Unless OMB separately apportions an allocation account after apportioning the parent account, the allocation account must follow all apportioned amounts, footnotes, and other guidance of the parent account (see section 120.29 for more details).

*Footnotes*. Footnotes appear on one of three tabs: "Previously Approved Footnotes," "Agency Footnotes," and "OMB Footnotes." Footnotes on the OMB Action column in the Application of Budgetary Resources section (footnote indicator starts with A) are subject to the Antideficiency Act. See section 120.34 for additional information on footnotes.

*Program Reporting Categories*. When used, these identify the level of detail that an agency must use in reporting its obligations on SF 133 budget execution reports. These appear on the PgmCat tab in the apportionment request. These are not subject to the Antideficiency Act. See section 120.67 for additional information on program reporting categories.

*System-generated reports*. When agencies validate requests, the apportionment system sometimes creates reports showing latest SF 133 versus the apportionment request; warrants; and non-expenditure transfers. These reports are not subject to the Antideficiency Act.

*Additional tabs*. Apportionments are almost always prepared, submitted and approved in Excel files. Certain tabs in the Excel file house the apportionment request or footnotes. Others are reserved for other specific kinds of information. Agencies may also use additional tabs as attachments to the apportionment. Tabs in the Excel file are only subject to the Antideficiency Act if specifically referenced in a footnote in the OMB Action column of the Application of Budgetary Resources section of the apportionment (see section 120.36).

*Attachments*. Attachments may include Word, PDF, or Excel files with a wide range of information that pertains to the apportionment request, but that is not included in the Excel file containing the request. These attachments are subject to the Antideficiency Act only if they are specifically referenced in a footnote in the OMB Action column of the Application of Budgetary Resources section of the apportionment (see section 120.36).

## PREPARING THE APPORTIONMENT REQUEST

**120.16  How can I submit an apportionment request?**

The vast majority of apportionments are submitted by agencies and approved by OMB using OMB's secure, web-based apportionment system. When questions or issues arise using the system, please send the Excel file you are working with and a brief description of the issue to "apportionment@omb.eop.gov." Please direct questions of a substantive nature to your OMB representative.

In a limited number of cases necessitated by extenuating circumstances, OMB may approve an apportionment by e-mail or other non-system methods consistent with 31 U.S.C. 1513. Once the extenuating circumstances have passed (or sooner if possible), agencies and OMB should process these same requests using the apportionment system.

**120.17  Is there a standard, set number of lines to show in an apportionment request?**

No. While the format of the request is fixed and uses specific columns to hold certain kinds of information, the number of lines used for a given TAFS varies considerably. The apportionment system allows you to pick from more than 125 different budgetary resource lines, but agencies will only want to show amounts on a few of these lines for any given TAFS. For example, a TAFS with only an annual appropriation may just use one budgetary resource line.

The system provides significant flexibility to allow agencies to put in other lines with zero amounts. For instance, an apportionment for a given TAFS might show all discretionary appropriations lines, but no mandatory appropriations lines. Agencies must work closely with their OMB representatives in determining which budgetary resource lines to show with zero amounts (e.g., post short-term continuing resolution, see section 120.62).

Appendix F1 shows all possible line choices that are available in the apportionment system.

**120.18  What header information at the top of the apportionment must I complete?**

The header must provide the fiscal year for the apportionment and a public law (if no public law is available right after the enactment of the bill, the H.R. number is acceptable). The public law reference may be descriptive if there are multiple public laws covered by the apportionment or if the annual appropriations act is not enacted. Some examples are:

- Funds provided by Public Law N/A – Carryover

- Funds provided by Public Law N/A – Multiple

**120.19  What do I put in each column of the apportionment request?**

*TAFS.* TAFS information appears in columns A through F of apportionment requests. The columns show: Treasury agency; period of availability (FY1 and FY2); and allocation account and sub-account, if applicable. For presentation purposes, these columns are often hidden. You can unhide these columns if necessary. As part of validating requests or sending requests, the system checks that these columns are filled out properly; if they are not, the system provides an error message.

The apportionment system will only accept apportionments that use the three-digit CGAC agency codes (see Appendix C for a listing). For these apportionments, each TAFS code will appear in a single cell, and columns A through F will no longer be dedicated to showing that information.

*Line numbers.* Appendix F1 shows a complete list of line numbers and descriptions.

*Line splits.* You must provide line split in the following cases:

- The IterNo (Iteration Number) line shows the number of times OMB has approved (apportioned) an apportionment for a given TAFS in a fiscal year. No action is necessary if you use the Create Template function in the apportionment system as a starting point for preparing your requests. The

apportionment system automatically puts in the Iteration Number in the line split column, as well as puts the last approval date in the line stub column.

- The RptCat line indicates whether the TAFS uses Program Reporting Categories (section 120.67). Use "YES" or "NO", as appropriate, for the line split column.

- The AdjAut line indicates whether OMB has approved a footnote in the Application of Budgetary Resources section (footnote indicator that starts with A) on the apportionment that allows specific types of adjustments to be made without submitting a reapportionment request. Use "YES" or "NO", as appropriate, for the line split column. (See section 120.50)

- Line 1000 shows unobligated balances. For unobligated balances in no-year and multi-year TAFSs with both mandatory and discretionary funding, you must use a line split that starts with the letter "D" to show the portion of the balances that are discretionary. To distinguish between estimated and actual balances, use line splits of "E" to show estimated balances or "A" to show actual balances. Use "DE" or "DA" to indicate estimated from actual discretionary balances, respectively, and use "ME" and "MA" to indicate estimated from actual mandatory balances (section 120.20).

You may use the line splits to distinguish between two or more amounts that you would otherwise put on a single line. For example, you may use line splits to distinguish between two or more sources of collections, to distinguish between unobligated balances from reimbursable authority versus direct appropriations, or even to distinguish sequestration amounts on an apportionment.

You cannot use line number splits for the Application of Budgetary Resources section.

Previous Approved Column.

- Leave the column blank for the first request you submit for a given fiscal year. See exhibits 120C, and 120D, and 120F for examples of an annual (one-year) appropriation, a no-year appropriation, and appropriations provided by a continuing resolution.

- Include amounts from the "OMB Action" column of the previously approved apportionment within the same fiscal year. This includes any adjustments under sections 120.49 or unless your RMO determines any other adjustment authority granted to you by OMB in writing (section 120.50).

- When appropriations are enacted following one or more CRs, include the amounts from the last CR in this column (see section 120.60) unless otherwise required by your RMO.

- For reapportionment requests add the indicator, e.g., A1, B1\B2, which indicates that a footnote(s) appears on the previous approved footnote worksheet tab. If your earlier apportionment had footnotes, the worksheet tab will be automatically populated by the apportionment system.

Agency Request Column.

- Include the amounts you are requesting in this column.

- Include an indicator, e.g., A1, B1, which indicates that a footnote appears on the agency footnote tab. See section 120.34 for more information on footnotes.

OMB Action Column.

- The apportionment system places formulas in the OMB Action column to set it equal to the Agency Request column. OMB will adjust the OMB Action values as necessary when reviewing and approving your request.

- Include an indicator, e.g., A1, B1, which indicates that a footnote appears on the approved footnote tab. The footnotes in the OMB Footnote column override all other footnotes.

Memo Obligations Column.

- Include memorandum obligations in this column. Also include the date of the obligations using the MM-DD-YYYY format on the RptCat row. The memo obligations support your reapportionment request.

### 120.20 Do I need to follow special conventions to show the portion of discretionary balances in split accounts (TAFSs with both mandatory and discretionary funds)?

Yes. For unobligated balances in no-year and multi-year TAFSs with both mandatory and discretionary funding (split accounts), you must show the discretionary portion of the balances by using a line split that starts with the letter "D" and you must show the mandatory portion of the balances by using a line split that starts with the letter "M". You will do this solely on Line 1000, Unobligated balance, brought forward, Oct. 1. You must also change the Line Stub to start with the word Discretionary, e.g., Discretionary Unobligated balance, brought forward, Oct. 1 or Mandatory Unobligated balance, brought forward, Oct. 1, as appropriate. Many agencies use line splits of "E" or "A" to distinguish Estimated from Actual balances, respectively. In these cases, you would use "DE" or "DA" to indicate estimated from actual discretionary balances, respectively and you would use "ME" or "MA" to indicate estimated from actual mandatory balances, respectively.

### 120.21 Can I use amounts that include decimal points or cents in an apportionment?

No. You must round all amounts up to a dollar in apportionment requests. In addition, you may not round amounts to thousands. When you round up, the delta between the actual cents and the amount apportioned is not available for obligation and your funds control system must reflect that. Additionally, you should add a "B" footnote on line 1920 of the Budgetary Resource section of the apportionment to indicate that rounding has occurred and, therefore, rounded amounts on the apportionment will not match amounts reported on the SF 133 which are reported to the penny. Here is an example of such a footnote:

"Pursuant to section 120.21 of OMB Circular A-11, one or more lines in the Budgetary Resources section may be rounded up. As a result, those rounded lines will not match the actuals reported on the SF 133. Agency will ensure that its funds control system will only allot actuals."

### 120.22 Should I use a specific numeric format in the Excel file that holds my request?

Yes, you must use whole numbers (decimal points are not permitted) or blanks in numeric columns. Numeric columns include the Previous Approved Amount, Agency Request, OMB Action, and Memorandum Obligations columns. Numbers (including zero) must be formatted using the number format with thousands separator (a comma), and with a leading negative sign (-). You cannot use asterisk, special characters, or letters in numeric columns of any apportionment request. Further, you cannot format a number, zero or otherwise, to appear as an asterisk or other special character. There is a single exception: in the memorandum obligations column only, you may use a date format on the RptCat line.

**120.23  When are apportionments due at OMB for a new fiscal year?**

| If ... | Then, submit your first apportionment request by... |
|---|---|
| Any part of the budgetary resources for a TAFS is not determined by current action of the Congress (such as permanent appropriations, public enterprise and other revolving funds subject to apportionment, reimbursements and other income, and balances of prior year budget authority) | August 21, as required by 31 U.S.C. 1513(b) |
| All or any part of the budgetary resources for a TAFS are determined by current action of the Congress | August 21, or within 10 calendar days after the enactment of the appropriation or substantive acts providing new budget authority (i.e., authorization bills), whichever is later |

After August 21, OMB requires an explanation for any delayed initial apportionment requests in accounts with budgetary resources not dependent on current action of the Congress.

We encourage you to begin preparation of apportionments and related materials as soon as the House and Senate have reached agreement on funding levels.  In this way, you can make a timely submission of your request to OMB, and OMB can have adequate time for its review.

**120.24   When is the apportionment system open for a new fiscal year?**

The apportionment system will open to agencies to start preparing requests no later than August 1 (or the following business day).  Agencies can submit their requests starting August 8.

**120.25  Can I combine TAFSs on a single apportionment?**

No.  From time to time, agencies ask whether they can combine (or "roll-up") the amounts from two or more TAFSs, and submit an apportionment for this single "combined" TAFSs (e.g., miscellaneous accounts).  Agencies may not do this because the apportionments must tie back to the statutory authority, which explicitly makes distinctions between accounts and defines the period of availability of the funds in the accounts.  These are generally the same pieces of information that distinguish one TAFS from another.

**120.26  Should I assemble apportionment requests for multiple TAFSs in a single package or file?**

Yes, unless your OMB representative determines otherwise.  To the extent practical, submit apportionment requests for each independent agency, departmental bureau, or similar subdivision together.

**120.27  Can I cross-check information in the Budgetary Resources section?**

Yes.  You can cross-check information in certain cases against the President's Budget or the most recent SF 133 Reports.  In addition, for general fund TAFSs, you should check that appropriations and warrants by Treasury (if any) are consistent and you can check that actual non-expenditure transfers match transfers processed at Treasury.  See https://community-dc.max.gov/x/v5Bwkg.

**120.28  Who can approve the apportionment request for the agency?**

Agencies must use appropriate internal controls in preparing apportionment requests, and specifically ensure that the agency official with authority to review and approve the request has done so.  The approving

official at the agency is not required to sign the request that is sent to OMB, but may do so if required by the agency's internal controls or if requested by the OMB examining division. OMB's apportionment system does not accommodate electronic signatures of agency officials.

**120.29  Who is responsible for preparing the apportionment request for allocation (parent/child) accounts?**

Allocation accounts involve both a "parent" appropriation and a "child" recipient of budgetary resources via an allocation non-expenditure transfer. For instance, if an appropriation is enacted to the Funds Appropriated to the President's International Military Education and Training account (11-1081 /X), and a subsequent allocation is made to the Department of the Army (Treasury agency 21), then the allocation non-expenditure transfer from 11-1081 /X to Army would be as follows: 11-1081 /X transfer to 21-11-1081 /X.

Unless OMB determines otherwise, the agency that receives the appropriation to be allocated (the "parent") should submit a single, consolidated apportionment request that encompasses both the parent TAFS and all the allocated recipient "child" agencies and/or bureau TAFSs (see exhibit 120P for an example that uses different lines to distinguish between the parent and children on the apportionment). Additionally, allocation transfers are normally apportioned at the same category level as the parent account (e.g., Category A, B, AB, or C). The agency administering the parent TAFS will indicate to the receiving agency what portion of the consolidated apportionment is transferred to the allocation TAFSs.

Allocation account apportionments, however, can be done in different ways. See exhibit 120R for an example of a parent-only allocation apportionment and exhibit 120Q for an example of a child-only allocation transfer apportionment.

The parent agency must ensure that the recipients are provided the approved apportionment request on a timely basis. Obligations incurred for the program as a whole are limited by the approved apportionment. Receiving agencies will be responsible for keeping obligations within the amount so specified in the apportionment or to the amount transferred to it from the parent.

Allocation worksheets are no longer required if you are using allocations on the apportionment.

In order for the transfers to crosswalk correctly in the SF 133 and President's Budget, please ensure that both the parent and child use the appropriate USSGL for allocation transfers (http://www.fms.treas.gov/ussgl/index.html).

## SUBMITTING APPORTIONMENT REQUESTS

**120.30  How do I submit apportionment requests to OMB?**

Agencies will typically use OMB's web-based apportionment system to submit their apportionment requests to OMB (see section 120.32 for getting permission in the system to send). In those circumstances when you are unable to use the web-based system, e-mail the Excel file containing your request to your OMB representative. You will almost always be required to send OMB an electronic copy of the apportionment request. In some cases, the OMB representative may request you to provide a hard copy of the signed request.

**120.31  What functions will I perform using the apportionment system?**

OMB's web-based apportionment system is the primary system agencies will use to prepare, submit, and run reports on their apportionment requests.  Staffers with authority to use the system may use the Support\Links tab to find detailed guidance on using the system.

Below is a brief overview of the major functions.

(a) Create template

Use the Create Template screen to get a starting point for your request.  If you are only creating one TAFS, the data entry screen is the best starting point.  If the TAFS you are working with has already been apportioned in the fiscal year for which you are submitting a request, the system will create a properly formatted Excel file with the most recently approved information in the Previous Approved column.  If the TAFS has not yet been apportioned or has never been apportioned, you can draw source data from a previous fiscal year and/or a different TAFS to provide a starting point for your request.

(b) Validate

After you have created a template and updated it to reflect the proper information for your request, use the Validate Request screen to do two things: check for any math or formatting errors, and if there are no errors, create a new file that is ready to be submitted to OMB.  This file will have several Excel tabs that were not in your original template.  It will have the tab called Appor_Req_to_OMB with the primary apportionment information.  It will have a tab to hold any footnotes that OMB may wish to include with the apportionment. If any of the TAFSs in your file have warrants, transfers, or SF 133 data (excluding parent or child allocation accounts) for the fiscal year of your requests, the validated file will also have tabs to display these items. You will need to download and save this file wherever you keep your apportionment files.

(c) Send

If your agency administrator has given you the ability to send requests, you can use the Send tab to send files to OMB, or in some cases, to send files to a central office in your agency that will approve requests and send them to OMB.

(d) Run reports

At any time, you can go to the Run Reports tab to find information associated with your apportionment request, including the latest approved amounts, the latest submission and approval dates, etc.

**120.32  How do I gain access to the apportionment system?**

The apportionment system can be found here: https://apportionment.max.gov.

In order to use the apportionment system to prepare requests and run reports, you must have a MAX User ID and your agency administrator must add you to one or more apportionment groups.  Your administrator may also choose to give you the ability to submit requests to OMB.

You can register for a MAX User ID here: https://portal.max.gov/portal/main/displayRegistrationForm. You can find your agency administrator here: https://portal.max.gov/home/sa/findAgencyAdminForm.

**120.33  Are there situations when I would not use the apportionment system?**

In limited circumstances, OMB may apportion using a letter apportionment.  Additionally, during a continuing resolution period, OMB will sometimes apportion certain types of budgetary resources, such as spending authority from offsetting collections, using a blanket written letter apportionment in addition to the OMB CR Bulletin.  Consult your OMB representative for more information.

## FOOTNOTES TO APPORTIONMENTS

**120.34  What are apportionment footnotes (and footnote indicators)?**

The request tab of an apportionment includes columns for previous approved amounts, agency request, and OMB action.  Next to each of these columns, in turn, is a column for a footnote indicator.  The use of a footnote indicator on the request tab, e.g., A1, B1, indicates that one or more footnotes are associated with that line.

Footnotes appear as textual descriptions on specific tabs in the apportionment file, and typically provide additional information or direction associated with one or more lines on the request.  A request includes separate footnote tabs associated with amounts in the previously approved request column, agency requests column, and OMB Action column.  Footnotes are divided into two basic groups: footnotes for apportioned amounts (in the Application of Budgetary Resources section), and informational footnotes for budgetary resources.

*Footnotes for Apportioned Amounts (Application of Budgetary Resources section)*.  Each footnote indicator in this section begins with the letter A.  These footnotes are associated with one or more lines in the Application of Budgetary Resources section (the bottom section of the apportionment, OMB action column), have legal effect, and are subject to the Antideficiency Act.  For example, a footnote may allow for an upward adjustment of budgetary resources in excess of amounts prescribed in section 120.49 without the need for further action by OMB.

*Footnotes for Budgetary Resources (Budgetary Resources section)*.  Each footnote indicator in this section begins with the letter B.  These footnotes are informational and are associated with one or more lines in the Budgetary Resources section (the top section of the apportionment).  For example, a footnote may identify the source of offsetting collections or explain the basis for amounts on a recovery line. Because these footnotes are not in the Application of Budgetary Resources section (e.g., apportioned), they have no legal effect.

*Indicators for footnotes*.  Footnotes are designated (indicated) through a letter/number combination.  Each footnote indicator starts with a letter A or B (A for apportioned amounts in the application of budgetary resource section; B for budgetary resource), which is followed by a one- or two-digit number: e.g., B1.  If a single line has more than one footnote, separate the indicators with commas:  A1, A2, A3.

You can find more detailed implementation guidance in OMB's secure, web-based apportionment system under the "Open Support \ Links" tab in navigation menu.

**120.35  Do footnotes starting with the letter A correspond to Category A apportioned amounts while those starting with the letter B relate to Category B apportioned amounts?**

No.  Footnote indicators associated with lines in the Budgetary Resources section start with the letter B. Footnote indicators associated with lines in the Application of Budgetary Resources section (apportioned

amounts) start with the letter A (irrespective of whether apportioned amounts are Category A, B, AB, or C).

**120.36  Will footnotes and additional tabs/attachments become part of the apportionment?**

Yes, but they will only be subject to the Antideficiency Act if they are specifically referenced in a footnote in the OMB Action column of the Application of Budgetary Resources section of the apportionment.

It is no longer necessary to include a footnote stating that attachments not referenced in the apportionment are not subject to the Antideficiency Act.

**120.37  What footnotes are required for agencies to include in their apportionment requests?**

There is no universal requirement to include footnotes in an apportionment request, except for those required after a short-term CR (see section 120.60).  Many apportionments are approved without footnotes. Here are examples of cases when you use footnotes:

- If you submit an apportionment request and OMB included footnotes in the OMB Footnotes tab of the last approved apportionment, the previously approved footnote indicators must appear in the Prev Footnote column and the text must appear in the Previously Approved Footnotes tab.

- If a particular TAFS has a standard footnote year after year, retain it in your apportionment request unless you have consulted with OMB.

- Include any footnotes your OMB examining division has specifically directed you to include.

- Unless OMB determines otherwise, when amounts are automatically apportioned (as specified in sections 120.49, 120.50 (if applicable) or section 185.20) and there is a subsequent need for reapportionment, show automatically apportioned amounts in the previously approved column. Include a footnote noting where changes have been previously made as automatic apportionments.

- During a CR period, if you are reapportioning an account that has budgetary resources provided by other Acts (e.g., unobligated balances, spending authority from offsetting collections, etc.) and a CR Bulletin, you do not need to show the automatically apportioned amounts in the previously approved column. However, you must continue the footnote provided in section 123.17. Please see section 120.59 for more details.

**120.38  Are there footnotes that are automatically applied to annual and multi-year apportionments?**

Yes.  The following footnote is automatically apportioned for all annual and/or multi-year TAFS that may need to liquidate obligations that were incurred against canceled appropriations:

"Pursuant to 31 U.S.C. 1553(b), not to exceed one percent of the total appropriations for this account is apportioned for the purpose of paying legitimate obligations related to canceled appropriations."

Written apportionments should no longer include this footnote.

### APPROVING APPORTIONMENT REQUESTS

**120.39  How will OMB indicate its approval of an apportionment?**

When OMB approves an apportionment through the apportionment system, you will receive an e-mail with the approved Excel file attached.  The e-mail will be from 'apportionment@omb.gov,' and the subject line will include the words 'Approved Apportionment.'

- The Excel file will include a tab called 'Approval Info,' which shows the name, title, and digital signature imprint of the OMB official who approved the apportionment, as well as other pertinent information.

    - The official who approves the apportionment may affix her or his electronic signature to the request; or

    - The official approving a request may sign a paper copy in ink and instruct a staffer to put a digitized picture of the official's signature (along with a note saying which staffer affixed the signature) on the apportionment.

In some cases, the 'Approval Info' tab may not be present.  In those cases, OMB will e-mail or fax a hard copy of the apportionment that displays the signature of the approving OMB official.

The Excel file is locked, and should be opened in read-only mode.  OMB maintains a copy of the approved apportionment in its secure, web-based system.  OMB also maintains the signed-in-ink apportionment in those cases when a designated staffer affixes an official's digitized signature to the apportionment.  As OMB continues to transition from using ink signatures to using digital authoritative marks, you may receive apportionments that have been approved using either method.

OMB may also choose to indicate its approval of an apportionment in other ways, including by letter, telephone, hard copy, or other method that is appropriate to the particular circumstance. For instance, in rare circumstances where you need to obligate against a submitted reapportionment as soon as possible, you do not have to wait to receive the signed apportionment in the system before obligating if OMB has notified you that your reapportionment has already been approved.

**120.40 When can I expect OMB to approve my first apportionment request for the fiscal year?**

If a TAFS has any budgetary resources that are not determined by current actions of the Congress (e.g., permanent appropriations, carryover of unobligated balances, anticipated collections), OMB will notify you of the action taken on your first apportionment request for the fiscal year by September 10, as required by law (for requests submitted by the August 21 deadline specified by law).  For TAFSs that have budgetary resources solely as a result of current action by the Congress (e.g., TAFSs where the only budgetary resource is a discretionary appropriation), OMB will notify you of the action taken on your request by September 10 for requests submitted by August 21 or within 30 calendar days after the approval of the act providing new budget authority, whichever is later.

**120.41 In the case of newly enacted full-year appropriations, am I under an automatic apportionment until OMB approves my first full-year enacted apportionment request?**

Yes.  Under this section, newly enacted full-year appropriations, including supplemental appropriations for the current year, are automatically apportioned the pro-rata share ($1/365^{th}$ for each day, $1/366^{th}$ for a leap-year) of the current year's enacted appropriation level.

Once a full-year appropriations Act is enacted, and if the Act was preceded by a short-term continuing resolution (CR), the automatic apportionment provided by the OMB CR Bulletin is no longer in effect; however, the amounts apportioned remain in effect even if the President enacts the full-year appropriation bill prior to the end of the short-term CR period.

For example, a CR ending November 15th would result in a pro-rata amount of 12.60% (46 days/365 days, non-leap year) apportioned. If the CR is extended through December 20th an additional 9.59% (35 days/365 days) would be apportioned, bringing the total percentage of the rate of operations apportioned to 22.19% since October 1st. If full-year appropriations are enacted on December 15th (before the end of the CR period), on December 15th you are automatically apportioned the 30 days' worth of the enacted full year appropriation (30 days/365 days = 8.22%) pursuant to the automatic authority provided by this section. Therefore, from October 1st through January 15th you have been apportioned a total of 30.41%, 22.19% of the rate for operations provided by the short-term CR from the OMB CR Bulletin plus 8.22% of the final appropriated amount pursuant to this section.

The automatic apportionment does not apply to any budgetary resource provided by authorizing legislation or by reauthorizations that affect appropriated resources, such as the Farm Bill or surface transportation reauthorizations. Additionally, pursuant to sections 120.7 and 120.56, automatic apportionment does not apply to carryover amounts, which are automatically apportioned at zero until an account-specific apportionment is approved for such amounts.

Pending OMB's approval of the first written account-specific apportionment request for full-year enacted appropriations for the current fiscal year, agencies are automatically apportioned 30-calendar days of funds calculated using the above rate. Note that the pro-rata share calculation does not include recissions and other transactions used to calculate the pro-rata share pursuant to the OMB CR Bulletin. The 30-calendar days begin on the date of enactment of a full-year appropriation, except for after a lapse in appropriations (see below). If OMB has not approved a request on the 30th calendar day after enactment, agencies are automatically apportioned another 30 calendar days of funds using the above rate. This repeats until an account-specific apportionment is approved. Once a written account-specific apportionment is approved by OMB, the automatic apportionment ceases to remain in effect.

If an agency has not yet submitted its first written account-specific apportionment request to OMB within the first 30-day automatic apportionment period, the agency must provide an explanation of the delay to its OMB representative.

Under this automatic apportionment, funds are apportioned as "lump-sum". Agencies have the flexibility to record the "lump-sum" as either Category A or Category B, whichever is applicable to the account. If the funds are Category A, the "lump-sum" is automatically apportioned to the quarter in which the full year appropriation is enacted. If the funds are Category B, the "lump-sum" is automatically apportioned as a single Category B line. Additionally, all of the footnotes and conditions placed on prior year apportionments or last-approved apportionments remain in effect. This guidance applies strictly to all budgetary resources provided by annual full-year appropriations bills, including supplemental appropriations for the current year, and not other budgetary resources.

For accounts that have appropriations language with permissive carveouts ("up to" or "not more than" or "not to exceed") for a specific amount with a different period of availability (POA) than the main appropriation, the automatic apportionment applies to the main appropriation and not to the carveout amount. Under this scenario the agency must execute a non-expenditure transfer to move the carveout amount and then process an account-specific apportionment to obligate those specific transferred resources. See Exhibit 120T for further guidance on how to prepare the apportionment in these scenarios.

After a lapse in appropriations, the automatic apportionment of full-year appropriations is in effect the day the lapse occurred, not the date the President enacts the full-year appropriation. This situation only applies when a full-year appropriation follows a lapse in appropriations.

If the full-year enacted appropriations are preceded by a short-term continuing resolution, see sections 120.60 and 120.62 for further guidance on how to reflect the previous approved column on your first written account-specific apportionment request.

### AFTER YOU HAVE RECEIVED YOUR APPROVED APPORTIONMENT

**120.42  How should I execute the apportionment?**

You must execute your programs as apportioned and in accordance with all applicable laws. The authorization and / or appropriation language describes the purpose of the program(s) the TAFS will carry out, and may include guidance for you to follow in executing these programs.

Your apportionment dictates how you must execute programs and control funds. You may only obligate funds within:

- budgetary resources apportioned and realized;

- amounts apportioned by fiscal quarter (Category A);

- amounts apportioned by program, project, or activity (Category B);

- amounts apportioned by fiscal quarters and programs, projects, or activities (Category AB); and

- guidance provided in OMB approved footnotes in the Application of Budgetary Resources section.

**120.43  What if I think that I may have obligated more than the amounts apportioned?**

You may have violated the Antideficiency Act (31 U.S.C. 1517(a)(1)). See section 145.

**120.44  Must I control funds below the apportionment level?**

Yes. Your agency's fund control regulations, as approved by OMB, dictate how you must control funds. See section 150.

**120.45  How should I allot once I receive an apportionment?**

The agency system of administrative control of funds must be designed to keep obligations and expenditures from exceeding apportionments and allotments or from exceeding budgetary resources available for obligation, whichever is smaller, so as to avoid Antideficiency Act violations. See section 150.

**120.46  How do I treat anticipated budgetary resources that are apportioned in the current fiscal year but not yet realized, and do I need to reapportion them once realized?**

Even when anticipated budgetary resources have been apportioned in the current fiscal year, you may not obligate against these resources before the resources have been realized (and, thus, you may not obligate against the resources in an amount that exceeds the amount that has been realized). For example, if OMB has apportioned anticipated budget authority from the agency's collection of user fees, you may not obligate

against those user fees until you have collected them (and, thus, you may not incur obligations that exceed the amounts that have been collected). This guidance also applies to anticipated non-expenditure transfers of budgetary resources. The transferred resources cannot be obligated against until Treasury Fiscal Service has processed a non-expenditure transfer document and the resources are in the receiving account.

Apportioned anticipated budgetary resources, once realized, do not need to be reapportioned unless the amount realized exceeds the conditions on the total amount apportioned (see section 120.49). However, this only applies during the current fiscal year. For instance, if you had anticipated resources apportioned in the prior fiscal year for a reimbursable agreement but it was not realized, you will need to reapportion those anticipated resources in the next fiscal year.

### 120.47  What is the relationship between the apportionment and the Funds Control System?

The agency's system of administrative control of funds (see section 150 and Appendix H) should be designed to keep obligations from exceeding apportioned amounts, allotments, suballotments, and other administrative subdivisions of funds. This funds-control system also should be designed to keep obligations from exceeding budgetary resources that have been realized, and should be able to track obligations by program reporting categories used in the apportionment.

The funds-control system must track obligations to make sure obligated levels do not exceed:

- budgetary resources apportioned;

- amounts provided by fiscal quarter in Category A;

- amounts provided by program in Category B;

- amounts provided by program in Category AB; and

- other restrictions placed in OMB approved footnotes in the Application of Budgetary Resources section.

If the funds-control system cannot provide this control, the agency must develop other methods to perform this function, e.g., developing monitoring reports.

Since footnotes are not often implemented in an agency's financial system, the agency's budget, finance, and procurement staff need to be aware of and understand the directions and restrictions provided in footnotes.

Your agency's accounting system must fully support the funds-control system (see Appendix H).

### CHANGES TO PREVIOUSLY APPROVED APPORTIONMENTS FOR THE CURRENT FISCAL YEAR

### 120.48  What types of situations could require me to request a new apportionment?

Submit a reapportionment request to OMB when:

- Your budgetary resources have increased since your previous apportionment for the fiscal year (e.g., actual reimbursements differ significantly from estimates, newly enacted legislation provides more resources);

SECTION 120—APPORTIONMENT PROCESS

- You want to obligate against the increased resources in the same fiscal year;

- The increase is not covered by the exceptions in sections 120.49 or 120.50 (if applicable);

- Your obligations against an indefinite appropriation for the remainder of the fiscal year are expected to exceed the amount estimated on the latest approved apportionment and the latest approved apportionment does not include an "A" footnote in the OMB Action column that automatically apportions the necessary increase in budgetary resources; or

- Programmatic changes result in a need for an adjustment in the apportionment.

In order to allow time for action by OMB, submit such requests well in advance of the time that the revised amounts, to be apportioned, are needed for obligation (an apportionment for a specific time period, such as for a specific quarter of the current fiscal year, may not be changed after the end of that period).

When emergencies, such as those involving the safety of human life or the protection of property, require immediate action, you may request, and OMB may approve, a reapportionment by e-mail or other non-web-based apportionment system methods (section 120.16). As soon thereafter as it is practical, submit apportionment requests reflecting such action.

For credit program and financing TAFSs, submit an apportionment request for subsidy reestimates at the beginning of each fiscal year (starting with the fiscal year following the year in which a disbursement is made) as long as the loans are outstanding (see sections 185.17 and 185.18). Also submit an apportionment request for subsidy modifications when the modification is approved by OMB (see section 185.21). Credit program and financing TAFSs are also subject to the standard reapportionment requirements described above (see sections 185.14 through 185.21 for further guidance on apportioning credit accounts).

Submit an apportionment request within *10 calendar days* after enactment of an appropriation, substantive act providing budget authority, where such authority is enacted after the first apportionment for the year has been made (except as specified in section 120.49). We encourage you to begin preparation of apportionments and related materials as soon as the House and Senate have reached agreement on funding levels.

In some cases, you will need to submit your first apportionment request before the unobligated balance brought forward has been precisely determined. If the unobligated balance brought forward, as shown on the latest approved apportionment schedule, is larger than the unobligated balance at the end of the preceding year, as reported on the final SF 133 for that year, and the difference is larger than the amount specified in section 120.49, OMB must approve the apportionment request before you can obligate the additional funds.

## 120.49  What adjustments can I make without submitting a reapportionment request?

After the first apportionment for the fiscal year, downward adjustments of any amount to budgetary resources, including anticipated amounts, do not need to be reapportioned, unless specifically required by OMB or, at the agency's discretion, for funds control purposes. However, if the decrease applies to amounts apportioned in Category C, and as a result you need to increase the amounts apportioned to Category B(s) or current Cat A or A/B(s) lines, you will have to submit a reapportionment to reflect the reallocation from Category C. Apportioned anticipated budgetary resources, once realized in the current fiscal year of the apportionment, do not need to be reapportioned unless the amount realized exceeds the conditions on the total amount apportioned, as noted below.

Although an apportionment is not required to execute a non-expenditure transfer out of a TAFS, for funds control purposes a reapportionment should follow shortly after such a transfer is executed to reflect the non-expenditure transfer and reduce the budgetary resources of the giving account accordingly.

After the first apportionment for the fiscal year, unless OMB determines otherwise, you may adjust apportioned amounts upwards without submitting a reapportionment request by up to $400,000 or two percent of the amount of total budgetary resources, whichever is lower, to reflect:

- Upward adjustments in the amount of unobligated balances brought forward;

- Increases in amounts of budget authority transfers or balance transfers; or

- Increases in amounts of actual budgetary resources that are realized above anticipated amounts.

You may only adjust apportioned amounts when OMB apportions either a single program, project, or activity (Category B) or, if the total amount is apportioned, by quarter (Category A or Category AB). When amounts are apportioned by quarter, you must adjust the apportioned amounts in the quarter that is current when you record the resource. For example, if anticipated collections were apportioned in the third quarter but the increased amount above the anticipated collections (still within the lower of $400,000 or two percent) were not realized until the fourth quarter; record the resource in the fourth quarter, not the third. This guidance is not applicable when your resources are apportioned pursuant to an automatic apportionment. In those cases, you record the automatic apportionment of those resources in the quarter in which they are realized.

If only the name of your apportioned account and/or bureau has changed, you do not need to submit a reapportionment to OMB.

In credit financing TAFSs, additional amounts for the payment of interest to Treasury are automatically apportioned (section 185.19) if the amounts needed exceed your estimate on the most recent approved apportionment.

You cannot make any upward adjustments under this section (downward adjustments are not affected) when OMB apportions funds for two or more categories on the same apportionment, such as Category A and Category B, or Category A and Category AB, or two or more Category Bs, etc. In these types of apportioned TAFSs, you must submit a reapportionment request to OMB or otherwise have prior OMB approval (e.g., through an OMB footnote in the Application of Budgetary Resources section that starts with the indicator of A) to adjust apportioned amounts upward.

Apportionments are not required for transactions to send funds back to the Treasury, such as closing an account.

### 120.50  What other types of adjustments can I request OMB to allow me to make without submitting a new apportionment request?

You may make other specific types of adjustments to apportionments without submitting a reapportionment request if specified in a footnote in the Application of Budgetary Resources section (footnote indicator starts with letter A) on the most recently approved apportionment or otherwise approved in writing by OMB.  For example, OMB may include on an approved apportionment a footnote (with a corresponding YES in the Line Split column of the Adjustment Authority Provided row) which states that, to the extent provided in law, actual earned reimbursements are automatically apportioned without further OMB action.

In order to facilitate OMB approval of your apportionment request, your apportionment request must indicate that you have previously received, or are requesting, OMB approval to use this authority.

**120.51  What is the status of previously approved apportionments when a new apportionment is approved in the same fiscal year?**

Each new apportionment in a fiscal year supersedes previous apportionment actions taken earlier that year.

## APPORTIONMENTS BY TIME PERIOD

**120.52  Will OMB apportion funds into future fiscal years?**

Yes.  OMB will sometimes apportion multi-year/no-year funds into future fiscal years using a Category C. OMB cannot apportion annual funds into a future fiscal year.

The Congress appropriates funds on a multi-year and no-year basis with the expectation that the funds will be obligated over more than one fiscal year.  OMB will apportion these TAFSs beyond the current fiscal year where financial requirements are known in advance and it makes programmatic sense to do so.

When you plan to obligate amounts appropriated in a no-year or multi-year TAFSs over more than one fiscal year, make sure that the apportionment request shows the full amount appropriated and available for obligation in the current fiscal year.  The request must also include planned obligations for the current year and amounts planned for obligation in future fiscal years.

Note: apportionments last no longer than one fiscal year.  Funds must be apportioned at the beginning of each fiscal year in accordance with sections 120.7 and 120.56.

**120.53  When do I use lines 6180 (withheld pending rescission) or 6181 (deferred)?**

Do not use these lines on your apportionment without first consulting with your OMB representative.  These lines are used to reflect a proposed rescission or deferral under the authority of the Impoundment Control Act of 1974.  If these lines are used on your apportionment, you must submit a rescission or deferral report that outlines the reasons for and the effects of the proposed action.  See section 112 for further information on the use of these lines and preparing rescission and deferral reports.

**120.54  Can OMB reapportion a past period?**

No.  Apportionments are never subject to change after the period for which the apportionment was made (e.g., a prior fiscal year or a past quarter time period in the current fiscal year).

For apportionments with Category A amounts, once funds are apportioned, the apportionment cannot be retroactively changed to show a different apportioned amount if that quarter has passed.  For instance, if your first quarter apportioned amount was overestimated but in a subsequent quarter the realized actuals were much lower than the estimated amount, you would do the following on the reapportionment:

- First quarter apportioned amount remains as previously apportioned;

- Current quarter (i.e., second, third or fourth) reflect a negative amount so as to net to the correct total amount that needs to be reapportioned.

See exhibit 120K for an example.

Here are examples of where OMB is not reapportioning a past period: apportionments that simply reflect a past automatic apportionment on a subsequent account-specific apportionment, such as the initial account-specific apportionment following a continuing resolution (because the apportionment was in fact in effect during the past quarter time period); or where budget authority has been expressly appropriated to cover prior obligations.

See section 120.41 for additional guidance about the automatic apportionment of budgetary resources when a full-year appropriations Act follows a lapse in appropriations.

**120.55 Do unobligated resources apportioned in earlier time periods of the same fiscal year remain available?**

Yes. When budgetary resources are apportioned for time periods of less than a fiscal year (e.g., fiscal quarters), any apportioned amounts that have not been obligated at the end of any period will remain available for obligation through the remainder of the current fiscal year without being reapportioned, unless otherwise specified on the apportionment. However, this rule does not apply to unobligated balances apportioned during a short-term continuing resolution that is followed immediately by a lapse in appropriations (see section 123.16).

**120.56 Must I request that funds apportioned in one fiscal year be apportioned in the next fiscal year if the funds were not obligated and remain available?**

Yes. When budgetary resources remain available (unexpired) beyond the end of a fiscal year, you must submit a new apportionment request for the upcoming fiscal year. You cannot incur obligations in any year absent an approved apportionment for that year. For instance, if OMB apportioned $1 million for a no-year TAFSs in FY 2018 and you obligated no funds, you must still submit an FY 2019 request and receive OMB approval of that request before incurring obligations in FY 2019. Until you receive an account-specific apportionment from OMB, the amount of carryover apportioned is zero dollars. In addition, apportioned anticipated or estimated resources are not available for obligation until the resources are realized.

**120.57 What is the status of approved apportionments from a previous fiscal year on apportionments in the current fiscal year?**

New apportionment action for a fiscal year is independent of all apportionment actions of the previous year, including the apportionment of amounts under Category C in the previous fiscal year.

**120.58 How does the last approved apportionment govern the actions a TAFS takes when the TAFS enters the expired phase?**

Every annual and multi-year TAFSs, as well as some no-year TAFSs, has a finite period of time to incur an obligation; this is called the unexpired phase. OMB only apportions TAFSs in the unexpired phase.

When shifting to the expired phase, a TAFS can only make adjustments to obligations made in the unexpired phase. Activity in the expired phase of a TAFS is governed by the last approved apportionment, including apportioned footnotes in the OMB Action column of the Application of Budgetary Resources section.

In some instances, there may be a subset of resources in a no-year TAFS that are no longer available for new obligations. This does not impact the phase (e.g., expired or unexpired) of the entire TAFS.

**APPORTIONMENTS AFFECTED BY A CONTINUING RESOLUTION (CR)**

**120.59  During a CR, what happens to TAFS that were apportioned before the start of a fiscal year (e.g., no-year TAFSs)?**

When budgetary resources (e.g., unobligated balances, spending authority from offsetting collections, anticipated transfers) are apportioned prior to the start of a fiscal year, those apportionments remain in effect even if a CR is enacted, unless otherwise directed by OMB.

However, you must submit a new apportionment request to OMB if:

- The CR changes the funding level or alters the program mix that OMB apportioned (e.g., the Congress rescinds unobligated balances during the CR period or zero-funds a program that OMB previously apportioned); or

- Changes occur that affect the budgetary resources apportioned as described in sections 120.48 through 120.50 (e.g., actual reimbursements differ significantly from estimates).

The automatic apportionment approved by OMB after enactment of a short-term CR (OMB CR Bulletin) covers only the budgetary resources provided by the short-term CR.  Some TAFSs may receive funds provided by the CR in addition to budgetary resources provided by other acts.  These TAFSs receive both the automatic apportionment for the CR funds and any budgetary resources apportioned before the start of the fiscal year (e.g., unobligated balance carried forward).

If you chose to seek reapportionment of the TAFS during the CR period and you and the RMO agree not to reflect the amounts from the CR in the reapportionment, then you must include a footnote in the reapportionment to indicate that the account is also receiving apportioned resources from the CR.  See section 123.17 for the footnote language.

**120.60  After a CR has been replaced by a full-year enacted appropriation, what do I show in the Previous Approved column?**

Unless otherwise requested by your RMO, in the Previous Approved column, show all budgetary resources and apportioned amounts since the start of the fiscal year through the last day of the CR (in accordance with the most recent OMB CR Bulletin on the "Apportionment of the Continuing Resolution(s) for Fiscal Year 20XX") plus the amounts automatically apportioned pursuant to section 120.41.  For example, amounts on line 1100, discretionary appropriations, should show the short-term CR's calculated rate for operations. Additionally, a footnote on line 1134 Appropriations precluded from obligation (or line 1135 for a special or trust fund TAFS), should state the following: "Amount on line 1134 (or line 1135) has been adjusted pursuant to OMB CR Bulletin XX-XX and Circular A-11 section 120.41." (see exhibit 120G).  For instance, if budgetary resources such as unobligated balances were apportioned by OMB and the TAFS also received automatically apportioned CR funds via the OMB CR Bulletin(s) and section 120.41, you must show both types of budgetary resources on your apportionment request.

If you were apportioned under the CR with a POA that was changed in the full-year enacted appropriations, see section 120.62 for further apportionment guidance.

**120.61  After a short-term CR has been replaced by a full-year enacted appropriation, what do I show in the agency request column?**

In the agency request column, show all budgetary resources and application of budgetary resources for the entire fiscal year, beginning from the start of the fiscal year.  See section 120.54 and exhibit 120G.  See

Exhibit 120H if you received OMB concurrence during the short-term CR period to record your lump-sum automatic apportionment as Category A.

Note that while an account is under the automatic apportionment authority in section 120.41, GTAS reporting will not show any amounts on line 1134 unlike the previously approved column of the first apportionment post-CR. Instead, GTAS will report those amounts on line 2403 in the Status of Budgetary Resources section of a SF 133.

## 120.62 What do I do if the full-year enacted appropriation changes the period of availability of funds apportioned under a short-term CR?

If the POA of funds under a short-term CR was changed by the full-year enacted appropriations, you must submit two account-specific apportionments. Under the short-term CR, you were apportioned for that specific POA and all obligations were valid; however, the CR states that expenditures made pursuant to the CR shall be charged to the applicable appropriation, fund, or authorization whenever a bill in which such applicable appropriation, fund, or authorization is contained is enacted into law.

In the situation where the entire POA of the TAFS changed in the final bill, you must prepare the following apportionments. In this scenario the CR POA was annual and the final enacted appropriation POA was multi-year.

- For the POA that was under the CR, you will reflect "0" on lines 1100 discretionary appropriation and 1134 appropriation excluded from obligation (or 1135 for special and trust funds) and place the following "A" footnote on line 6190 total budgetary resources available in the previously approved column only:

  o "Under the FY 2020 short-term continuing resolution (CR) (P.L. XXX-XXX, as amended) this account was appropriated as an annual TAFS (put TAFS number here) and was apportioned by OMB Bulletin 19-XX. The full-year FY 2020 appropriation (P.L. XXX-XXX) enacted the funding within a multi-year TAFS (put TAFS number here) and was automatically apportioned via OMB Circular A-11 section 120.41. Pursuant to section XXX (check CR for actual section number, e.g., 105) of the FY 2020 CR, any obligations/outlays made with the previous annual appropriation shall now be redistributed (or recast) to the new multi-year TAFS (put TAFS number here)."

- For the POA that is enacted in the full-year bill, you will reflect the CR (lines 1100 discretionary appropriations and 1134 appropriation excluded from obligation or 1135 for special or trust funds) in the previous approved column (see section 120.60 for "B" footnote on line 1134 or 1135) and place the following "A" footnote on line 6190 total budgetary resources available:

  o "Under the FY 2020 short-term continuing resolution (CR) (P.L. XXX-XXX, as amended) this account was appropriated as an annual TAFS (put TAFS number here) and was apportioned by OMB Bulletin 19-XX. The full-year 2020 appropriation (P.L. XXX-XXX) enacted the funding within this multi-year TAFS (put TAFS number here) and was automatically apportioned via OMB Circular A-11 section 120.41. Pursuant to section XXX (check CR for actual section number, e.g., 105) of the FY 2020 CR, any obligations/outlays made with the previous annual appropriation shall now be redistributed (or recast) to this new multi-year TAFS (put TAFS number here)."

There may be cases where the POA is only changed partially by the full-year enacted appropriations bill. If this occurs, please contact your OMB representative for guidance.

### WHAT OTHER IMPORTANT THINGS DO I NEED TO KNOW ABOUT APPORTIONMENTS?

**120.63  What types of resources are apportioned by OMB?**

The following resources are apportioned by OMB:

- Budgetary resources;

- Non-budgetary resources (such as foreign currency, quotas, etc.); and

- An agency's other authority (pursuant to statutory authority) in whatever form it may take.

**120.64  Are all apportionments based on authority to incur obligations?**

OMB usually apportions the budgetary resources of a TAFS with respect to the authority to incur new obligations.

However, OMB may apportion budgetary resources on a pre-obligation basis, such as "commitments," which, if used, are made before obligations are incurred.  If OMB apportions on a basis other than obligations, you should continue to include your usual obligations in the GTAS system, but in addition, you must report a GTAS footnote regarding the status of the non-obligation apportioned items, i.e., footnote the amount of "commitments" incurred against the amount shown on the apportionment.

**120.65  How do I treat extensions of the availability of unobligated balances in an apportionment?**

Reappropriations (see section 20.4(h)) are recorded on lines 1105 Discretionary Reappropriation or 1204 Mandatory Reappropriation.  For example, an apportionment for FY 2019 should reflect an estimate of the amount to be reappropriated from the estimated expiring FY 2018 balances.  A reappropriation may be required after the actual amount of the expiring balances is known.  You may wish to reflect these amounts on either lines 1134 Discretionary appropriations precluded from obligation (use for only general fund TAFS; use line 1135 for special or trust fund TAFS) or 1235 Mandatory appropriations precluded from obligation, until an appropriate time after the required reprogramming notice has been transmitted to the Congress.

Balance transfer amounts from expired to unexpired funds, are reflected on line 1012 Unobligated balance transfers between expired and unexpired accounts.

### HANDLING DEFICIENCIES IN APPORTIONMENTS

**120.66  When and how do I submit apportionments anticipating the need for the Congress to enact supplemental budget authority?**

Submit requests anticipating the need for the Congress to enact supplemental budget authority only under exceptional circumstances as authorized by law.  The Antideficiency Act (31 U.S.C. 1515) permits apportionments to be made on such a deficient-rate basis that indicates the need for the Congress to enact supplemental budget authority only when:

- Laws enacted after submission to the Congress of the estimates for an appropriation require an expenditure beyond administrative control.

- Emergencies arise involving:

    o (1) the safety of human life;

    o (2) the protection of property; or

    o (3) the immediate welfare of individuals in cases where an appropriation that would allow the United States to pay, or contribute to, amounts required to be paid to individuals in specific amounts fixed by law or under formulas prescribed by law, is insufficient.

When you submit a requested apportionment that indicates a necessity for the enactment of supplemental appropriations, include the following notation on the apportionment request:

"This apportionment request indicates a necessity for a supplemental appropriation now estimated at $_____."

Submit the apportionment request to OMB along with your agency head's determination of the reasons for a deficiency apportionment, as required by law (31 U.S.C. 1515). The statement of necessity will read as follows:

"I hereby determine that it is necessary to request apportionment of the appropriation '(appropriation title)' on a basis that indicates the necessity for a supplemental estimate of appropriations, because .... [cite one of the allowable reasons mentioned above]."

Usually, you will reflect the need for a supplemental appropriation in quarterly apportionments by making the request for the fourth quarter less than the amount that will be required. For apportionments by activities, verify that the amount requested for each activity provides for continuing that activity until the supplemental appropriation is expected to be enacted and become available. OMB approval of requests for a deficiency apportionment allows the agency to operate at a deficient rate of operations, but does *not* authorize the agency to exceed the total amount of the existing appropriation and of the resources that OMB has apportioned within a TAFS.

Fully justify the amount of any anticipated supplemental appropriation. Action on the apportionment request does not commit OMB to the amount of the supplemental appropriation that will be recommended subsequently to the President or transmitted to the Congress.

A deficiency apportionment cannot be requested to provide obligational authority in the event of a lapse of appropriations. The obligational authority for such a circumstance is provided by 31 U.S.C. 1342, and is automatically apportioned via section 124.5.

## PROGRAM REPORTING CATEGORIES

### 120.67  What is the purpose of program reporting categories?

Program reporting categories show how agencies will report obligations on their SF 133 Reports on Budget Execution and Budgetary Resources (see section 130). Absent program reporting categories, agencies report obligations on their SF 133 reports in accordance with their approved apportionments. For instance, if OMB uses a single Category B project on the apportionment and does not use program reporting categories, the SF 133 report will show obligations on a single line.

You should use program reporting categories when you want obligations reported at a more detailed and programmatically meaningful manner than the apportioned lines would otherwise result in. If program reporting categories were used in the case above, the SF 133 report would show obligations on two or (most likely) more lines. For instance, if a Department of the Interior account had a single Category B project but program categories for maintaining land resources and protecting endangered species, the SF 133 report would distinguish obligations by these categories. While program reporting categories result in more detailed reporting on obligations, they do not control what the agency can obligate for these categories.

Most TAFSs do not use program reporting categories.

**120.68  Do my estimates of program reporting category obligations limit the amount I can obligate?**

No. Program reporting categories are not used to apportion funds, and are not subject to the Antideficiency Act.

**120.69  What do OMB and the agency need to do to start using program reporting categories?**

OMB and agencies work together to determine what program reporting categories agencies will report upon. Program reporting categories should be based on elements that agencies track in their financial systems. In some cases, you may choose to report upon the same programs that appear in the Program and Financing Schedule of the President's Budget.

Because the level of reporting is lower level than the apportionment categories, program reporting categories should be identified in advance of the beginning of a fiscal year if at all possible, and in advance of the time that agencies produce their first apportionment requests for the year. The reason is that agencies need time to place entries in their financial systems to allow them to track these program categories throughout the year. One reason is that large numbers of staff including timekeepers, procurement staff, administrative officers, and others need to document the new program reporting categories, and train program office staff on how to use the new categories. In addition, agencies may need time to update their systems to extract the data.

**120.70  How do I fill in the program reporting category tab?**

The apportionment user's guide that appears on the support\links tab of the apportionment system describes how to fill in the program reporting category tab. The URL for the apportionment system is: https://apportionment.max.gov.

**120.71  Why does OMB send the names of program reporting categories and Category B projects to Treasury for use in GTAS?**

OMB sends program reporting categories from approved apportionments to the Treasury Department's Bureau of the Fiscal Service, which operates the GTAS system that agencies use to report their SF 133 budget execution information. When reporting their obligations, GTAS provides agencies with the list of program reporting categories to report upon; these are the same program reporting categories that OMB provides from the apportionment attachments.

For those TAFSs that use Category B projects but do not use program reporting categories, OMB sends Fiscal Service the list of Category B projects for use in GTAS reporting.

OMB sends this information to Fiscal Service so OMB can use automated tools to align program reporting categories and Category B projects on the apportionments to the budget execution reports.

APPORTIONMENT PROCESS                                                    EXHIBIT 120A

PROGRAM REPORTING CATEGORIES FORMAT

Program Reporting Categories

| Agency Identifier | Beginning POA | Ending POA | Availability Type | Main Account | SF 132 Line | Report Cat No. | Program Reporting Category | Projected, Annual Obligations |
|---|---|---|---|---|---|---|---|---|
| 080 | | | X | 1309 | 6001 | 1 | Salaries | 400,000 |
| 080 | | | X | 1309 | 6001 | 2 | All Other | 80,000 |
| 080 | | | | | | | Cat A, Sub-total | 480,000 |
| 080 | | | X | 1309 | 6011 | 3 | Research -- Air | 8,880,000 |
| 080 | | | X | 1309 | 6011 | 4 | Research -- Water | 4,000,000 |
| 080 | | | X | 1309 | 6011 | 5 | Research -- All Other | N/A |
| 080 | | | | | | | Research, Sub-total | 12,880,000 |
| 080 | | | X | 1309 | 6012 | 6 | Development -- Air | 5,450,000 |
| 080 | | | X | 1309 | 6012 | 7 | Development -- Water | 4,000,000 |
| 080 | | | X | 1309 | 6012 | 8 | Development -- All Other | N/A |
| 080 | | | | | | | Development, Sub-total | 9,450,000 |

Note:  Program reporting categories are not used to apportion funds, and are not subject to 31 USC 1517.

When the Report Cat No has a number between 1 - 100,  the stub will be sent to the GTAS system for use in budget execution reporting.

You may also include additional rows where the Report Cat No is blank.  In this example, these rows serve as sub-totals.

Note how the program reporting categories relate to apportioned amounts in Exhibit 120D's Office of the Secretary apportionment.

Do not use program reporting categories  that are identical to Category B projects.  The simple rule is that you use two or more reporting categories for each Cat B project.

Check with OMB on whether you need to put in projected, annual obligations.

Note also that the amounts in this column do not need to add to the total amount on the apportioned lines.

**EXHIBIT 120B**                                                    **APPORTIONMENT PROCESS**

### One-Year Appropriation—First Apportionment for the Current Fiscal Year



Exhibit Notes:

    1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

    2) Per section 120.41, newly enacted appropriations are automatically apportioned for a temporary period.  If you choose to leave the previous approved column blank and were under an automatic apportionment(s), then state so in an "A" footnote on line 6190 in in that column.

**APPORTIONMENT PROCESS**                                            **EXHIBIT 120C**

### No-Year Appropriation—First Apportionment for the Current Fiscal Year



Exhibit Notes:

  1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

  2) Per section 120.41, newly enacted appropriations are automatically apportioned for a temporary period.  If you choose to leave the previous approved column blank and were under an automatic apportionment(s), then state so in an "A" footnote on line 6190 in that column.

**EXHIBIT 120D**                                                          **APPORTIONMENT PROCESS**

### No-Year Appropriation—Reapportionment

FY 20x Apportionment
Funds provided by Public Law XXX-XXX

> Identify in the header the law(s) providing the budget authority.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-1309** | | | | | | | |
| IterNo RptCat AdjAut | 2 NO YES | Last Approved Apportionment: 9/10/CY Reporting Categories Adjustment Authority provided | | | | | | | |
| 1000 | DE DA | Unob Bal: Brought forward, Oct 1 [line split = DE for estimated balances of discretionary] [line split = DA for actual balance of discretionary] | 1,298,000 | | 1,610,000 | | 1,610,000 | | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 150,000 | | 150,000 | | 150,000 | | |
| 1100 | | BA: Disc: Appropriation | 25,000,000 | | 25,000,000 | | 25,000,000 | | |
| 1130 | | BA: Disc: Appropriations permanently reduced | | | -200,000 | | -200,000 | | |
| 1700 | | BA: Disc: Spending auth: Collected | | | 95,000 | | 95,000 | | |
| 1740 | 1 | BA: Disc: Spending auth:Antic colls, reimbs, other | 300,000 | | 205,000 | | 205,000 | | |
| 1740 | 2 | BA: Disc: Spending auth:Antic colls, reimbs, other | 100,000 | | 100,000 | | 100,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **26,848,000** | | **26,960,000** | | **26,960,000** | | |
| 6001 | | 1st quarter | 120,000 | | 120,000 | | 120,000 | | 36,000 |
| 6002 | | 2nd quarter | 120,000 | | 120,000 | | 120,000 | | |
| 6003 | | 3rd quarter | 120,000 | | 120,000 | | 120,000 | | |
| 6004 | | 4th quarter | 120,000 | | 120,000 | | 120,000 | | |
| 6011 | | Research | 16,800,000 | | 12,880,000 | | 12,880,000 | | |
| 6012 | | Development of Products | 9,568,000 | | 9,600,000 | | 9,600,000 | | 1,348,250 |
| 6170 | | CY +1 | | | 4,000,000 | | 4,000,000 | | |
| **6190** | | **Total budgetary resources available** | **26,848,000** | | **26,960,000** A1 | | **26,960,000** A1 | | |

> If you need to reapportion after final unobligated balances are determined, change the line split from E to A. For more information about when a reapportionment is necessary, please see section 120.49.

> On a reapportionment, this entry will include enacted appropriations, amounts certified by Treasury warrant of indefinite appropriations, any enacted supplemental appropriation, and any appropriated receipts in special and trust funds. See Appendix F for applicable line numbers.

> Anticipated resources should be adjusted to actual resources on subsequent apportionments.

> No-year and multi-year TAFS can have apportioned amounts in future fiscal years (Category C). When using line 6170, provide the future fiscal years.

> Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

2) Unless OMB determines otherwise, when amounts are automatically apportioned (see section 120.50), and there is a subsequent need for reapportionment, reflect adjustments previously made as automatic apportionments in the "Previous Approved" column. In such cases, footnote what changes were automatically apportioned.

3) Exhibit 130C illustrates the SF 133 for this account.

**APPORTIONMENT PROCESS**                                                                 **EXHIBIT 120E**

---

### One-Year Appropriations Under Continuing Resolution (CR)

FY 20xx Apportionment
Funds provided by Public Law XXX-XXX

> Identify in the header the law(s) providing the budget authority. If a CR is extended multiple times, include the citation of first CR "as amended" (not the subsequent amendments). However, if a new, separate CR is passed (e.g. after a lapse in appropriations), cite the new CR as well as the first CR.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: Salaries and Expenses (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)** **TAFS: 080-20xx-20xx-0137** | | | | | | | |
| IterNo RptCat AdjAut | 1 NO NO | Last Approved Apportionment: N/A, First Request of year Reporting Categories Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 24,000,000 B1 | | 24,000,000 | | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | | | -22,030,000 B2 | | -22,030,000 | | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | | | 1,348,260 | | 1,348,260 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **0** | | **3,318,260** | | **3,318,260** | | |
| 6001 | | 1st quarter | | | 1,348,260 A3 | | 1,348,260 A3 | | |
| 6002 | | 2nd quarter | | | 0 | | 0 | | |
| 6003 | | 3rd quarter | | | 0 | | 0 | | |
| 6004 | | 4th quarter | | | 0 | | 0 | | |
| 6011 | | Lump Sum | | | 1,970,000 | | 1,970,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | **3,318,260** | | **3,318,260** | | |

> Even though a short-term CR is for part of a fiscal year, you still show the total annualized level (i.e., rate for operations) provided by the CR on line 1100 (not the pro-rata share apportioned for the time period of the CR).

> For a short-term CR, show the amount of BA that is currently not provided under the given time period of the CR as a negative on line 1134 (for special or trust fund TAFS, you must use line 1135). (See section 123.2 for guidance.)

> Note that funds made available by the continuing resolution ($24,000,000 - $22,030,000) are all apportioned as lump sum by the OMB short-term CR apportionment bulletin.
>
> You can either show the lump-sum amount in Cat B (as shown on line 6011) OR if you typically apportion Cat A, the entire lump-sum amount in the first quarter (line 6001). If the short-term CR gets extended and enacted in a subsequent quarter, you would reflect the additive amount as lump-sum in the quarter current at that time.

> Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:

   1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

   2) Generally, the OMB CR Bulletin will automatically apportion funds made available by a CR without requiring you to submit an account-specific apportionment request (see section 123.3, 120.59). However, you may submit, or OMB may require you to submit a request.

**EXHIBIT 120F**                                                                                            **APPORTIONMENT PROCESS**

Appropriations and Unobligated Balances Under a Continuing Resolution (CR)



Footnote A1: In addition to the amounts apportioned above, this account also received funds pursuant to Public Law XXX-XXX as automatically apportioned via OMB Bulletin XX-XX.

Exhibit Notes:

1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

2) Generally, the OMB CR Bulletin will automatically apportion funds made available by a CR without requiring you to submit an account-specific apportionment request (see section 123.3, 120.59). However, you may submit, or OMB may require you to submit a request.

3) You must submit a reapportionment request showing the final determination of unobligated balances to OMB as soon as it becomes known unless the amount is automatically apportioned by section 120.49. If you need to submit a reapportionment post October 1 and you do not reflect the amounts automatically apportioned by the OMB CR Bulletin, then you must footnote the apportionment accordingly (see section 123.18).

**Apportionment Following a Continuing Resolution (CR) (No-Year TAFS)**



Footnote B1: Amount on line 1134 has been adjusted pursuant to OMB Bulletin XX-XX and A-11 section 120.41.

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
2) Consult your RMO for B1 footnote language if you received an account-specific apportionment during the short-term CR.
3) See section 120.60 for additional detail on what to show in the "Previous Approved" column post CR.

**EXHIBIT 120H**                                                              **APPORTIONMENT PROCESS**

**Apportionment Following a Continuing Resolution (CR) (Annual TAFS, Category A)**



Exhibit Notes:

    1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

    2) Consult your RMO is you received an account-specific written apportionment during the short-term CR for B1 footnote language.

    3) See section 120.60 for additional detail on what to show in the "Previous Approved" column post CR.

### Public Enterprise (Revolving) or Intragovernmental (Revolving) Fund - Reapportionment

FY 20xx Apportionment
Funds provided by Public Law XXX-XXX

> Identify in the header the law(s) providing the budget authority.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-4321** | | | | | | | |
| IterNo | 2 | Last Approved Apportionment: 9/10/CY | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1000 | DE | Unob Bal: Brought forward, Oct 1 | 83,584,884 | | | | | | |
| | DA | [line split = DE for estimate of discretionary balances] | | | 83,583,738 | | 83,583,738 | | |
| | | [line split = DA for actual discretionary balances] | | | | | | | |
| 1023 | | Unob Bal: Applied to repay debt | -20,756,800 | | -20,756,800 | | -20,756,800 | | |
| 1100 | | BA: Disc: Appropriation | 4,100,000 | | 4,100,000 | | 4,100,000 | | |
| 1700 | 1 | BA: Disc: Spending auth: Collected | | | 8,000,000 | | 8,000,000 | | |
| 1700 | 2 | BA: Disc: Spending auth: Collected | | | 8,189,500 | | 8,189,500 | | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 69,806,300 | | 54,616,800 | | 54,616,800 | | |
| **1920** | | **Total budgetary resources avail. (disc. and mand.)** | **136,734,384** | | **137,733,238** | | **137,733,238** | | |
| 6001 | | 1st quarter | 550,000 | | 550,000 | | 550,000 | | 1,965,425 |
| 6002 | | 2nd quarter | 650,000 | | 650,000 | | 650,000 | | |
| 6003 | | 3rd quarter | 625,000 | | 625,000 | | 625,000 | | |
| 6004 | | 4th quarter | 609,600 | | 609,600 | | 609,600 | | |
| 6011 | | Management services | 23,202,000 | | 23,202,000 | | 23,202,000 | | 6,190,625 |
| 6012 | | Sales program | 11,834,000 | | 11,834,000 | | 11,834,000 | | 2,012,790 |
| 6013 | | Power program | 20,980,600 | | 20,980,600 | | 20,980,600 | | 5,125,630 |
| 6182 | | Unapportioned balance of revolving fund | 78283184 | | 79,282,038 | A1 | 79,282,038 | A1 | |
| **6190** | | **Total budgetary resources available** | **136,734,384** | | **137,733,238** | | **137,733,238** | | |

> Change the line split from DE to DA whenever you reapportion after the final determination of unobligated balance.

> Note: For Cat A you fill in the memo obligations in the quarter in which the obligations were incurred

> Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:
    1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

    2) If you don't know the amount of the unobligated balance brought forward at the time you must submit an apportionment request for an account, show an estimated amount on line 1000, and submit a reapportionment form if adjustments are required, except as specified in section 120.49.

    3) For revolving funds with indefinite  borrowing authority :
        • Line 1023 includes estimates for the year of repayments of principal.
        • Line 1740 includes any credits or payments anticipated to be received.

    4) Exhibit 130E illustrates the SF 133 for this account.

## Trust Fund Limitation

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment<br>Funds provided by Public Law N/A | | | | | | | |
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 080-20xx-20xx-8004** | | | | | | | |
| IterNo<br>RptCat<br>AdjAut | 2<br>NO<br>NO | Last Approved Apportionment: 9/10/CY<br>Reporting Categories<br>Adjustment Authority provided | | | | | | | |
| 1201 | | BA: Mand: Appropriation (special or trust Fund) | 9,000,000 | | 9,000,000 | B1 | 9,000,000 | B1 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **9,000,000** | | **9,000,000** | | **9,000,000** | | |
| 6011 | | Management services | 1,500,000 | | 1,500,000 | | 1,500,000 | | 500,000 |
| 6012 | | Sales program | 7,500,000 | | 7,500,000 | | 7,500,000 | | 2,003,456 |
| **6190** | | **Total budgetary resources available** | **9,000,000** | | **9,000,000** | | **9,000,000** | | |

Include reference to law(s) that establish the limitation authority in a footnote. Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:
  1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

**APPORTIONMENT PROCESS**                                                                **EXHIBIT 120K**

**Negative Amount Due to Reduced Unobligated Balance**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment<br>Funds provided by Public Law N/A | | | | | | | |
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 080-X-4321** | | | | | | | |
| IterNo | 2 | Last Approved Apportionment: 9/10/CY | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1000 | DE | Unob Bal: Brought forward, Oct 1 | 1,180,000 | | | | | | |
| | DA | Unob Bal: Brought forward, Oct 1<br>[line split = DE for estimate of discretionary balances]<br>[line split = DA for actual discretionary balances] | | | 410,000 | | 410,000 | | |
| 1021 | | Unob Bal: Recov of prior year unpd obl | 150,000 | | 150,000 | | 150,000 | | |
| 1700 | | BA: Disc: Spending auth: Collected | | | 86,000 | | 86,000 | | |
| 1701 | | BA: Disc: Spending auth: Chng uncoll pymts Fed src | | | 9,000 | | 9,000 | | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 400,000 | | 145,000 | B1 | 145,000 | B1 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,730,000** | | **800,000** | | **800,000** | | |
| 6001 | | 1st quarter | 432,500 | | 432,500 | | 432,500 | | 250,000 |
| 6002 | | 2nd quarter | 432,500 | | -32,500 | | -32,500 | | |
| 6003 | | 3rd quarter | 432,500 | | 200,000 | | 200,000 | | |
| 6004 | | 4th quarter | 432,500 | | 200,000 | | 200,000 | | |
| **6190** | | **Total budgetary resources available** | **1,730,000** | | **800,000** | | **800,000** | | |

Callout text boxes:

> Assuming that 1st quarter obligations were $250,000 in this example, then the 2nd quarter apportioned amount would be $150,000 (432,500 apportioned less 250,000 obligated plus -32,500 apportioned).

> When you need to reduce the cumulative amount apportioned through the current period, revise the amount apportioned for the current period to a negative amount.

Exhibit Notes:
    1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
    2) Apportionments previously established are not subject to change after the close of the period for which the apportionment is made (section 120.54).

**Apportionments in Future Fiscal Years for Multi-Year Accounts (Category C)**

**Current year's Apportionment:**

FY 20xx Apportionment
Funds provided by Public Law N/A

*Identify in the header the law(s) providing the budget authority.*

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 80-20xx-20xx+1-4321** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 100,000 | | 100,000 | | |
| 1920 | | **Total budgetary resources avail (disc. and mand.)** | 0 | | **100,000** | | **100,000** | | |
| 6001 | | 1st quarter | | | 12,500 | | 12,500 | | |
| 6002 | | 2nd quarter | | | 12,500 | | 12,500 | | |
| 6003 | | 3rd quarter | | | 12,500 | | 12,500 | | |
| 6004 | | 4th quarter | | | 12,500 | | 12,500 | | |
| 6170 | | FY 20xx+1 | | | 50,000 | | 50,000 | | |
| 6190 | | **Total budgetary resources available** | 0 | | **100,000** | | **100,000** | | |

*Includes the full amount appropriated*
*The planned use of appropriations in year 1.*
*The planned use of appropriations in year 2 assuming there's no programmatic need in first year.*

**Next year's apportionment:**

FY 20xx+1 Apportionment
Funds provided by Public Law N/A

| Line No | Line Split | Bureau/ Account Title / Cat B Stub / Line Split | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 80-4321 20xx/20xx+1** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1000 | DA | Unob Bal: Brought forward, Oct 1<br>[line split = DE for estimate of discretionary balances]<br>[line split = DA for actual discretionary balances] | | | 52,000 | | 52,000 | | |
| 1061 | | Anticipated recoveries of prior year unpaid and paid obligations | | | 5,000 | | 5,000 | | |
| 1920 | | **Total budgetary resources avail (disc. and mand.)** | 0 | | **57,000** | | **57,000** | | |
| 6001 | | 1st quarter | | | 13,000 | | 13,000 | | |
| 6002 | | 2nd quarter | | | 13,000 | | 13,000 | | |
| 6003 | | 3rd quarter | | | 13,000 | | 13,000 | | |
| 6004 | | 4th quarter | | | 18,000 | | 18,000 | | |
| 6190 | | **Total budgetary resources available** | 0 | | **57,000** | | **57,000** | | |

*Includes the $50,000 planned to be obligated in year 2 plus $2,000 not obligated in year 1.*
*The planned use of appropriations in year 2.*

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
2) Apportionments previously established are not subject to change after the close of the period for which the apportionment is made (section 120.54).

**Trust Fund with Contract Authority, Appropriation to Liquidate Contract Authority, and Obligation Limitation**

FY 2011 Apportionment
Funds provided by Public Law N/A

Identify in the header the law(s) providing the budget authority.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-8004** | | | | | | | |
| IterNo | 2 | | | | | | | | |
| RptCat | NO | Last Approved Apportionment: 9/10/CY Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 90,000 | | 90,000 | | |
| 1138 | | BA: Disc: Approps applied to liq contract auth | | | -90,000 | | -90,000 | | |
| 1600 | | BA: Mand: Contract authority | 100,000 | | 100,000 | | 100,000 | | |
| 1622 | | BA: Mand: Contract auth: Precluded from ob (lim) | | | -10,000 | | -10,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **100,000** | | **90,000** | | **90,000** | | |
| 6001 | | 1st quarter | 25,000 | | 25,000 | | 25,000 | | |
| 6002 | | 2nd quarter | 25,000 | | 20,000 | | 20,000 | | |
| 6003 | | 3rd quarter | 25,000 | | 25,000 | | 25,000 | | |
| 6004 | | 4th quarter | 25,000 | | 20,000 A1 | | 20,000 | | |
| **6190** | | **Total budgetary resources available** | **100,000** | | **90,000** | | **90,000** | | |

The appropriation to liquidate contract authority is included on line 1100 and is subtracted on line 1138 because it cannot be used to make new obligations.

Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

2) This example assumes that the authorizing legislation provides $100,000 in contract authority that was apportioned in the initial apportionment for the year. Subsequently, the appropriation act provided $90,000 in an appropriation to liquidate contract authority and limited obligations from the contract authority to $90,000.

3) This example assumes that the contract authority that cannot be obligated is available to be obligated in the succeeding fiscal year. This is an obligation limitation.

**EXHIBIT 120N**                                                          **APPORTIONMENT PROCESS**

## Trust Fund (or Special Fund) with Collections Precluded from Obligation

FY 20xx Apportionment
Funds provided by Public Law N/A   ← Identify in the header the law(s) providing the budget authority.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---------|-----------|------------------|-------------------|---------------|----------------|-----------------|------------|--------------|------------------|
| IterNo RptCat AdjAut | 1 NO NO | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-8004** Last Approved Apportionment: N/A, First Request of year Reporting Categories Adjustment Authority provided | | | In this example, the amount on line 1201 equals one-quarter of the estimated annual obligations. This amount is derived from prior year collections and is used to fund obligations and outlays until current year collections are received. The amount on line 1234 equals the excess of current year receipts over the anticipated obligations ($40 thousand) plus the amount on line 1201 ($30 thousand). | | | | |
| 1201 | | BA: Mand: Appropriation (special or trust fund) | | | 30,000 | | 30,000 | | |
| 1234 | | BA: Mand: Appropriations precluded from obligation | | | -70,000 | | -70,000 | | |
| 1250 | | BA: Mand: Anticipated appropriation | | | 160,000 | | 160,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | | | **120,000** | | **120,000** | | |
| 6011 | | Payment of Benefits | | | 120,000 | A1 | 120,000 | | |
| **6190** | | **Total budgetary resources available** | | | **120,000** | | **120,000** | | |

Display the text of any footnotes in a separate tab in your Excel file.

Exhibit Notes:

1) This exhibit only reflects lines that contain values. For a full listing of all lines, please Appendix F1.

2) This example assumes that the authorizing legislation makes all receipts available until expended. However, the same law permits obligations only for benefits. The estimate of benefits to be paid is less than the current receipts. In this case, include all estimated current receipts on line 1250 (include actual collections on line 1201). Include, as a negative, the amount not needed to cover current obligations on line 1234. Do not include prior year collections that are not needed to incur current obligations on the apportionment or the SF 133.

3) See exhibit 130J for a display of the treatment of this account on the SF 133 during the year and on September 30.

**Allocation Transfer Apportionment Format, Apportioning Programs**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment Funds provided by Public Law N/A | | | | | | | |
| IterNo RptCat AdjAut | 1 NO NO | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-1309** Last Approved Apportionment: N/A, First Request of year Reporting Categories Adjustment Authority provided | | | | | The Budgetary Resources section reflects the accounting steps of both the parent an the children. The net effect is to show the resources available for obligation for the entire TAFS. Note: In order for the transfers to crosswalk correctly in the SF 133 and President's Budget, please ensure that both the parent and child use the appropriate USSGL for allocation transfers https://tfm.fiscal.treasury.gov/v1/supplements/ussgl.html. | | |
| 1100 | | BA: Disc: Appropriation | | | 10,000,000 | | 10,000,000 | | |
| 1151 | C1 | BA: Disc: Anticipated nonexpenditure transfers of Approps to 019-080X1309 | | | -1,000,000 | | -1,000,000 | | |
| 1151 | C2 | BA: Disc: Anticipated nonexpenditure transfers of Approps to 020-080X1309 | | | -2,000,000 | | -2,000,000 | | |
| 1151 | C1 | BA: Disc: Anticipated nonexpenditure transfers of Approps from 080X1309 | | | 1,000,000 | | 1,000,000 | | |
| 1151 | C2 | BA: Disc: Anticipated nonexpenditure transfers of Approps from0 80X1309 | | | 2,000,000 | | 2,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | | | **10,000,000** | | **10,000,000** | | |
| 6011 | | Program A | | | 5,500,000 | | 5,500,000 | | |
| 6012 | | Program B | | | 2,000,000 | | 2,000,000 | | |
| 6013 | | Program C | | | 2,500,000 | | 2,500,000 | | |
| **6190** | | **Total budgetary resources available** | | | **10,000,000** | | **10,000,000** | | |

Exhibit Notes:
    1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

**EXHIBIT 120P** APPORTIONMENT PROCESS

### Allocation Transfer Apportionment Format, Apportioning Parent and Child

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment / Funds provided by Public Law N/A *(Identify in the header the law(s) providing the budget authority.)* | | | | | | | |
| IterNo / RptCat / AdjAut | 1 / NO / NO | **Agency: Department of Government** / **Bureau: Office of the Secretary** / **Account: R & D (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)** / **TAFS: 080-X-1309** / Last Approved Apportionment: N/A, First Request of year / Reporting Categories / Adjustment Authority provided | | | | | *The Budgetary Resources section reflects the accounting steps of both the parent and the children. The net effect is to show the resources available for obligation for the entire TAFS. Note: In order for the transfers to crosswalk correctly in the SF 133 and President's Budget, please ensure that both the parent and child use the appropriate USSGL for allocation transfers* https://tfm.fiscal.treasury.gov/v1/supplements/ussgl.html. | | |
| 1000 | P | Unob Bal: Brought forward, Oct 1 (parent, 080X1309) | | | 750,000 | | 750,000 | | |
| 1000 | C1 | Unob Bal: Brought forward, Oct 1 (child, 019-080X1309) | | | 500,000 | | 500,000 | | |
| 1100 | | BA: Disc: Appropriation | | | 10,000,000 | | 10,000,000 | | |
| 1151 | C1 | BA: Disc: Anticipated nonexpenditure transfers of Approps to 019-080X1309 | | | -1,000,000 | | -1,000,000 | | |
| 1151 | C2 | BA: Disc: Anticipated nonexpenditure transfers of Approps to 012-080X1309 | | | -2,000,000 | | -2,000,000 | | |
| 1151 | P | BA: Disc: Anticipated nonexpenditure transfers of Approps from 080X1309 | | | 1,000,000 | | 1,000,000 | | |
| 1151 | P | BA: Disc: Anticipated nonexpenditure transfers of Approps from 080X1309 | | | 2,000,000 | | 2,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | | | **11,250,000** | | **11,250,000** | | |
| 6111 | | Parent - 1st quarter | | | 3,750,000 | | 3,750,000 | | |
| 6112 | | State FA  (019-080X1309) - 1st quarter | | | 1,000,000 | | 1,000,000 | | |
| 6113 | | Agric. (012-080X1309) - 1st quarter | | | 500,000 | | 500,000 | | |
| 6124 | | Parent - 2nd quarter | | | 4,000,000 | | 4,000,000 | | |
| 6125 | | State FA  (019-080X1309) - 2nd quarter | | | 500,000 | | 500,000 | | |
| 6126 | | Agric. (012-080X1309) - 2nd quarter | | | 1,500,000 | | 1,500,000 | | |
| **6190** | | **Total budgetary resources available** | | | **11,250,000** | | **11,250,000** | | |

*In the application of budgetary resources section of the apportionment only Cat AB is shown. Same concept applies to using separate Cat B lines to reflect parent and child apportioned amounts separately.*

*Please note that in this scenario the parent apportions both the parent and the children (019-080X1309, 012-080X1309) and separately identifies the children in the application of budgetary resources section. An apportionment for a parent/child does NOT have to separately identify the children in the application of budgetary resources section of the apportionment (e.g., PPA could be apportioned as separate category B lines).*

Exhibit Notes:
    1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

**Allocation Transfer Apportionment Format, Child Only**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

Identify in the header the law(s) providing the budget authority.

FY 20xx Apportionment
Funds provided by Public Law N/A

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of State Affairs**<br>**Bureau: Office of the Comptroller**<br>**Account: R & D (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)**<br>**TAFS: 019-080-1309 /X** | | | For a few allocation arrangements, the Parent has delegated the apportionment responsibility to its children.<br>Note: In order for the transfers to crosswalk correctly in the SF 133 and President's Budget, please ensure that both the parent and child use the appropriate USSGL for allocation transfers https://tfm.fiscal.treasury.gov/v1/supplements/ussgl.html. | | | | |
| IterNo<br>RptCat<br>AdjAut | 1<br>NO<br>NO | Last Approved Apportionment: N/A, First Request of year<br>Reporting Categories<br>Adjustment Authority provided | | | | | | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | | | 500,000 | | 500,000 | | |
| 1151 | | BA: Disc: Anticipated nonexpenditure transfers of Approps from 080X1309 | | | 12,000,000 | B1 | 12,000,000 | B1 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | | | **12,500,000** | | **12,500,000** | | |
| 6011 | | Country A activities | | | 3,000,000 | | 3,000,000 | | |
| 6012 | | Country B activities | | | 1,500,000 | | 1,500,000 | | |
| 6014 | | Country C activities | | | 3,500,000 | | 3,500,000 | | |
| 6170 | | Unallocated activities - available CY+1 | | | 4,500,000 | A1 | 4,500,000 | A1 | |
| **6190** | | **Total budgetary resources available** | | | **12,500,000** | | **12,500,000** | | |

B1 footnote:  Allocation transfer from parent agency, Department of Government.

Exhibit Notes:
    1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

**EXHIBIT 120R**                                                                    **APPORTIONMENT PROCESS**

### Allocation Transfer Apportionment Format, Parent Only



| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-X-1309** | | | | | | | |
| IterNo RptCat AdjAut | 1 NO NO | Last Approved Apportionment: N/A, First Request of year Reporting Categories Adjustment Authority provided | | | | | | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | | | 750,000 | | 750,000 | | |
| 1100 | | BA: Disc: Appropriation | | | 10,000,000 | | 10,000,000 | | |
| 1151 | | BA: Disc: Anticipated nonexpenditure transfers of Approps to other accounts | | | -3,000,000 | | -3,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | | | **7,750,000** | | **7,750,000** | | |
| 6001 | | 1st quarter | | | 3,750,000 | | 3,750,000 | | |
| 6002 | | 2nd quarter | | | 4,000,000 | | 4,000,000 | | |
| **6190** | | **Total budgetary resources available** | | | **7,750,000** | | **7,750,000** | | |

Exhibit Notes:
   1) This exhibit only reflects lines that contain values.  For a full listing of all lines, please see Appendix F1.

**Sequester Apportionment**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** | | | | | | | |
| | | **Bureau: Office of the Secretary** | | | | | | | |
| | | **Account: Research and Development (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)** | | | | | | | |
| | | **Treas Account: Research and Development** | | | | | | | |
| | | **TAFS: 099-X-0001** | | | | | | | |
| IterNo | 2 | Last Approved Apportionment: 20xx-09-10 | | | | | | | Amounts sequestered in the previous year that have been determined to be available in the current year ("pop-up") |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| | | **Budgetary resources** | | | | | | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, Oct 1 | 3,000,000 | | | | | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | | | 3,100,000 | | 3,100,000 | | |
| 1000 | ME | Mandatory Estimated - Unob Bal: Brought forward, Oct 1 | 2,400,000 | | | | | | |
| 1000 | MA | Mandatory Actual - Unob Bal: Brought forward, Oct 1 | | | 2,500,000 | | 2,500,000 | | |
| 1700 | | BA: Disc: Spending auth: Collected | | | 700,000 | | 700,000 | | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 2,700,000 | | 2,000,000 | | 2,000,000 | | |
| 1800 | | BA: Mand: Spending auth: Collected | | | 500,000 | | 500,000 | | |
| 1802 | SEQ | BA: Mand: Spending auth: Previously unavailable | 140,000 | B1 | 140,000 | B1 | 140,000 | B1 | |
| 1823 | SEQ | BA: Mand: Spending auth: New\Unob bal temp reduced | -210,000 | | -210,000 | | -210,000 | | |
| 1840 | | BA: Mand: Spending auth:Antic colls, reimbs, other | 3,000,000 | | 2,500,000 | | 2,500,000 | | Amounts sequestered in the current year |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **11,030,000** | | **11,230,000** | | **11,230,000** | | |
| | | **Application of Budgetary Resources** | | | | | | | |
| 6011 | | Development | 6,066,500 | | 6,176,500 | | 6,176,500 | | |
| 6011 | | Research | 4,963,500 | | 5,053,500 | | 5,053,500 | | |
| **6190** | | **Total budgetary resources available** | **11,030,000** | | **11,230,000** | | **11,230,000** | | |

Exhibit Notes:
   1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

**Appropriations with Different Periods of Availability Executed by Non-Expenditure Transfer**

**Initial Apportionment for Total Appropriation:**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment<br>Funds provided by Public Law N/A | | | | | Identify in the header the law(s) providing the budget authority. | | |
| | | This scenario reflects how to apportion accounts where the appropriation is available for one year (or for a fixed amount of time) and the law permits "not to exceed", "up to", or "no more than" a specific amount to be available for a longer period of time or until expended.<br><br>Example:<br>"For necessary expenses of XXX, $100 million, _of which not to exceed $10 million_ may be available until expended for the acquisition of XXX...." | | | | | | | |
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 080-20xx-20xx-4321** | | | | | | A non-expenditure transfer document must be processed to move funds to the different TAFS specified in the language. | |
| IterNo<br>RptCat<br>AdjAut | 1<br>NO<br>NO | Last Approved Apportionment: N/A, First Request of year<br>Reporting Categories<br>Adjustment Authority provided | | Line 1100 should match the total appropriation, including the amount provided for the different TAFS. | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 100,000,000 | | 100,000,000 | | |
| 1151 | | BA: Disc: Anticipated non-expenditure transfers of appropriations | | | -10,000,000 | | -10,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **0** | | 90,000,000 | | 90,000,000 | | |
| 6001 | | 1st quarter | | | 25,000,000 | | 25,000,000 | | |
| 6002 | | 2nd quarter | | | 15,000,000 | | 15,000,000 | | |
| 6003 | | 3rd quarter | | | 25,000,000 | | 25,000,000 | | |
| 6004 | | 4th quarter | | | 25,000,000 | | 25,000,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | 90,000,000 | | 90,000,000 | | |

**Initial Apportionment for Different Period of Availability:**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | FY 20xx Apportionment<br>Funds provided by Public Law N/A | | | | | | | |
| | | **Agency: Department of Government**<br>**Bureau: Office of the Secretary**<br>**Account: R & D (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)**<br>**TAFS: 080-X-4321** | | | | | | | |
| IterNo<br>RptCat<br>AdjAut | 1<br>NO<br>NO | Last Approved Apportionment: N/A, First Request of year<br>Reporting Categories<br>Adjustment Authority provided | | If $10m is not needed in the extended/different TAFS, submit a reapportionment request to transfer the funds back to the original TAFS using lines 1151/1120. A reapportionment will also be needed for the original TAFS. | | | | | |
| 1151 | | BA: Disc: Anticipated non-expenditure transfers of appropriations | | | 10,000,000 | | 10,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **0** | | 10,000,000 | | 10,000,000 | | |
| 6002 | | 2nd quarter | | | 5,000,000 | | 5,000,000 | | |
| 6003 | | 3rd quarter | | | 5,000,000 | | 5,000,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | 10,000,000 | | 10,000,000 | | |

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
2) See Section 3 of Appendix F for additional guidance.

**Rescissions and Reappropriations of Unobligated Balances as of September 30th**

**Apportionment of Rescinded Amounts as of September 30th**

FY 20xx Apportionment
Funds provided by Public Law N/A

Identify in the header the law(s) providing the budget authority.

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-20xx-20xx-4321** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 900,000 | | 900,000 | | |
| 1130 | | BA: Disc: Appropriations permanently reduced | | | -100,000 | | -100,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **0** | | **800,000** | | **800,000** | | |
| 6001 | | 1st quarter | | | 225,000 | | 225,000 | | |
| 6002 | | 2nd quarter | | | 225,000 | | 225,000 | | |
| 6003 | | 3rd quarter | | | 225,000 | | 225,000 | | |
| 6004 | | 4th quarter | | | 125,000 | | 125,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | **800,000** | | **800,000** | | |

Amount of unobligated balances as of September 30th

This scenario reflects how to apportion TAFS with language that rescinds unobligated balances as of September 30th and reappropriates them to be available for an additional fiscal year. This language may also have a provision that if enacted after September 30th the language shall apply as if it were in effect on September 30th.

Example:
"The remaining unobligated balances as of September 30 XXXX, from amounts made available for the Office of the Secretary, R&D account, are hereby permanently rescinded and an amount of additional new budget authority equivalent to the amount rescinded is hereby appropriated on September 30 XXXX to remain available until September 30 XXXX+1,....."

**Apportionment of the Rescinded Amount that is Reappropriated as of September 30th**

FY 20xx+1 Apportionment
Funds provided by Public Law N/A

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of Government** **Bureau: Office of the Secretary** **Account: R & D (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)** **TAFS: 080-20xx-20xx-4321** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | | | 100,000 | | 100,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **0** | | **100,000** | | **100,000** | | |
| 6001 | | 1st quarter | | | 100,000 | | 100,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | **100,000** | | **100,000** | | |

Amount of the rescinded unobligated balances that is reappropriated

Exhibit Notes:
   1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.

**EXHIBIT 120V**

**APPORTIONMENT PROCESS**

**Initial Apportionment of an Appropriation Reduced by Offsetting Collections and Receipts**

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|

> Identify in the header the law(s) providing the budget authority.

FY 20xx Apportionment
Funds provided by Public Law N/A

**Agency: Department of State Affairs**
**Bureau: Office of the Comptroller**
**Account: R & D (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)**
**TAFS: 019-080-X-1309**

> Sample appropriations language:
> For expenses necessary for the ... , $65,000,000, to remain available until expended: Provided, That the sum herein appropriated from the general fund shall be reduced as such offsetting collections are received during fiscal year 20XX, so as to result in a final fiscal year 20XX appropriation from the general fund estimated at $4,000,000.

| Line No | Line Split | Line Description | Previous Approved | Agency Request | OMB Action | Memo Obligations |
|---|---|---|---|---|---|---|
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | |
| RptCat | NO | Reporting Categories | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | |
| 1100 | | BA: Disc: Appropriation | 65,000,000 | 65,000,000 | 65,000,000 | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | -43,452,500 | 0 | 0 | |
| 1153 | | BA: Disc: Antic redc to apprp by offst coll/recpt | | -61,000,000 | -61,000,000 | |
| 1740 | | BA: Disc: Spending auth: Antic colls, reimbs, other | | 61,000,000 | 61,000,000 | |
| | | | | | 0 | |
| **1920** | | **Total budgetary resources avail. (disc. and mand.)** | **21,547,500** | **65,000,000** | **65,000,000** | |
| 6001 | 1st quarter | | 21,547,500 | 21,547,500 | 21,547,500 | |
| 6002 | 2nd quarter | | | 10,952,500 | 10,952,500 | |
| 6003 | 3rd quarter | | | 16,250,000 | 16,250,000 | |
| 6004 | 4th quarter | | | 16,250,000 | 16,250,000 | |
| **6190** | | **Total budgetary resources available** | **21,547,500** | **65,000,000** | **65,000,000** | |

> For the previously approved column, assume the account received an automatic apportionment during a CR that was in effect through December 30 and the account also received an automatic 30-day apportionment pursuant to section 120.41 of A-11 on December 30, and both current and prior year enacted language is the same. The pro-rata share of the up-front appropriation is $16,204,500 (91 days / 365 days = 24.93%, 24.93% of $65,000,000 = $16,204,500) and the automatic 30-day apportionment is $5,343,000 (30 days / 365 days = 8.22% , 8.22% of $65,000,000 = $5,343,000).

> On the reapportionment after enactment of a full-year appropriation, the amount appropriated ($65m) is reduced on line 1153 by the amount of estimated offsetting collections on line 1740 so as to result in an estimated general fund appropriation of $4m.
>
> Reapportionments should reflect amounts on lines 1100, 1137, 1153, 1700, and 1740 of the latest SF 133.

Exhibit Notes:
    1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
    2) For additional guidance on how to capture the latest budget execution data, see A-11 exhibit 130J.

**APPORTIONMENT PROCESS**                                                      **EXHIBIT 120W**

---

**Apportionment of an Appropriation Reduced by Offsetting Collections and Receipts during CR period to invoke term and condition of the CR (section 123.10)**

Identify in the header the law(s) providing the budget authority. →

FY 20xx Apportionment
Funds provided by Public Law N/A

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Agency: Department of State Affairs** **Bureau: Office of the Comptroller** **Account: R & D (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)** **TAFS: 019-080-X-1309** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N/A, First Request of year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| 1100 | | BA: Disc: Appropriation | 8,000,000 | | 8,000,000 | | 8,000,000 | | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | -5,282,400 | | -5,282,400 | | -5,282,400 | | |
| 1153 | | BA: Disc: Antic redc to apprp by offst coll/recpt | | | 0 | | 0 | | |
| 1740 | | BA: Disc: Spending auth: Antic colls, reimbs, other | | | 1,000,000 | | 1,000,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,717,600** | | **3,717,600** | | **3,717,600** | | |
| 6001 | 1st quarter | | 2,717,600 | | 2,717,600 | | 2,717,600 | | |
| 6002 | 2nd quarter | | | | 1,000,000 | | 1,000,000 | | |
| 6003 | 3rd quarter | | | | | | 0 | | |
| 6004 | 4th quarter | | | | | | 0 | | |
| **6190** | | **Total budgetary resources available** | **2,717,600** | | **3,717,600** | | **3,717,600** | | |

Sample appropriations language:
For expenses necessary expenses to carry out..... , $8,000,000, to remain available until expended: Provided, That the sum herein appropriated from the general fund shall be reduced as such offsetting collections under such section XXX are received during fiscal year 20XX, ....so as to result in a final fiscal year 20XX appropriation from the general fund estimated at not more than $0: Provided further, That to the extent such offsetting collections received in fiscal year XXXX exceed $8,000,000, those excecss amounts shall remain available until expended.....

For the previously approved column, assume the account received an automatic apportionment during a CR listing through February 1st (124 days / 365 days = 33.97%). Pursuant to the guidance in A-11 section 123.10, agency came in for an account-specific apportionment in January for an expected $1 million to be collected above the $8 million in statutue.

Exhibit Notes:
1) This exhibit only reflects lines that contain values. For a full listing of all lines, please see Appendix F1.
2) For additional guidance on how to capture the latest budget execution data, see A-11 exhibit 130J.
3) The previous approved column reflects an automatic apportionment of 25% of the pro-rata share plus an estimated $2 million in excess fees collected during the CR period.
4) The full-year bill was enacted after the first quarter and language did not change.

# SECTION 123—APPORTIONMENTS UNDER CONTINUING RESOLUTIONS

### Table of Contents

123.1    What is a continuing resolution (CR) and how does OMB collect information on proposed CR anomalies from agencies?

123.2    How do I determine the rate for operations under a short-term CR?

123.3    How do I determine the automatically apportioned amount during a short-term CR by the Bulletin?

123.4    How does the Bulletin automatically apportion funding during a short-term CR?

123.5    How can anomalies impact funding for a TAFS during a short-term CR?

123.6    Am I required to submit an account-specific apportionment request while I am funded by a short-term CR?

123.7    How do recurring rescissions impact the rate for operations of a TAFS under a short-term CR?

123.8    Do recurring changes in mandatory programs impact the rate for operations under a short-term CR?

123.9    How is transfer authority applied during a short-term CR?

123.10    How is spending authority from offsetting collections or offsetting receipts that is provided in annual appropriation Acts apportioned during a short-term CR?

123.11    How are appropriated entitlement or other mandatory payments and activities under the Food and Nutrition Act of 2008 apportioned during a short-term CR?

123.12    Are earmarks or programs, projects, and activities (PPAs) in a TAFS apportioned on a pro-rata basis by the Bulletin during a short-term CR?

123.13    What is apportioned during a short-term CR to a TAFS that receives no funding in the House or Senate bill?

123.14    Do the amounts provided as a rate for operations remain available after a short-term CR expires?

123.15    Do short-term CRs limit the purposes for which funds may be obligated?

123.16    When may I request that OMB issue an exception apportionment during a short-term CR?

123.17    If I am funded by a short-term CR and have received an account-specific apportionment, will I have to submit account-specific reapportionment requests for each extension of the CR?

123.18    Are my credit programs funded under a short-term CR?

123.19    Do I have to request a warrant from Treasury for funds provided by a short-term CR?

123.20    Do I need to request a reapportionment after my full-year appropriation is enacted?

123.21    Will my full-year enacted appropriations cover obligations made during the CR?

123.22    What if the full-year enacted appropriations subsequently provided less budget authority than obligations incurred under the short-term CR?

123.23    What happens to my apportioned, unobligated short-term CR funding if the short-term CR is followed by a lapse in appropriations?

### Summary of Changes

Includes a timeline for collecting information from agencies on anomalies needed in short-term CRs (section 123.1).

SECTION 123—APPORTIONMENTS UNDER CONTINUING RESOLUTIONS

---

**Summary of Changes—Continued**

Updates the definition for "rate for operations" to further clarify the difference between the rate of operations and the pro-rata share that is automatically apportioned by a OMB CR Bulletin (section 123.2).

Allows agencies to reflect the pro-rata share of CR funds as either Category A or a single Category B without OMB concurrence (sections 123.4).

Updates guidance on mandated transfer authority that factors into the rate for operations calculation (section 123.9).

Updates guidance to add an example of a "floor" for permissive transfers (section 123.9).

Provides a link to a section 120 exhibit of how to show an upfront general fund appropriation reduced by collections during a short-term CR on an account-specific apportionment when such apportionment is required to invoke a term and condition of the CR (section 123.10).

Clarifies that the standard CR language regarding appropriated mandatory payment means that such programs can continue normal obligational activity during the 30-day extension period (section 123.11).

---

### 123.1   What is a continuing resolution (CR) and how does OMB collect information on proposed CR anomalies from agencies?

Continuing resolutions (CRs) are joint resolutions that provide continuing appropriations for part of a fiscal year or a full fiscal year. A CR that covers only a part of a fiscal year is referred to as a "short-term" CR, and a CR that covers a full fiscal year is referred to as a "full-year" CR. A CR is often enacted when the Congress has not yet passed new appropriations bills by October 1 or when the President has vetoed congressionally passed appropriations bills. Because of the nature of a short-term CR, each agency should operate at a minimal level until after its regular fiscal year appropriations are enacted.

Short-term CRs sometimes include separate legislative provisions providing funding or authorities for a specific TAFS or program (known as "anomalies"). OMB solicits information from agencies on anomalies needed for potential short-term CRs under the following timeframes:

- No later than three months prior to the start of the upcoming fiscal year, OMB will issue a budget data request (BDR) for anomalies that would be necessary for a CR lasting through at least December 30. Your OMB representative will communicate a specific due date, which may be as early as one week after the BDR is released.

- For agencies that are operating under a short-term CR that expires on January 31 or earlier: no later than November 1 or one month prior to the expiration of the current CR, whichever is later, OMB will solicit information on anomalies that would be necessary during a short-term CR lasting through at least January 31 or one month after the expiration of the current CR, whichever is later. Your OMB representative will communicate a specific due date, which may be as early as 24 hours after the solicitation.

- For agencies that are operating under a short-term CR that expires after January 31: OMB will determine on an ad hoc basis whether to solicit information on anomalies needed in further short-term CR extensions.

CRs provide funds for projects and activities. The phrase projects and activities may have two meanings:

- In section 101 of a CR, the phrase usually refers to the total appropriation for the account (i.e., the amount calculated by the formula) rather than to specific activities (when determining which Government programs are covered by the CR and the rate for operations limit).

- The phrase *also* refers to the specific activity (e.g., programs, projects, or activities) in order to determine whether the activity is a prohibited new start or not. In other words, a new start is not when an activity was authorized to be carried out but was not executed in the prior fiscal year.

Usually, CRs do not provide specific dollar amounts in the legislative language applicable to each Treasury Appropriation Fund Symbol (TAFS). Rather, CRs provide formulas for calculating the amounts appropriated for continuing projects and activities during the period of the CR. For more information on calculating these amounts, see section 123.2.

For short-term CRs, an annual OMB CR Bulletin ("Bulletin") automatically apportions a pro-rata share of funding available for most TAFSs. For more information on how the Bulletin apportions funding and how much is apportioned, see sections 123.3 and 123.4. There are some instances where TAFSs will not receive an automatic apportionment pursuant to the Bulletin and an account-specific apportionment is required during the short-term CR. Some of those instances are mentioned throughout this section and will be specifically addressed in the Bulletin.

The Bulletin is generally released after the enactment of an initial short-term CR and will contain any specific information regarding the execution of that year's CR. This section of the Circular provides general conceptual information on the apportionment and execution of short-term CRs. The Bulletin should be regarded as the official apportionment of CR funds and will refer to this section and section 120 of this Circular as necessary.

Amounts appropriated in a full-year CR are apportioned using the same processes that are used for full-year appropriations Acts. OMB does not typically issue a Bulletin for full-year CRs. Occasionally, short-term CRs will include provisions that provide a full-year appropriation for a specific TAFS. Such full-year appropriations are not automatically apportioned by the Bulletin and are not subject to the calculations discussed below.

## 123.2   How do I determine the rate for operations under a short-term CR?

Short-term CRs routinely provide a formula for determining the rate for operations either in section 101 or in subsequent sections of the bill that may provide a particular rate for a program or account (anomaly). For over a decade, section 101 of short-term CRs has provided the same process for calculating the rate for operations formula and lists the previous fiscal year's appropriations Acts that are continued under the CR. In addition, section 101 sometimes includes an across-the-board (ATB) increase or reduction to the rate for operations. This section of the Circular provides guidance that assumes that future short-term CRs will continue with this structure; however, the annual Bulletin will specify the official formula based on each CR's legislative text.

"Rate for operations" is defined as the annualized level of resources provided by the appropriations Acts referenced in section 101 of a short-term CR. It is often used interchangeably with "annualized level". For consistency purposes, this section of the Circular uses "rate for operations." The rate for operations is only

available for obligation during the period specified in a short-term CR. See section 123.3 to determine the amount that is automatically apportioned during a short-term CR.

The rate for operations must be calculated at the TAFS level. The rate for operations is provided to the TAFS with the period of availability in the appropriations Acts referenced in section 101, but updated to start in the fiscal year for which the CR applies. For example, annual funds appropriated in the FY 2020 appropriations Act for TAFS 012-3456/2020 result in a rate for operations in an annual TAFS for FY 2021 in a FY 2021 CR (i.e., 012-3456/2021). Follow the steps below to calculate the rate for operations for each applicable TAFS under section 101 of the CR:

a) Take the full-year amount enacted in the appropriations Acts specified in section 101, including obligation limitations.

b) Subtract any recurring account-specific rescissions, followed by agency-specific and then bill-wide reductions, if any, enacted in the appropriations Acts specified in section 101.

c) Add or subtract non-expenditure transfers mandated by the appropriations Acts referenced in section 101. See section 123.9 for the definition of mandated transfers.

d) Add or subtract any ATB increase or reduction specified in section 101 (if any).

For example, TAFS 012-3456/2020 was appropriated $100 million in the FY 2020 appropriations Act referenced in section 101 of the 2021 CR. The appropriations Act referenced in section 101 also included a recurring rescission of $50 million and directed that $30 million shall be transferred to TAFS 012-1234/2020. Assuming section 101 does not include an ATB increase or reduction, here's how the 2021 CR rate for operations for TAFS 012-3456/2021 would be calculated following the steps above.

a) $100 million (FY 2020 amount provided in Act referenced in section 101 of the CR)

b) Subtract $50 million (recurring rescission) = $50 million

c) Subtract $30 million (mandated transfer to other TAFS) = $20 million

Using this example, the rate for operations would be $20 million, which would be reflected on line 1100 of the apportionment and/or any Treasury reporting (SF 133, etc.) for TAFS 012-3456/2021. For Treasury reporting and apportionment purposes, the rate for operations as provided by section 101 is reflected as a single number on line 1100, and any rescissions, mandated transfers, or ATB increases or decreases that are factored into the rate for operations as specified above are not identified on lines separate from 1100.

See section 123.5 for the rate for operations for enacted CR anomalies.

See section 123.7 for more information on recurring account-specific rescissions.

## 123.3   How do I determine the automatically apportioned amount during a short-term CR by the Bulletin?

For a short-term CR, OMB usually issues a Bulletin to automatically apportion funds. This automatic apportionment applies to most TAFSs, but not all. For particular TAFSs, OMB may require a separate account-specific apportionment.

Note that an agency may not obligate funds under a short-term CR that would impinge on final funding prerogatives of Congress. CRs usually include provisions directing agencies to execute programs using the

most limited funding actions permitted in order to provide for continuing projects and activities. Agencies are also directed by the CR to not execute programs that would otherwise have high initial rates of operation or complete distribution of appropriations at the beginning of the year because of distribution of funds to States, foreign countries, grantees, or others.

The last Bulletin that provided detailed guidance on how to execute the FY 2023 short-term CR can be found here:

OMB Bulletin No. 23-02

Typically, the Bulletin will not automatically apportion the full rate for operations for a TAFS. For instance, the Bulletin usually apportions the "pro-rata share" of the rate for operations through the period of the CR or any extension thereof. The pro-rata share is usually calculated by multiplying the rate for operations by the percentage of the year covered by the CR.

Using the example in section 123.2, the pro-rata share automatically apportioned to TAFS 012-3456/2021 for a CR ending December 15 would be calculated as follows:

$20 million (rate for operations) x 20.82 percent (76 days/365 days (use 366 for a leap year))
= $4.164 million

If a full-year appropriations Act (including a full-year CR) is enacted before the CR period is over (e.g., December 10), the amounts automatically apportioned by the Bulletin are unaffected (see section 120.41).

The pro-rata percentage used for the automatic apportionment is calculated and rounded to the hundredths for each short-term CR extension when enacted. For instance, a CR is enacted from October 1st to November 3rd (34/365=9.32%). The CR then gets extended until November 27th (24/365=6.58%). The CR is then further extended until December 15th (18 days/365=4.93%). The total amount automatically apportioned (even if, like stated above, the President enacts the full-year bill on December 10th) cumulatively is 20.83% of the agency's rate for operations. This method results in a different percentage if the agency tried to calculate from October 1st to December 15th (76/365=20.82%).

It may be determined that a TAFS should be apportioned less than the amount automatically apportioned by the Bulletin to ensure that an agency does not impinge upon the final funding prerogatives of Congress. In these cases, an account-specific apportionment (section 120.2) approved by OMB is required.

**123.4 How does the Bulletin automatically apportion funding during a short-term CR?**

The Bulletin automatically apportions the pro-rata share as a lump-sum amount using either Category A or Category B – depending upon how the agency chooses to record the funding. In other words, if the funds are Category A, the pro-rata share automatically apportioned is reflected in the quarter in which the CR is enacted and/or extended and is not spread over quarters. Additionally, if the funds are Category B, the pro-rata share is automatically apportioned as a single Category B line. If an agency would prefer to spread the automatically apportioned amount among more than one Category B line, the agency must request an account-specific apportionment from its OMB representative as soon as possible.

**123.5 How can anomalies impact funding for a TAFS during a short-term CR?**

Because a CR usually provides the funding levels and authorities enacted in the previous fiscal year, there may be cases where a program requires additional funding or different authorities to maintain operations during the CR. In these cases, a short-term CR may include a separate legislative provision (an "anomaly") providing funding or authorities for a specific TAFS or program. CR anomalies can impact a program in a number of different ways including, but not limited to, changing the rate for operations to provide additional

funding, allowing more than the pro-rata share to be apportioned during the period of the CR ("spend-faster" anomalies), adding an authority not carried forward in section 101 of the CR, or removing or modifying an authority carried forward in section 101 of the CR. This section will focus on anomalies that change the rate for operations and spend-faster anomalies.

a) *Anomalies that change the rate for operations*. This type of an anomaly may be required if the rate for operations provided by section 101 for a TAFS is not sustainable for the period of the CR. In order to increase the rate for operations of the TAFS above what is provided by section 101, additional authority is required. Using the example in section 123.2, an anomaly that would provide a higher than $20 million rate for operations is below.

> Sec. XXX. Notwithstanding section 101, amounts are provided for "Account 1234" at a rate for operations of $150,000,000.

The example language replaces the $100 million that is provided by section 101 of the CR with $150 million. Based on the anomaly language, the new rate for operations would be calculated using the steps below. Note that all provisos and other authorities that applied to that funding under section 101, including recurring rescissions and transfers, continue to apply to the rate for operations provided by the anomaly unless specific legislative language is included in the anomaly to alter that authority.

a) Take the full-year amount specified in the anomaly.

b) Subtract any recurring account-specific rescissions followed by agency-specific rescission and then bill-wide reductions, if any, as included in appropriations Acts referenced in section 101.

c) Add or subtract transfers mandated by the appropriations Acts referenced in section 101.

As an example, here's how the rate for operations for TAFS 12-3456/XXXX with the enacted anomaly would be calculated following the steps above:

a) $150 million (enacted amount in anomaly).

b) Subtract $50 million (recurring rescission) = $100 million.

c) Subtract $30 million (mandated transfer to other TAFS) = $70 million.

The rate for operations would be $70 million under the CR, which would be reflected on line 1100 of the apportionment and/or any Treasury reporting (e.g., SF 133). The pro-rata share automatically apportioned by the Bulletin would be calculated using the $70 million.

b) *Spend-faster anomalies*. Sometimes it may not be necessary for a TAFS to receive a higher rate for operations, but the TAFS may need more funding apportioned than the pro-rata share automatically apportioned by the Bulletin. This could be for a number of reasons, including, but not limited to, higher obligations anticipated during the expected period of the CR. Below is example anomaly language that would allow TAFS 012-3456/XXXX to be apportioned more than the pro-rata share automatically apportioned.

> Sec. XXX. Amounts made available by section 101 for "Account 1234" may be apportioned up to the rate for operations necessary to maintain activities x, y, and z.

With this language enacted, TAFS 012-3456/XXXX would still receive a rate for operations of $20 million (see section 123.2), but the TAFS may receive an account-specific apportionment during the

period of the CR for an amount greater than the automatically apportioned amount ($4.164 million) as long as the rate for operations is not exceeded.

For example, instead of basing the pro-rata share calculation on 76 days for a CR starting October 1 and ending December 15, this type of anomaly could allow the TAFS to be apportioned a pro-rata share based on 90 days for a CR of the same duration. Accordingly, the amount apportioned for TAFS 012-3456/2021 pursuant to the spend-faster anomaly for a CR starting October 1 and ending December 15 could be calculated as follows:

$20 million (rate for operations) x **24.66** percent (**90** days/365 days (use 366 for a leap year)) = **$4.932** million

An account-specific apportionment must be approved by OMB before the agency may obligate at a rate higher than the pro-rata share automatically apportioned by the Bulletin pursuant to the authority provided by a spend-faster anomaly. Using the example above, the Bulletin would apportion TAFS 12-3456/XXXX $4.164 million unless and until an account-specific apportionment is approved by OMB.

Absent an enacted spend-faster anomaly, if a TAFS requires an amount that exceeds the amount automatically apportioned by the Bulletin, an exception apportionment must be requested by the agency and approved by OMB. For more information on exception apportionments, see section 123.16.

## 123.6    Am I required to submit an account-specific apportionment request while I am funded by a short-term CR?

Generally, no. OMB will typically issue a Bulletin to automatically apportion amounts made available by a CR and may provide additional guidance on the types of account-specific apportionments that may be required and other specific CR execution issues.

## 123.7    How do recurring rescissions impact the rate for operations of a TAFS under a short-term CR?

Rescissions or cancellations of discretionary prior-year balances that were included in the prior-year appropriation Acts specified in section 101 of a short-term CR continue during the CR period and are factored into the rate for operations calculation as shown in section 123.2. OMB typically includes an attachment to the Bulletin that lists rescissions or cancellations enacted in the previous fiscal year that impact the current CR. The attachment also usually includes the level at which such rescissions recur to provide the amount to use when calculating the rate for operations. For example, Attachment B of the OMB CR Bulletin lists rescissions by TAFS, categorizes each recurring rescission by how it should be applied during the CR, and also indicates which rescissions do not recur and should not be factored into the rate for operations.

As indicated in the Attachment B of the OMB CR Bulletin, some recurring rescissions will be applied to new budget authority provided by section 101 of the CR based on the way the appropriations language directing the rescission is written. If the rescission language is broad enough to be applied to the budget authority provided by section 101 of the CR, it will be factored into the rate for operations. If the rescission language is more restrictive and can only apply to prior-year discretionary balances in a TAFS that does not receive a rate for operations under section 101 of the CR, an account-specific apportionment by OMB is required to preclude these balances from obligation during the period of the CR.

The only exception to this account-specific apportionment rule for recurring rescissions of prior-year balances is if language is enacted in the CR to allow Treasury Account Symbols (TASs) that have this type of rescission to effectuate it as a reduction in the rate for operations of the current applicable TAFS.

"Current applicable TAFS" refers to any of the TAFSs within a TAS for which a rate for operations is provided by section 101 of the CR.  This authority was provided in section 115 of the first CR.  With this authority, recurring rescissions of prior-year balances can be factored into the rate for operations calculation of the current applicable TAFS and will be automatically apportioned by the Bulletin, unless otherwise directed.  Additional details and specific instructions on recurring rescissions will be included in the Bulletin.

**123.8 Do recurring changes in mandatory programs impact the rate for operations under a short-term CR?**

Changes in mandatory programs (CHIMPs) that continue as terms and conditions under section 101 of the CR and result in the reduction of mandatory funding (rescissions/cancellations, mandated transfers to other TAFSs, obligation delays, etc.) are not factored into the rate for operations.  An account-specific apportionment is required during the period of the CR to preclude applicable resources from obligation. Reductions of this kind are typically included in an attachment to the Bulletin. For example, the reductions were included in Attachment C of the OMB CR Bulletin.

CHIMPs that continue as terms and conditions under section 101 of the CR and do not result in a reduction of mandatory funding (e.g., appropriations for or mandated transfers to mandatory programs) are factored into the rate for operations calculation for those TAFS and are automatically apportioned by the Bulletin.

For more information on CHIMPs, see section 20.3.

**123.9    How is transfer authority applied during a short-term CR?**

Non-expenditure mandated transfers in the appropriations Acts referenced in section 101 are factored into the rate for operations of both the giving and receiving TAFSs.  Therefore, agencies do not have to execute the non-expenditure transfer, report transfers in GTAS, or reflect these transfers separately in account-specific apportionments, except as a preclusion for items discussed below.

For the purposes of calculating a rate for operations under a short-term CR, a mandated transfer is defined as one in which the legislative transfer authority provided in the prior fiscal year appropriations Acts referenced in section 101 provides a specific dollar amount to be transferred and does not provide any flexibility for the agency to change that dollar amount or to choose the giving and receiving TAFSs involved in the transfer.  Only mandated transfers that were executed as non-expenditure transfers in the previous fiscal year factor into the rate for operations calculation.

If the giving TAFS does not have a rate for operations under section 101, an account-specific apportionment is required during the period of the CR to preclude the applicable resources from obligation.  Section 123.8 discussed the account-specific apportionment required if the giving TAFS is mandatory.  If the giving TAFS is discretionary and does not have a rate for operations, a similar account-specific apportionment is required.

Not all mandated transfers in the previous fiscal year's appropriations Act use the language "shall transfer".  For instance, the appropriations language could instead call for funds to be derived from a specific source other than the general fund of the Treasury.  If such authority was executed as a non-expenditure transfer the previous fiscal year, then it is considered a mandated transfer for purposes of calculating the rate for operations.  Two such examples are listed below:

> "For necessary expenses of the Inspector General in carrying out the provisions of the Inspector General Act of 1978, $250,000,000, to be derived by transfer from the Postal Service Fund and expended as authorized by section 603(b)(3) of the Postal Accountability and Enhancement Act (Public Law 109-535)."

> "For necessary expenses of the Office of Inspector General in carrying out the provisions of the Inspector General Act of 1978, $42,982,000, to be derived from the Deposit Insurance Fund, or, only when appropriate, the FSLIC Resolution Fund."

If the mandated transfer is from an account that has either a zero balance or insufficient funds to cover the mandated transfer amount during the CR period, then the amount derived by transfer for purposes of calculating the rate for operations is zero or the lower amount, and the total rate for operations of the receiving TAFS would be reduced accordingly. An example of this type of language is provided below:

> "For procurement, acquisition and construction of capital assets, including alteration and modification costs, of the National Oceanic and Atmospheric Administration, $1,719,866,000, to remain available until September 30, 2026: … Provided further, That in addition, $44,000,000 shall be derived by transfer for the purposes provided under this heading from the unobligated balances in the Fund established in section 111(a) of division B of Public Law 116–93."

In this example, if the unobligated balances of the Fund established in section 111(a) of division B of Public Law 116-93 were only $1,000,000, then the rate for operations would be $1,720,866,000. If the unobligated balances were zero, then the rate for operations would be $1,719,866,000.

Mandated transfers that were executed as expenditure transfers in the previous fiscal years are not used to calculate the rate for operations of the giving and receiving TAFSs. Instead, the giving TAFS retains the rate for operations and should execute the expenditure transfer from amounts apportioned to them during the period of the CR.

Permissive transfer authority does not factor into a rate for operations. For purposes of calculating a rate for operations under a short-term CR, permissive transfer authority is defined as legislative transfer authority that provides flexibility in the amount transferred and/or the giving and receiving TAFS involved in the transfer.  Below are some examples of transfer authority that is considered permissive for purposes of calculating the rate for operations:

> "of which not to exceed $9,000,000 may be transferred to the Working Capital Fund:"

> "up to 2 percent of funds made available for grant or reimbursement programs under such headings shall be transferred…"

> "Provided further, That any such amounts from the fund that the Attorney General determines are necessary to pay, first, for the costs of processing and tracking civil and criminal debt collection litigation activities, and thereafter for financial systems and for debt-collection-related personnel, administrative, and litigation expenses, in fiscal year 2020 and thereafter, shall be transferred to other appropriations accounts in the Department of Justice for paying the costs of such activities, and shall be in addition to any amounts otherwise made available for such purposes in those appropriations accounts:"

In contrast, if the previous fiscal year's appropriations Act contains language requiring that a minimum amount be transferred to a separate TAFS (a.k.a. "floor"), then that minimum amount is considered the appropriated amount for purposes of calculating the rate for operations. Amounts above the minimum amount specified in law are considered permissive and would not factor into the rate for operations. An account-specific apportionment would be required for both the giving and receiving TAFS to reflect the transferred amount above the minimum.  Below is an example of this kind of language:

> "of which not less than $6,000,000 shall remain available until expended for efforts to enforce laws against forced child labor; "

In addition, any transfer authority provided in legislation outside of the appropriations Acts referenced in section 101 (i.e., authorized transfer authority) does not factor into the rate for operations.

An agency may utilize permissive or authorized transfer authority from within the amounts apportioned to it during the CR. The agency would need to request an account-specific apportionment for both the giving and receiving TAFSs in order to obligate against the transferred resources.

If an agency is executing general transfer authority that has a percentage limit on the amount that can be given or received (e.g., not more than five percent may be transferred or not more than ten percent may be received), that percentage limitation is calculated against the rate for operations of the applicable TAFS. However, as stated above, the actual amounts that may be transferred are limited to the amounts apportioned to the giving TAFS.

In some cases, permissive transfer authority is provided to move funding between TAFSs within the same TAS. For example, for a TAS that has a $10 million appropriation with a one-year period of availability (POA) and a permissive carve-out ("up to," "not more than," or "not to exceed") of $2 million with a multi-year POA, the rate for operations for the account would be $10 million in the one-year TAFS. The agency would then have to execute a non-expenditure transfer to the multi-year POA to move amounts from within the amounts apportioned in the one-year TAFS for the period of the CR. The agency may transfer up to the $2 million statutory cap, as long as that amount is within the amounts apportioned. The agency would need to request an account-specific apportionment for both the giving and receiving TAFSs in order to obligate against the transferred resources. See section 120.41 for similar guidance for automatic apportionment authority for the full-year enacted appropriation.

### 123.10 How is spending authority from offsetting collections or offsetting receipts that is provided in annual appropriation Acts apportioned during a short-term CR?

In order to determine how apportionment of spending authority from offsetting collections or offsetting receipts that is provided in annual appropriations Acts is effectuated under a CR, it is imperative to first determine if the authority is under the rate for operations formula or is a term and condition of the CR and therefore not funded within the rate for operations. In general, if the previous fiscal year's appropriations Act appropriated a specific dollar amount to an account – all or some of which would be derived from offsetting collections or offsetting receipts – then that dollar amount is a rate for operations. If the CR provides additional authority to spend what is collected (i.e., not a specific dollar amount), then such authority is a term and condition and not a rate for operation, so it requires a separate account-specific apportionment. In some cases, an agency may have a blanket apportionment to cover all spending authority provided as a term and condition of a short-term CR.

For example, in the following language below, the $8.0 million is the rate for operations and therefore is pro-rated under the automatic apportionment provided by the Bulletin. However, the authority in the second proviso to spend additional funds collected above $8.0 million is a term and condition. A separate account-specific apportionment is required to obligate pursuant to the authority provided in the second proviso. For a visual display of how this would look on an account-specific apportionment, please see the previously approved column of Exhibit 120W.

> "For necessary expenses to carry out section 3024 of the Solid Waste Disposal Act (42 U.S.C. 6939g), including the development, operation, maintenance, and upgrading of the hazardous waste electronic manifest system established by such section, $8,000,000, to remain available until expended: Provided, That the sum herein appropriated from the general fund shall be reduced as offsetting collections under such section 3024 are received during fiscal year 2019, which shall remain available until expended and be used for necessary expenses in this appropriation, so as to

result in a final fiscal year 2019 appropriation from the general fund estimated at not more than $0: Provided further, That to the extent such offsetting collections received in fiscal year 2019 exceed $8,000,000, those excess amounts shall remain available until expended and be used for necessary expenses in this appropriation."

In the second example below, the authority to collect and spend fees does not specify a dollar amount and therefore not part of the rate for operations. This spending authority is not automatically apportioned by the Bulletin and therefore requires a separate account-specific apportionment.

"The Administrator of the Environmental Protection Agency is authorized to collect and obligate pesticide registration service fees in accordance with section 33 of the Federal Insecticide, Fungicide, and Rodenticide Act, as amended by Public Law 112-177, the Pesticide Registration Improvement Extension Act of 2012."

### 123.11 How are appropriated entitlement or other mandatory payments and activities under the Food and Nutrition Act of 2008 apportioned during a short-term CR?

Typically, the short-term CR contains a provision that states that for appropriated entitlements and other mandatory payments whose budget authority was provided in the previous fiscal year's appropriations Acts referenced in section 101, and for mandatory payments and activities under the Food and Nutrition Act of 2008, activities shall continue at the rate necessary to maintain program levels under current law and under the authority and conditions of the previous fiscal year's appropriations Act. In other words, these programs operate as normal and are appropriated such sums as are necessary to do so.

Additionally, this provision of the CR typically provides that "obligations for mandatory payments" may continue to be made for an additional 30 days beyond the end date of the short-term CR, including during any government shutdowns. In other words, mandatory payment programs may make obligations they would normally make during the additional 30 days of obligational authority and funding.

The Bulletin typically apportions such sums as are necessary to maintain program levels as specified above. These programs are not limited to a pro-rata share or to a funding total provided in the previous fiscal year's fiscal appropriations Acts referenced in section 101.

The programs provided this authority are within the accounts identified in the joint explanatory statement of managers accompanying the conference report on the Balanced Budget Act of 1977 (House Report 105-217, see page 1014), or accounts with legislatively enacted directed scoring making otherwise discretionary appropriations mandatory.

### 123.12 Are earmarks or programs, projects, and activities (PPAs) in a TAFS apportioned on a pro-rata basis by the Bulletin during a short-term CR?

No. The Bulletin automatically apportions the pro-rata share for each TAFS based on the rate for operations for the entire TAFS without regard to any earmarks or PPAs within the TAFS, and without a requirement that such earmarked amounts or PPAs also be pro-rated. Legislative earmark provisions continue as terms and conditions of the CR, and as such, they continue to remain in effect during the period of the CR. As in the case with other terms and conditions continuing in effect under a CR, agencies must comply with and not breach earmark provisions over the course of the fiscal year, including during the period of a CR.

### 123.13 What is apportioned during a short-term CR to a TAFS that receives no funding in the House or Senate bill?

If either the House or Senate has reported out of committee or passed an appropriations bill that provides no funding for a whole TAFS (as opposed to merely providing no funding for a project, program or activity

within a TAFS) at the time the CR is enacted, that TAFS is automatically apportioned zero, even if that TAFS receives a rate for operations under section 101. An agency must submit an account-specific apportionment request to OMB if the agency want funds apportioned for that TAFS during the period of the CR, including any extensions of the CR. Agencies must also submit a written justification for any such request. This restrictive funding action is to ensure that an agency does not impinge on final funding prerogatives of the Congress.

However, if subsequently either the House or Senate does take action during the short-term CR to either report out of committee or pass an appropriations bill that provides funding for a TAFS, then the TAFS would be under the automatic apportionment as provided by the Bulletin.

## 123.14  Do the amounts provided as a rate for operations remain available after a short-term CR expires?

It depends on the legislative action that follows the short-term CR or the absence of legislation that follows the CR (e.g., a lapse in appropriations). Generally, CRs make amounts available for obligation only until a time specified by the CR or until the enactment of regular fiscal year appropriations, whichever occurs first. A CR normally provides temporary funding and may specify any period of time (e.g., one day, a few days, a few weeks, or a month). It is generally understood that the normal appropriations process will eventually produce appropriation Acts to replace or terminate the CR, and it is also generally assumed that the full-year enacted level will be close to the level provided by the CR's rate for operations. An agency must consult its RMO if its full-year enacted level is much lower than the amounts apportioned against the CR's rate for operations. If a full-year CR follows a short-term CR, agencies must submit a reapportionment request for the full-year appropriations (see section 123.20).

This rule does not apply to unobligated funds from a rate for operations provided by a short-term CR if that CR is followed immediately by a lapse in appropriations (see sections 120.56, 123.23).

## 123.15  Do short-term CRs limit the purposes for which funds may be obligated?

Generally, yes. A CR makes amounts available subject to the same terms and conditions specified in the enacted appropriations acts from the prior fiscal year unless otherwise stated in the statutory text. Normally, an agency is **not** permitted to start new PPAs for which authority did not exist in the previous fiscal year.

## 123.16  When may I request that OMB issue an exception apportionment during a short-term CR?

If an agency seeks an amount for a TAFS that is more than the pro-rata share automatically apportioned by the Bulletin, and the short-term CR does not provide a spend-faster anomaly that applies to that TAFS, then the agency may request an exception apportionment from OMB. Each request for an exception apportionment must be accompanied by a written justification that includes the legal basis for the request. OMB grants exception apportionment requests only in extraordinary circumstances. This is different from an account-specific apportionment for a spend-faster anomaly provided in the CR itself.

An exception apportionment may be requested on the following bases:

- *Seasonality*. This basis will be considered only if the program experiences regular and predictable changes in the rate of obligations throughout the year due to programmatic requirements, using historical data from SF 133s or OMB approved account-specific apportionments. For example, a history of apportionment shows that the Low-Income Home Energy Assistance Program has an established pattern of a higher rate of obligations in the first and second quarters of the fiscal year, when the temperatures are colder. Another example is funding for the protection of Presidential candidates and increased security at inaugurations every four years. Seasonality apportionment

requests will not be approved simply because an agency prefers to sign full-year contracts at the beginning of the fiscal year, or if doing so would be business as usual under a full-year enacted appropriation.

- *Annualizing a new program.*  This basis involves situations where a new program began late in the previous fiscal year and the partial year funding level for the previous fiscal year would not be sufficient to fund a full year's rate for operations this year.

- *Safety of human life or protection of Federal property*.  This basis involves situations where the obligations could legally be incurred under the Antideficiency Act during a Government-wide lapse of appropriations.

**123.17 If I am funded by a short-term CR and have received an account-specific apportionment, will I have to submit account-specific reapportionment requests for each extension of the CR?**

No.  In the case of TAFS that receive an account-specific apportionment at any time during a short-term CR period (exclusions noted below), the automatic apportionment provided by the Bulletin will apply to such TAFSs under any subsequent extensions of the CR, provided that the total amount apportioned during the short-term CR period does not exceed the rate for operations provided by the CR.  However, any footnotes on the account-specific apportionment continue to apply to the TAFS when subsequently operating under the automatic apportionment.

Agencies must, however, submit account-specific apportionments for each extension of the CR for TAFS with zero-funding or utilizing a spend-faster anomaly.  For TAFS with zero funding, account-specific apportionments must be submitted for each CR extension—there is no automatic apportionment.  If an agency has already been apportioned a spend-faster anomaly or account-specific apportionment, then for subsequent extensions of the CR an agency will be only automatically apportioned an additional pro-rata share of the rate for operations.  If an agency seeks to utilize the spend-faster CR anomaly for any CR extension, the agency must once again submit an account-specific apportionment.

A full-year CR is not considered an extension of a short-term CR. The Bulletin typically does not apportion additional funding for a full-year CR. If a full-year CR is enacted, an agency must request a reapportionment **within 10 calendar days** of the enactment of the full-year CR (see section 123.20).

If an agency needs a reapportionment of carryover balances or any other budgetary resource not provided by the CR, after the Bulletin is in effect, and the agency's RMO does not require the agency to show the CR budgetary resources on the reapportionment, then the agency must footnote the reapportionment as follows ("A" footnote on line 6190 total budgetary resources):

> "In addition to the amounts apportioned above, this account is also receiving funds pursuant to Public Law XXX-XXX as automatically apportioned via OMB Bulletin XX-XX."

If the CR is extended (e.g., a subsequent law amends the CR to extend the date of its applicability), then add "as amended" after "Public Law XXX-XXX" in the above footnote.

**123.18  Are my credit programs funded under a short-term CR?**

Yes.  Appropriations for subsidy cost amounts associated with direct and guaranteed loan activities that were conducted in the prior fiscal year are provided as a rate for operations in the same manner as other appropriations.  Normally, the CR allows agencies to make new direct loans and new commitments to guarantee loans within the limitations on credit activity levels and subject to the terms and conditions specified in the prior fiscal year appropriations Act(s).  If there is an enacted credit limitation (i.e., a

**SECTION 123—APPORTIONMENTS UNDER CONTINUING RESOLUTIONS**

limitation on loan principal or commitment level) in the previous fiscal year, the automatic apportionment is the pro-rata share of the credit limitation or rate for operations, whichever is more restrictive.

In the two examples below, the appropriations Act specified in section 101 appropriates $5 million for subsidy costs and $200 million in loan limitation for direct loans. Assume the CR covers the first quarter of the fiscal year (92 days), which results in a pro-rata share of roughly 25%, and that the prior fiscal year's subsidy rate was 5.00%. The current subsidy rate differs in each example. The examples show that along with other factors, the current subsidy rate impacts the amounts apportioned by the Bulletin for credit programs.

To determine the amounts apportioned during a CR for Example 1, with a current subsidy rate of 8.00%:

> Step 1 – Calculate the pro-rata share of last year's enacted credit limitation: 25% x $200 million = $50 million. The pro-rata share of the credit limitation would support a loan level of $50 million.

> Step 2 – Calculate the pro-rata share of the subsidy appropriation: 25% x $5 million = $1.25 million.

> Step 2A – Calculate the loan level that $1.25 million would support:

> - To calculate the loan level, take budget authority and divide by the <u>current</u> subsidy rate (pro-rata share/subsidy rate = loan level).

> - $1.25 million /.0800 = $15.625 million. The pro-rata share would support a loan level of $15.625 million.

> Step 3 – Determine the lesser of the pro-rata share of the credit limitation or the budget authority:

> - Compare the results of steps 1 and 2A.

> - Since the pro-rata share of the subsidy provides for a lower loan level ($15.625 million < $50 million), the pro-rata share of the subsidy is the amount automatically apportioned by the Bulletin.

> - Under the CR, this direct loan program may obligate up to $1.25 million for subsidy costs, which may support a loan level of $15.625 million.

| Example 1: | Current subsidy rate = | 8.00% | | |
|---|---|---|---|---|
| | | Pro-rata share (25%) | Pro-rata loan level | Amounts available under CR |
| Credit limitation | 200,000,000 | 50,000,000 | 50,000,000 | 1,250,000 in subsidy to support a loan level of 15,625,000 |
| BA | 5,000,000 | 1,250,000 | 15,625,000 | |

| Example 2: | Current subsidy rate = | 1.00% | | |
|---|---|---|---|---|
| | | Pro-rata share (25%) | Pro-rata loan level | Amounts available under CR |
| Credit limitation | 200,000,000 | 50,000,000 | 50,000,000 | 50,000,000 | loan level which requires |
| BA | 5,000,000 | 1,250,000 | 125,000,000 | 500,000 in BA for subsidy cost |

See section 185.24 for further information regarding the subsidy rates to be used for loans or loan guarantees at execution.

### 123.19  Do I have to request a warrant from Treasury for funds provided by a short-term CR?

Generally, no.  Treasury will not issue a warrant under a short-term CR unless an agency explicitly requests one (see Treasury Financial Manual I TFM2–2000, section 2025.30).  Exceptions may be made on a case-by-case basis if the short-term CR extends beyond the second quarter of the fiscal year. Further Fiscal Service Treasury guidance may be found on the USSGL website (https://www.fiscal.treasury.gov/ussgl/resources-implementation.html#budgetary).

### 123.20  Do I need to request a reapportionment after my full-year appropriation is enacted?

Yes.  Agencies must request a reapportionment **within 10 calendar days** of the enactment of an agency's full-year appropriations Act (including a full-year CR), even if the period covered by the CR has not expired.  In the Previous Approved column, include the amounts apportioned under the short-term CR (including automatic apportionment amounts as provided by the Bulletin and section 120.41.  See exhibit 120H and section 120.61).  The total amount subject to reapportionment will equal the total amount made available for the fiscal year in the regular appropriation. See below for further information on the following:

- Instructions on the apportionment process/format (see section 120)

- Detailed instructions for each line on the apportionment (see Appendix F)

Until OMB approves an agency's first apportionment request for the fiscal year, and unless otherwise determined by the agency's OMB representative, the agency will be under an automatic apportionment as specified in section 120.41.

### 123.21  Will my full-year enacted appropriations cover obligations made during the CR?

Yes. Normally, an agency's full-year enacted appropriations will cover all obligations made during the CR. However, there could be exceptions.  See section 123.14 for an example of an exception.

Additionally, if the enacted full-year appropriations provides funds in a TAS that is a different period of availability (i.e., a different TAFS) than was provided under the short-term CR, see section 120.63.

**123.22  What if the full-year enacted appropriations subsequently provided less budget authority than obligations incurred under the short-term CR?**

Any agency must do everything possible to reduce the amount of its existing obligations so that the agency's obligations do not exceed the amounts provided in the full-year enacted appropriations.  The agency must reduce obligations to the maximum extent possible—returning purchases received for a refund, canceling purchases of goods and services ordered but not yet received, and canceling grants.

For example, consider the following situation:

 (1) There was no indication that the Congress would enact a regular annual appropriation less than the amount available under the CR;

 (2) The amount obligated was available under the CR;

 (3) The full-year enacted appropriation was subsequently less than the obligations incurred under the CR; and

 (4) The agency reduced obligations to the maximum extent possible (e.g., returned purchases received for a refund, cancelled purchases of goods and services ordered but not yet received, canceled grants, and transferred funds to the extent possible to cover obligations made during the period of the CR).

In this circumstance, it is expected that an agency will normally be able to reduce its CR-incurred obligations by a sufficient amount so that the agency's obligations during that fiscal year will not exceed the level of the full-year enacted appropriation (and, thus, all of these obligations will be charged to the full-year enacted appropriation).  However, in a case in which an agency is not able (after having de-obligated funds to the maximum extent possible or used existing transfer authority to cover obligations made during the period of the CR) to reduce its CR-period obligations to the level of the full-year enacted appropriation, then the amount by which the full-year enacted appropriation has been exceeded will be charged to the CR.

If an agency's full-year enacted appropriations provided less budget authority than the obligations the agency incurred under the CR, the agency must contact its OMB examiner and request an apportionment (if the agency is subject to apportionment) that specifically footnotes that all of the requirements of this section have been met.  For any supplemental warrant, the agency must also provide to its Treasury Bureau of the Fiscal Service contact an OMB-approved apportionment stating that the conditions of this section have been met.

**123.23  What happens to my apportioned, unobligated short-term CR funding if the short-term CR is followed by a lapse in appropriations?**

During a lapse in appropriations, any unobligated funding from a rate for operations that was provided by the CR and apportioned by OMB is not available for obligation.  This includes unobligated funds from rate for operations for multi-year and no-year TAFSs by the CR.  This also includes any apportionments related to the authority provided as term and condition of the CR to be able to retain and spend collections.

If the short-term CR includes a provision that provides a full-year appropriation to a specific TAFS, amounts apportioned from that specific appropriation remain available during a lapse in appropriations.

## SECTION 124—AGENCY OPERATIONS IN THE ABSENCE OF APPROPRIATIONS

**Table of Contents**

124.1    What types of actions may my agency conduct during a lapse in appropriations?
    (a)    Background
    (b)    Policies
124.2    What plans should my agency make in anticipation of a lapse in appropriations?
124.3    When should my agency's shutdown plans be implemented?
124.4    How may my agency receive lapse communications updates from OMB?
124.5    Am I automatically apportioned obligational authority for agency operations that are authorized by law to continue in the absence of appropriations?

**Summary of Changes**

Clarifies and expands background information and policies (section 124.1).

Reiterates what agencies should include in lapse plans, clarifies when and how agencies should submit changes, and asks agencies to use a specified landing page to link to the OMB website (section 124.2).

## 124.1    What types of actions may my agency conduct during a lapse in appropriations?

(a) *Background.*

The Antideficiency Act (ADA) prohibits agencies from incurring obligations in advance of, or in excess of, an appropriation, except in certain limited circumstances. The Attorney General issued two opinions in the early 1980s ("Applicability of the Antideficiency Act Upon a Lapse in an Agency's Appropriations" (1980) and "Authority for the Continuance of Government Functions During a Temporary Lapse in Appropriations" (1981)) finding that the language and legislative history of the ADA prohibits agency officials from incurring obligations in the absence of appropriations. The Department of Justice's Office of Legal Counsel issued another opinion in 1995 ("Government Operations in the Event of a Lapse in Appropriations" (1995)) reaffirming and updating its 1981 opinion.

An agency may still incur an obligation in the absence of an appropriation for certain "excepted" functions, including when:

- A statute or court order expressly authorizes or requires an agency to obligate funds in advance of appropriations for the subject function;

- The lawful continuation of funded or unfunded functions necessarily implies that the subject function must also continue because suspension of that subject function would prevent or significantly damage the execution of the other lawfully continuing functions;

- The subject function addresses emergency circumstances such that the suspension of the function would imminently threaten the safety of human life or the protection of property; or

- The subject function is necessary to discharge the President's Constitutional duties and powers.

As discussed in section 124.2, an agency may retain employees who otherwise would be subject to furlough so that those employees may continue to perform "excepted" functions during a lapse in appropriations.

Agency functions that are financed with appropriations that have not lapsed may continue and are "exempt" from any shutdown procedures, even while a lapse has occurred in other appropriations.

(b)  *Policies.*

This section provides policy guidance and instructions for actions to be taken by Executive Branch agencies when the Congress fails to enact regular appropriations, a continuing resolution, or needed supplemental appropriations, resulting in a lapse of appropriations.

This section does not apply to specific appropriations action by the Congress to deny program funding.

When the Congress fails to act on program supplementals and the result is partial funding interruptions, special procedures beyond those outlined in this section may be warranted.   In such cases, you should consult your OMB representative.

Within the guidance established by the opinions issued by the Department of Justice and this Circular, agency heads, in consultation with their general counsels, must decide what agency activities are excepted or otherwise legally authorized to continue during a lapse in appropriations.   Agencies should address questions to OMB, including questions about the interpretation of the Antideficiency Act.   OMB will engage with the agency and the Department of Justice's Office of Legal Counsel, as necessary and appropriate.

## 124.2    What plans should my agency make in anticipation of a lapse in appropriations?

Agency heads, in consultation with their general counsels, must develop and maintain plans for an orderly shutdown in the event of a lapse in appropriations.   Each agency must have an up-to-date lapse plan on file with OMB.

Agencies must submit an updated lapse plan to OMB for review, at minimum, every two years, in the odd-numbered years, on August 1.  Plans should be updated in 2025.  Agencies must also submit an updated lapse plan to OMB for review whenever there is a change in the source of funding for an agency program or any significant modification, expansion, or reduction in agency program activities.  Additional guidance on lapse plan submission and review for each potential lapse will be communicated with agencies, as needed.

When submitting updated lapse plans for review, agencies must specifically identify any changes made based on the most recent lapse plan on file with OMB.  A document containing tracked changes and/or annotated comments is required.  Plans should be submitted to your OMB examiner and with a copy to the following email address: Section124Plans@omb.eop.gov.   Agencies may also contact this email address with questions related to their lapse plans.

Once the updated lapse plan is reviewed by OMB, the agency will publish the final lapse plan using a specified landing page on their agency website.  This landing page will be linked to each respective agency on the OMB website's Agency Contingency Plans page.

*Below are the requirements for each lapse plan.*

Given that the duration of a lapse in appropriations is inherently uncertain, your plan should describe agency actions to be taken during a short-term lapse (1-5 days).   It also should identify anticipated changes if the

lapse extends beyond that time period.    Your plan should also designate personnel responsible for implementing and adjusting the plan to respond to the length of the lapse in appropriations and changes in external circumstances.

You must include the following template at the beginning of your plan:

| Lapse Plan Summary Overview | |
|---|---|
| Estimated time (to nearest half day) required to complete shutdown activities: | *# days* |
| Total number of agency employees expected to be on board before implementation of the plan: | *# employees* |
| Total number of agency employees expected to be furloughed under the plan (unduplicated count): | *# employees* |
| **Total number of employees to be retained under the plan for each of the following categories** (may include duplicated counts**):** | |
| Compensation is financed by a resource other than annual appropriations: | *# employees* |
| Necessary to perform activities expressly authorized by law: | *# employees* |
| Necessary to perform activities necessarily implied by law: | *# employees* |
| Necessary to the discharge of the President's constitutional duties and powers: | *# employees* |
| Necessary to protect life and property: | *# employees* |

| **Brief summary of significant agency activities that will continue during a lapse:** |
|---|
| |

| **Brief summary of significant agency activities that will cease during a lapse:** |
|---|
| |

The plan should then proceed to describe in detail, for each component within your agency, the following:

- To the extent that specific shutdown activities will not be completed within one-half day, specify the nature of each such activity, together with the time and the number of employees necessary to complete the activity;

- The total number of employees in the component to be on-board before implementation of the plan;

- The total number of employees in the component expected to be furloughed under the plan;

- The total number of employees to be retained in the component under the plan for each of the categories listed in the table above (i.e., the employees' compensation is financed by carryover funds or an appropriation provided by permanent law, they are necessary to perform activities expressly authorized by law, they are necessary to perform activities necessarily implied by law, they are necessary to the discharge of the President's constitutional duties and powers, or they

are necessary to protect life and property).   If an employee fits in more than one category, they may be reflected in the count for all applicable categories (i.e., count may be duplicated), in order to ensure the best estimate of the number of employees within each category; and

- The agency's legal basis for each of its determinations to retain categories of employees, including a description of the nature of the agency activities in which these employees will be engaged.

To the extent that any of the information described above is expected to change should a lapse in appropriations extend for a prolonged period of time (i.e., longer than 5 days), the plan should explicitly describe these changes.   In particular, the plan should indicate any points in time when the furlough status of employees may change, how many employees would be affected, and the legal basis for such changes. Agencies should consult with an OMB representative at such points in time during a lapse in appropriations to make OMB aware of any such changes.   In addition, during a lapse in appropriations agencies should make an OMB representative aware of any instances where actions deviate from what is set forth in the plan.

Agency plans should also describe the actions that will be necessary to resume orderly operations once appropriations are restored, including:

- Methods for notifying employees that the shutdown furlough has ended and that they are to return to work on a specified day (normally the employee's next scheduled workday after the furlough has ended);

- Flexibilities available to supervisors if employees have problems returning to work on the day specified by the agency, including the use of accrued annual leave, compensatory time off, or credit hours;

- Procedures for resuming program activities, including steps to ensure appropriate oversight and disbursement of funds.

At the time employees are given furlough notices, agencies should provide them as much information as possible regarding how the agency will go about resuming operations after the furlough has ended.

### 124.3    When should my agency's shutdown plans be implemented?

OMB will monitor the status of congressional actions on appropriations bills and will notify agencies if shutdown plans are to be implemented.   Whenever it appears that a lapse in appropriations might occur, you should review your shutdown plans, and, if revisions are required, promptly submit the revised plan to OMB and post the revised plan on your agency website.   When agencies submit their plans to OMB, they should provide OMB with information on the agency personnel that would serve as a point of contact in the event of a lapse.   While agencies are ultimately responsible for preparing and implementing orderly shutdown plans, all changes to the plans must be submitted to OMB for review in advance of implementing the plan.  See section 124.2.

One week prior to the expiration of appropriations bills, regardless of whether the enactment of appropriations appears imminent, OMB will communicate with agency senior officials to remind agencies of their responsibilities to review and update orderly shutdown plans, and will share a draft communication template to notify employees of the status of appropriations.   OMB will hold follow-up communications on a periodic basis until such time as appropriations are enacted or a lapse in appropriations occurs. Approximately two business days before a potential lapse in appropriations, in coordination with OMB, agencies should notify employees of the status of funding using the OMB-provided employee notification.

OMB will notify agencies when they should begin to inform employees of their individual status (e.g., furloughed or not) under a lapse.

After OMB has communicated that a lapse in appropriations has occurred, OMB will provide guidance to agencies directing the initiation of orderly shutdown activities. Each agency head must determine the specific actions that will be taken; however, all actions must contribute to an orderly shutdown of the agency. All individual employees should have been notified of their status under a lapse by this time. Agency heads will notify OMB immediately once shutdown activities are initiated.

During a lapse in appropriations, agencies should only engage in activities consistent with their shutdown plan.

Agencies must take necessary personnel actions to release employees in accordance with applicable law and regulations of the Office of Personnel Management. You must prepare employee furlough notices and process personnel and pay records in connection with shutdown furlough actions. You should plan for these functions to be performed by employees who are retained for orderly termination of agency activities as long as those employees are available. Agencies should also establish clear protocols for how employees will be provided with furlough notices, contacted to be recalled to work following the end of the lapse in appropriations or should their furlough status change in accordance with their agency's plan, and informed of pertinent pay and leave information during the lapse. Where appropriate, agencies should seek to utilize available technology to allow employees maximum flexibility in returning to work.

OMB will notify you once the lapse in appropriations has ended so that you can begin implementing your plan to orderly resume agency activities.

### 124.4    How may my agency receive lapse communications updates from OMB?

Executive Branch agencies may receive updates on the status of appropriations at the OMB Communications Regarding a Lapse in Appropriations page. Additional resources are provided on this page and all agencies are encouraged to visit the page one week prior to the expiration of annual appropriations Acts, regardless of whether the enactment of appropriations appears imminent.

To receive lapse updates via email, agency employees must join the group by following instructions on the page. Receiving email updates is optional; all updates will be provided on the OMB Communications Regarding a Lapse in Appropriations page.

### 124.5    Am I automatically apportioned obligational authority for agency operations that are authorized by law to continue in the absence of appropriations?

Yes. You are automatically apportioned the amounts necessary to carry out your agency's shutdown plan as required by this section. This automatic apportionment provides authority to incur obligations, but does not provide any authority to liquidate such obligations.

This automatic apportionment does not affect previously approved current-year apportionments for non-continuing resolution (CR) funds, such as multi-year and permanent law appropriations. See sections 120.55 and 123.23 for what happens to apportioned CR funds if the lapse in appropriations follows a CR.