# Exhibit 5

# Mandate *for* Leadership

## The Conservative Promise

# Project 2025

PRESIDENTIAL TRANSITION PROJECT

# 2

# EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES

**Russ Vought**

In its opening words, Article II of the U.S. Constitution makes it abundantly clear that "[t]he executive power shall be vested in a President of the United States of America."[1] That enormous power is not vested in departments or agencies, in staff or administrative bodies, in nongovernmental organizations or other equities and interests close to the government. The *President* must set and enforce a plan for the executive branch. Sadly, however, a President today assumes office to find a sprawling federal bureaucracy that all too often is carrying out its own policy plans and preferences—or, worse yet, the policy plans and preferences of a radical, supposedly "woke" faction of the country.

The modern conservative President's task is to limit, control, and direct the executive branch on behalf of the American people. This challenge is created and exacerbated by factors like Congress's decades-long tendency to delegate its lawmaking power to agency bureaucracies, the pervasive notion of expert "independence" that protects so-called expert authorities from scrutiny, the presumed inability to hold career civil servants accountable for their performance, and the increasing reality that many agencies are not only too big and powerful, but also increasingly weaponized against the public and a President who is elected by the people and empowered by the Constitution to govern.

In *Federalist* No. 47, James Madison warned that "[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."[2] Regrettably, that wise and cautionary note describes to a significant degree the modern executive branch, which—whether controlled

by the bureaucracy or by the President—writes federal policy, enforces that policy, and often adjudicates whether that policy was properly drafted and enforced. The overall situation is constitutionally dire, unsustainably expensive, and in urgent need of repair. Nothing less than the survival of self-governance in America is at stake.

The great challenge confronting a conservative President is the existential need for aggressive use of the vast powers of the executive branch to return power—including power currently held by the executive branch—to the American people. Success in meeting that challenge will require a rare combination of boldness and self-denial: boldness to bend or break the bureaucracy to the presidential will and self-denial to use the bureaucratic machine to send power away from Washington and back to America's families, faith communities, local governments, and states.

Fortunately, a President who is willing to lead will find in the Executive Office of the President (EOP) the levers necessary to reverse this trend and impose a sound direction for the nation on the federal bureaucracy. The effectiveness of those EOP levers depends on the fundamental premise that it is *the President's agenda* that should matter to the departments and agencies that operate under his constitutional authority and that, as a general matter, it is the President's chosen advisers who have the best sense of the President's aims and intentions, both with respect to the policies he intends to enact and with respect to the interests that must be secured to govern successfully on behalf of the American people. This chapter focuses on key features of and recommendations for several of the EOP's important components.

**U.S. OFFICE OF MANAGEMENT AND BUDGET (OMB)**

OMB assists the President in the execution of his policy agenda across the government by employing many statutory and executive procedural levers to bring the bureaucracy in line with all budgetary, regulatory, and management decisions. Properly understood, it is a President's air-traffic control system with the ability and charge to ensure that all policy initiatives are flying in sync and with the authority to let planes take off and, at times, ground planes that are flying off course. OMB's key roles include:

- **Developing and enforcing** the President's budget and executing the appropriations laws that fund the government;

- **Managing** agency and personnel performance, procurement policy, financial management, and information technology;

- **Developing** the President's regulatory agenda, reviewing new regulatory actions, reviewing federal information collections, and setting and enforcing federal information policy; and

2025 Presidential Transition Project

- **Coordinating and clearing** agency communications with Congress, including testimonies and views on draft legislation.

OMB cannot perform its role on behalf of the President effectively if it is not intimately involved in all aspects of the White House policy process and lacks knowledge of what the agencies are doing. Internally to the EOP, ensuring that the policy-formulation procedures developed by the White House to serve the President include OMB is one of any OMB Director's major responsibilities. A common meme of those who intend to evade OMB review is to argue that where "resources" are not being discussed, OMB's participation is optional. This ignores both OMB's role in all downstream execution and the reality that it has the only statutory tools in the White House that are powerful enough to override implementing agencies' bureaucracies.

The Director must view his job as the best, most comprehensive approximation of the President's mind as it pertains to the policy agenda while always being ready with actual options to effect that agenda within existing legal authorities and resources. This role cannot be performed adequately if the Director acts instead as the ambassador of the institutional interests of OMB and the wider bureaucracy to the White House. Once its reputation as the keeper of "commander's intent" is established, then and only then does OMB have the ability to shape the most efficient way to pursue an objective.

Externally, the Director must ensure that OMB has sufficient visibility into the deep caverns of agency decision-making. One indispensable statutory tool to that end is to ensure that policy officials—the Program Associate Directors (PADs) managing the vast Resource Management Offices (RMOs)—personally sign what are known as the apportionments. In 1870, Congress passed the Anti-Deficiency Act[3] to prevent the common agency practice of spending down all appropriated funding, creating artificial funding shortfalls that Congress would have to fill. The law mandated that all funding be allotted or "apportioned" in installments. This process, whereby agencies come to OMB for allotments of appropriated funding, is essential to the effective financial stewardship of taxpayer dollars. OMB can then direct on behalf of a President the amount, duration, and purpose of any apportioned funding to ensure against waste, fraud, and abuse *and* ensure consistency with the President's agenda and applicable laws.

The vast majority of these apportionments were signed by career officials—the Deputy Associate Directors (DADs)—until the Trump Administration placed this responsibility in the hands of the PADs and thereby opened wide vistas of oversight that had escaped the attention of policy officials. The Biden Administration subsequently reversed this decision. No Director should be chosen who is unwilling to restore apportionment decision-making to the PADs' personal review, who is not aggressive in wielding the tool on behalf of the President's agenda, or who is unable to defend the power against attacks from Congress.