# Exhibit 6



**441 G St. N.W.**
**Washington, DC 20548**

# Decision

**Matter of:**  Office of Management and Budget—Withholding of Ukraine Security Assistance

**File:**  B-331564

**Date:**  January 16, 2020

### DIGEST

In the summer of 2019, the Office of Management and Budget (OMB) withheld from obligation funds appropriated to the Department of Defense (DOD) for security assistance to Ukraine.  In order to withhold the funds, OMB issued a series of nine apportionment schedules with footnotes that made all unobligated balances unavailable for obligation.

Faithful execution of the law does not permit the President to substitute his own policy priorities for those that Congress has enacted into law.  OMB withheld funds for a policy reason, which is not permitted under the Impoundment Control Act (ICA).  The withholding was not a programmatic delay.  Therefore, we conclude that OMB violated the ICA.

### DECISION

In the summer of 2019, OMB withheld from obligation approximately $214 million appropriated to DOD for security assistance to Ukraine.  *See* Department of Defense Appropriations Act, 2019, Pub. L. No. 115-245, div. A, title IX, § 9013, 132 Stat. 2981, 3044–45 (Sept. 28, 2018).  OMB withheld amounts by issuing a series of nine apportionment schedules with footnotes that made all unobligated balances for the Ukraine Security Assistance Initiative (USAI) unavailable for obligation.  *See* Letter from General Counsel, OMB, to General Counsel, GAO (Dec. 11, 2019) (OMB Response), at 1–2.  Pursuant to our role under the ICA, we are issuing this decision.  Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-344, title X, § 1015, 88 Stat. 297, 336 (July 12, 1974), *codified at* 2 U.S.C. § 686.  As explained below, we conclude that OMB withheld the funds from obligation for an

unauthorized reason in violation of the ICA.[1]  *See* 2 U.S.C. § 684.  We also question actions regarding funds appropriated to the Department of State (State) for security assistance to Ukraine.

OMB removed the footnote from the apportionment for the USAI funds on September 12, 2019.  OMB Response, at 2.  Prior to their expiration, Congress then rescinded and reappropriated the funds.  Continuing Appropriations Act, 2020, Pub. L. No. 116-59, div. A, § 124(b), 133 Stat. 1093, 1098 (Sept. 27, 2019).

In accordance with our regular practice, we contacted OMB, the Executive Office of the President, and DOD to seek factual information and their legal views on this matter.  GAO, *Procedures and Practices for Legal Decisions and Opinions*, GAO-06-1064SP (Washington, D.C.: Sept. 2006), *available at* www.gao.gov/products/GAO-06-1064SP; Letter from General Counsel, GAO, to Acting Director and General Counsel, OMB (Nov. 25, 2019); Letter from General Counsel, GAO, to Acting Chief of Staff and Counsel to the President, Executive Office of the President (Nov. 25, 2019); Letter from General Counsel, GAO, to Secretary of Defense and General Counsel, DOD (Nov. 25, 2019).

OMB provided a written response letter and certain apportionment schedules for security assistance funding for Ukraine.  OMB Response (written letter); OMB Response, Attachment (apportionment schedule).  The Executive Office of the President responded to our request by referring to the letter we had received from OMB and providing that the White House did not plan to send a separate response.  Letter from Senior Associate Counsel to the President, Executive Office of the President, to General Counsel, GAO (Dec. 20, 2019).  We have contacted DOD regarding its response several times.  Letter from General Counsel, GAO, to Secretary of Defense and General Counsel, DOD (Dec. 10, 2019); Telephone Conversation with Deputy General Counsel for Legislation, DOD (Dec. 12, 2019); Telephone Conversation with Office of General Counsel Official, DOD (Dec. 19, 2019).  Thus far, DOD officials have not provided a response or a timeline for when we will receive one.

---

[1] On October 30, 2019, Senator Chris Van Hollen asked the Comptroller General about this matter during a hearing before the Senate Committee on the Budget. *Chief Financial Officers Act of 1990: Achieving the Vision: Hearing Before the Senate Committee on the Budget,* 116th Cong. (2019), (statement of Sen. Van Hollen), *available at* https://www.budget.senate.gov/chief-financial-officers-act-of-1990-achieving-the-vision (last visited Jan. 13, 2020).  We also received a letter from Senator Van Hollen regarding this matter.  Letter from Senator Chris Van Hollen to Comptroller General (Dec. 23, 2019).

BACKGROUND

For fiscal year 2019, Congress appropriated $250 million for the Ukraine Security Assistance Initiative (USAI).  Pub. L. No. 115-245, § 9013, 132 Stat. at 3044–45.  The funds were available "to provide assistance, including training; equipment; lethal assistance; logistics support, supplies and services; sustainment; and intelligence support to the military and national security forces of Ukraine."  *Id.* § 9013, 132 Stat. at 3044.  The appropriation made the funds available for obligation through September 30, 2019.  *Id.*

DOD was required to notify Congress 15 days in advance of any obligation of the USAI funds.  *Id.* § 9013, 132 Stat. at 3045.  In order to obligate more than fifty percent of the amount appropriated, DOD was also required to certify to Congress that Ukraine had taken "substantial actions" on "defense institutional reforms."  John S. McCain National Defense Authorization Act for Fiscal Year 2019, Pub. L. No. 115-232, div., A, title XII, § 1246, 132 Stat. 1636, 2049 (Aug. 13, 2018) (amending National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114-92, div. A, title XII, § 1250, 129 Stat. 726, 1068 (Nov. 25, 2015)).  On May 23, 2019, DOD provided this certification to Congress.  Letter from Under Secretary of Defense for Policy, to Chairman, Senate Committee on Foreign Relations (May 23, 2019) (DOD Certification) (noting that similar copies had been provided to the congressional defense committees and the House Committee on Foreign Affairs).  In its certification, DOD included descriptions of its planned expenditures, totaling $125 million.  *Id.*

On July 25, 2019, OMB issued the first of nine apportionment schedules with footnotes withholding USAI funds from obligation.  OMB Response, 1–2.  This footnote read:

> "Amounts apportioned, but not yet obligated as of the date of this reapportionment, for the Ukraine Security Assistance Initiative (Initiative) are not available for obligation until August 5, 2019, to allow for an interagency process to determine the best use of such funds.  Based on OMB's communication with DOD on July 25, 2019, OMB understands from the Department that this brief pause in obligations will not preclude DOD's timely execution of the final policy direction.  DOD may continue its planning and casework for the Initiative during this period."

*Id.*; *see id.*, Attachment.  On both August 6 and 15, 2019, OMB approved additional apportionment actions to extend this "pause in obligations," with footnotes that, except for the dates, were identical to the July 25, 2019 apportionment action.[2]  *Id.*,

---

[2] The initial apportionment footnote made USAI funds unavailable for obligation until August 5, 2019.  OMB Response, Attachment.  OMB did not sign the next

(continued…)

at 2 n. 2.  OMB approved additional apportionment actions on August 20, 27, and 31, 2019; and on September 5, 6, and 10, 2019.[3]  *Id*.  The footnotes from these additional apportionment actions were, except for the dates, otherwise identical to one another.  *Id*., Attachment.  They nevertheless differed from those of July 25 and August 6 and 15, 2019, in that they omitted the second sentence that appeared in the earlier apportionment actions regarding OMB's understanding that the pause in obligation would not preclude timely obligation.  *Id.*  The apportionment schedule issued on August 20 read as follows:

> "Amounts apportioned, but not yet obligated as to the date of this reapportionment, for the Ukraine Security Assistance Initiative (Initiative) are not available for obligation until August 26, 2019, to allow for an interagency process to determine the best use of such funds.  DOD may continue its planning and casework for the Initiative during this period."

*Id*., Attachment.  The apportionment schedules issued on August 27 and 31, 2019; and on September 5, 6, and 10, 2019 were identical except for the dates.  *Id.*  On September 12, 2019, OMB issued an apportionment that removed the footnote that previously made the USAI funds unavailable for obligation.  OMB Response, at 2; *id.,* Attachment.  According to OMB, approximately $214 million of the USAI appropriation was withheld as a result of these footnotes.  OMB Response, at 2.  OMB did not transmit a special message proposing to defer or rescind the funds.

DISCUSSION

At issue in this decision is whether OMB had authority to withhold the USAI funds from obligation.

---

(...continued)

apportionment until August 6, 2019.  *See id.*  On August 6, 2019, the amounts were made unavailable for obligation until August 12, 2019.  *Id.*  While the next footnote was issued on August 15, 2019 it stated that funds were unavailable for obligation "until August 12, 2019."  *Id.*  Despite the dates listed in each apportionment footnote, OMB provided that the "pause in obligations was *extended*" on both August 6, 2019 and August 15, 2019.  *See* OMB Response, at 2, fn. 2 (emphasis added).

[3] The apportionment footnote issued on August 20, 2019 made USAI funds unavailable for obligation until August 26, 2019.  OMB Response, Attachment.  OMB did not sign the next apportionment until August 27, 2019.  *See id.*  Despite the date listed in the apportionment footnote, OMB provided that the "pause in obligations was *extended*" on August 20, 2019.  *See* OMB Response, at 2, fn. 2 (emphasis added).

The Constitution specifically vests Congress with the power of the purse, providing that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. The Constitution also vests all legislative powers in Congress and sets forth the procedures of bicameralism and presentment, through which the President may accept or veto a bill passed by both Houses of Congress, and Congress may subsequently override a presidential veto. *Id.*, art. I, § 7, cl. 2, 3. The President is not vested with the power to ignore or amend any such duly enacted law. *See Clinton v. City of New York,* 524 U.S. 417, 438 (1998) (the Constitution does not authorize the President "to enact, to amend, or to repeal statutes"). Instead, he must "faithfully execute" the law as Congress enacts it. U.S. Const., art. II, § 3.

An appropriations act is a law like any other; therefore, unless Congress has enacted a law providing otherwise, the President must take care to ensure that appropriations are prudently obligated during their period of availability. *See* B-329092, Dec. 12, 2017 (the ICA operates on the premise that the President is required to obligate funds appropriated by Congress, unless otherwise authorized to withhold). In fact, Congress was concerned about the failure to prudently obligate according to its Congressional prerogatives when it enacted and later amended the ICA. *See generally,* H.R. Rep. No. 100-313, at 66–67 (1987); *see also* S. Rep. No. 93-688, at 75 (1974) (explaining that the objective was to assure that "the practice of reserving funds does not become a vehicle for furthering Administration policies and priorities at the expense of those decided by Congress").

The Constitution grants the President no unilateral authority to withhold funds from obligation. *See* B-135564, July 26, 1973. Instead, Congress has vested the President with strictly circumscribed authority to impound, or withhold, budget authority only in limited circumstances as expressly provided in the ICA. *See* 2 U.S.C. §§ 681–688. The ICA separates impoundments into two exclusive categories—deferrals and rescissions. The President may temporarily withhold funds from obligation—but not beyond the end of the fiscal year in which the President transmits the special message—by proposing a "deferral."[4] 2 U.S.C. § 684. The President may also seek the permanent cancellation of funds for fiscal policy or other reasons, including the termination of programs for which Congress has provided budget authority, by proposing a "rescission."[5] 2 U.S.C. § 683.

In either case, the ICA requires that the President transmit a special message to Congress that includes the amount of budget authority proposed for deferral or

---

[4] Budget authority proposed for deferral must be prudently obligated before the end of its period of availability. 2 U.S.C. § 684; B-329092, Dec. 12, 2017.

[5] Budget authority proposed for rescission must be made available for obligation unless, within 45 calendar days of continuous congressional session, Congress has completed action on a rescission bill rescinding all or part of the amount proposed for rescission. 2 U.S.C. § 683.

rescission and the reason for the proposal.  2 U.S.C. §§ 683–684.  These special messages must provide detailed and specific reasoning to justify the withholding, as set out in the ICA.  *See* 2 U.S.C. §§ 683–684; B-237297.4, Feb. 20, 1990 (vague or general assertions are insufficient to justify the withholding of budget authority).  The burden to justify a withholding of budget authority rests with the executive branch.

There is no assertion or other indication here that OMB intended to propose a rescission.  Not only did OMB not submit a special message with such a proposal, the footnotes in the apportionment schedules, by their very terms, established dates for the release of amounts withheld.  The only other authority, then, for withholding amounts would have been a deferral.

The ICA authorizes the deferral of budget authority in a limited range of circumstances:  to provide for contingencies; to achieve savings made possible by or through changes in requirements or greater efficiency of operations; or as specifically provided by law.  2 U.S.C. § 684(b).  No officer or employee of the United States may defer budget authority for any other purpose.  *Id.*

Here, OMB did not identify—in either the apportionment schedules themselves or in its response to us—any contingencies as recognized by the ICA, savings or efficiencies that would result from a withholding, or any law specifically authorizing the withholding.  Instead, the footnote in the apportionment schedules described the withholding as necessary "to determine the best use of such funds."  *See* OMB Response, at 2; Attachment.  In its response to us, OMB described the withholding as necessary to ensure that the funds were not spent "in a manner that could conflict with the President's foreign policy."  OMB Response, at 9.

The ICA does not permit deferrals for policy reasons.  *See* B-237297.3, Mar. 6, 1990; B-224882, Apr. 1, 1987.  OMB's justification for the withholding falls squarely within the scope of an impermissible policy deferral.  Thus, the deferral of USAI funds was improper under the ICA.

When Congress enacts appropriations, it has provided budget authority that agencies must obligate in a manner consistent with law.  The Constitution vests lawmaking power with the Congress.  U.S. Const., art. I, § 8, cl. 18.  The President and officers in an Administration of course may consider their own policy objectives as they craft policy proposals for inclusion in the President's budget submission.  *See* B-319488, May 21, 2010, at 5 ("Planning activities are an essential element of the budget process.").  However, once enacted, the President must "take care that the laws be faithfully executed."  *See* U.S. Const., art. II, § 3.  Enacted statutes, and not the President's policy priorities, necessarily provide the animating framework for all actions agencies take to carry out government programs. *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act . . . unless and until Congress confers power upon it."); *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (a federal agency is "a creature of

statute" and "has no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress").

Faithful execution of the law does not permit the President to substitute his own policy priorities for those that Congress has enacted into law. In fact, Congress was concerned about exactly these types of withholdings when it enacted and later amended the ICA. See H.R. Rep. No. 100-313, at 66–67 (1987); see also S. Rep. No. 93-688, at 75 (1974) (explaining that the objective was to assure that "the practice of reserving funds does not become a vehicle for furthering Administration policies and priorities at the expense of those decided by Congress").

OMB asserts that its actions are not subject to the ICA because they constitute a programmatic delay. OMB Response, at 7, 9. It argues that a "policy development process is a fundamental part of program implementation," so its impoundment of funds for the sake of a policy process is programmatic. Id., at 7. OMB further argues that because reviews for compliance with statutory conditions and congressional mandates are considered programmatic, so too should be reviews undertaken to ensure compliance with presidential policy prerogatives. Id., at 9.

OMB's assertions have no basis in law. We recognize that, even where the President does not transmit a special message pursuant to the procedures established by the ICA, it is possible that a delay in obligation may not constitute a reportable impoundment. See B-329092, Dec. 12, 2017; B-222215, Mar. 28, 1986. However, programmatic delays occur when an agency is taking necessary steps to implement a program, but because of factors external to the program, funds temporarily go unobligated. B-329739, Dec. 19, 2018; B-291241, Oct. 8, 2002; B-241514.5, May 7, 1991. This presumes, of course, that the agency is making reasonable efforts to obligate. B-241514.5, May 7, 1991. Here, there was no external factor causing an unavoidable delay. Rather, OMB on its own volition explicitly barred DOD from obligating amounts.

Furthermore, at the time OMB issued the first apportionment footnote withholding the USAI funds, DOD had already produced a plan for expending the funds. See DOD Certification, at 4–14. DOD had decided on the items it planned to purchase and had provided this information to Congress on May 23, 2019. Id. Program execution was therefore well underway when OMB issued the apportionment footnotes. As a result, we cannot accept OMB's assertion that its actions are programmatic.

The burden to justify a withholding of budget authority rests with the executive branch. Here, OMB has failed to meet this burden. We conclude that OMB violated the ICA when it withheld USAI funds for a policy reason.

<u>Foreign Military Financing</u>

We also question actions regarding funds appropriated to State for security assistance to Ukraine.  In a series of apportionments in August of 2019, OMB withheld from obligation some foreign military financing (FMF) funds for a period of six days.  These actions may have delayed the obligation of $26.5 million in FMF funds.  *See* OMB Response, at 3.  An additional $141.5 million in FMF funds may have been withheld while a congressional notification was considered by OMB.  *See* E-mail from GAO Liaison Director, State, to Staff Attorney, GAO, *Subject:  Response to GAO on Timeliness of Ukraine Military Assistance* (Jan. 10, 2020) (State's Additional Response).  We have asked both State and OMB about the availability of these funds during the relevant period.  Letter from General Counsel, GAO, to Acting Director and General Counsel, OMB (Nov. 25, 2019); Letter from General Counsel, GAO, to Secretary of State and Acting Legal Adviser, State (Nov. 25, 2019).  State provided us with limited information.  E-mail from Staff Attorney, GAO, to Office of General Counsel, State, *Subject: RE: Response to GAO on Timeliness of Ukraine Military Assistance* (Dec. 18, 2019) (GAO's request for additional information); E-mail from GAO Liaison Director, State, to Assistant General Counsel for Appropriations Law, GAO, *Subject: Response to GAO on Timeliness of Ukraine Military Assistance* (Dec. 12, 2019) (State's response to GAO's November 25, 2019 letter); State's Additional Response.  OMB's response to us contained very little information regarding the FMF funds.  *See generally* OMB Response, at 2–3.

As a result, we will renew our request for specific information from State and OMB regarding the potential impoundment of FMF funds in order to determine whether the Administration's actions amount to a withholding subject to the ICA, and if so, whether that withholding was proper.  We will continue to pursue this matter.

CONCLUSION

OMB violated the ICA when it withheld DOD's USAI funds from obligation for policy reasons.  This impoundment of budget authority was not a programmatic delay.

OMB and State have failed, as of yet, to provide the information we need to fulfill our duties under the ICA regarding potential impoundments of FMF funds. We will continue to pursue this matter and will provide our decision to the Congress after we have received the necessary information.

We consider a reluctance to provide a fulsome response to have constitutional significance. GAO's role under the ICA—to provide information and legal analysis to Congress as it performs oversight of executive activity—is essential to ensuring respect for and allegiance to Congress' constitutional power of the purse. All federal officials and employees take an oath to uphold and protect the Constitution and its core tenets, including the congressional power of the purse. We trust that State and OMB will provide the information needed.

*Thomas H. Armstrong*

Thomas H. Armstrong
General Counsel