# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PROTECT DEMOCRACY PROJECT,

    Plaintiff,

v.

U.S. OFFICE OF MANAGEMENT & BUDGET et al.,

    Defendants.

Case No. 1:25-cv-01111

## DECLARATION OF SAMUEL BAGENSTOS

I, Samuel Bagenstos, declare as follows:

1. I currently hold a joint appointment as the Frank G. Millard Professor of Law at the University of Michigan Law School and the Arlene Susan Kohn Professor of Social Policy at the University of Michigan Gerald R. Ford School of Public Policy. I submit this declaration in my individual capacity only.

2. From January 2021 to June 2022, I served as the General Counsel to the Office of Management and Budget. Among the other duties of that position, I was the principal legal advisor to the White House and the Executive Branch on appropriations and budget law. I advised OMB and the other executive departments and agencies on the apportionment process and compliance with the Antideficiency Act and the Impoundment Control Act, among other matters.

3. I left OMB in June 2022 to serve as the General Counsel to the Department of Health and Human Services, where I remained until December 2024. Among my many duties at HHS, I provided legal advice to the Department on budget and appropriations issues, and engaged with my former colleagues at OMB on those issues as needed.

4. I have also held other legal positions within the federal Executive Branch. From 2009 to 2011, I served as a Deputy Assistant Attorney General at the Department of Justice. From 1994 to 1997, I was a career attorney at the Department of Justice.

### The Apportionment Transparency Statute

5. On March 15, 2022, President Biden signed into law the Consolidated Appropriations Act, 2022, Pub. L. No. 117-103. The Financial Services and General Government title of that

law contained new provisions mandating transparency in the apportionment process. In particular, Section 204(b) required OMB, within 120 days, to "complete implementation of an automated system to post each document apportioning an appropriation, pursuant to section 1513(b) of title 31, United States Code, including any associated footnotes, in a format that qualifies each such document as an Open Government Data Asset (as defined in section 3502 of title 44, United States Code), not later than 2 business days after the date of approval of such apportionment." In Section 204(c), Congress made clear that the posting of apportionments must occur on a "publicly accessible website" and that the posting "shall also include a written explanation by the official approving each such apportionment stating the rationale for any footnotes for apportioned amounts." Congress provided that classified information incorporated in an apportionment need not be posted on the website but instead must be "ma[de] available" at "the request of the chair or ranking member of any appropriate congressional committee or subcommittee."

  6. Although the apportionment transparency provisions initially applied only to the 2022 fiscal year, Congress adopted them into permanent law in the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328.

  7. I served as OMB General Counsel when Congress adopted the apportionment transparency provisions in 2022. I participated in setting up the automated apportionment posting system required by the statute, and I advised OMB's budget staff on compliance with that statute. In my experience at OMB and HHS, compliance with the apportionment transparency law was straightforward, did not interfere with the President's constitutional or statutory responsibilities or OMB's supervision of the Executive Branch, and was fully consistent with effective and efficient governance.

  8. Since I left the government, I have consulted the OMB apportionments database to follow the actions of the new administration. I found that database to be an important tool to track whether the new administration is faithfully executing the appropriations laws enacted by Congress.

### The March 29, 2025, Vought Letter

  9. I have reviewed the letter OMB Director Russell T. Vought sent to Senator Patty Murray on March 29, 2025. In that letter, Director Vought announces that OMB "will no longer operate and maintain the publicly available automated system to which apportionments are posted" as required by the apportionment transparency law.

  10. Director Vought's letter asserts that "[b]y their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change."

11. That assertion fundamentally misunderstands both the nature of apportionments and what it means to be "predecisional." Apportionments are not part of the give and take that precedes a binding legal decision; they are the binding legal decisions themselves.

12. In the Antideficiency Act, Congress required the President to apportion appropriations "to prevent obligation or expenditure at a rate that would indicate a necessity for a deficiency or supplemental appropriation." 31 U.S.C. § 1512(a); see id. § 1513(b). Congress added the apportionment requirement to the Antideficiency Act in 1905 because federal agencies had too often spent more than the amount appropriated to them. Rather than simply enact an annual appropriation and trust agencies to make adjustments throughout the year to remain within the appropriated amount, Congress required the President (in a duty he redelegated to OMB) to parcel out the money periodically (or by project or on another similar basis) to ensure the agencies would not overspend. Each apportionment legally unlocks a certain fraction of the appropriation; the statute bars agencies from making expenditures that exceed the apportionment. See id. § 1517. The apportionment is thus the legally binding decision of the Executive Branch that enables an agency to spend appropriated money.

13. OMB's principal resource on the budget and appropriations process, Circular A-11, makes clear that apportionments are binding decisions, rather than simply part of the give and take that precedes such decisions. In Circular A-11, OMB itself defines an apportionment as "an *OMB-approved* plan to use budgetary resources"—not a proposed plan to use those resources. Circular A-11 § 120.1 (emphasis added). And OMB describes that "approved plan" as itself "legally binding." *Id.*

14. The whole point of the apportionment process is to manage federal funds to ensure that an agency does not overspend its appropriation. Thus, it is typical for an apportionment to release one part of an agency's appropriation and to be followed by one or more subsequent apportionments releasing the remainder of that appropriation. But that does not make any of the apportionments "predecisional." Each apportionment stands on its own as a binding legal decision.

15. My own experience with the apportionments process, both at OMB and at HHS, is consistent with that understanding. Apportionments, and the footnotes that define their conditions and limits, convey the binding determinations made by OMB. They are not "predecisional" in anything but the trivial sense that in a perpetual government virtually any decision that is made today can be superseded or displaced at some subsequent point.

16. Director Vought's letter asserts that "apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy." But the apportionment transparency law already accounts for concerns about national security and foreign policy by permitting OMB to withhold classified information from the public database and provide that information separately to relevant congressional committee chairs. Based on my own experience, it would be a straightforward matter to follow that process

and redact from the public database any information in apportionments or associated footnotes that raises significant national security or foreign policy concerns.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 22, 2025.

Samuel Bagenstos