**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PROTECT DEMOCRACY PROJECT      )
     )
               Plaintiff,      )
     v.      )
     )      Case No. 1:25-cv-01111-EGS
OFFICE OF MANAGEMENT AND      )
BUDGET, et al.,      )
     )
               Defendants.      )
_____ )

## DECLARATION OF KELLY KINNEEN

I, Kelly Kinneen, make the following declaration based upon my personal knowledge, upon information provided in my official capacity, and upon conclusions I reached based on that knowledge or information:

1.  I am the Assistant Director for Budget of the Office of Management and Budget (OMB) in the Executive Office of the President, in Washington, D.C. I have served in this position since 2017, and have worked at OMB since 2006.

2.  I am the senior-most career official responsible for supporting the OMB Director in developing all aspects of the President's Budget. Additionally, I advise OMB leadership and Federal agencies on matters of execution relating to OMB's apportionment authority, 31 U.S.C. § 1512 et seq.

3.  In this declaration, I summarize OMB's apportionment authority and describe the nature of the interagency process by which appropriated funds are made available to agencies.

4.  At the start of the fiscal year, and after appropriations bills are passed, pursuant to 31 U.S.C. §§ 1512-13, the President must "apportion" the budget authority to the relevant Federal agencies before each agency may obligate its funds. The President has delegated this apportionment authority to the OMB Director. Executive Order (E.O.)

6166, as amended by E.O. 12608.

5.    An apportionment is an OMB-approved plan to use budgetary resources. 31 U.S.C.
      1513(b). OMB apportions funds to Executive Branch agencies by time periods, specific
      activities or projects, or a combination thereof. 31 U.S.C. § 1512(b)(1); OMB Circular
      A-11 § 120.1. If funds are apportioned by time period, OMB refers to that as a
      "category A" apportionment. If funds are apportioned by project or activity, OMB
      refers to that as a "category B" apportionment. If funds are apportioned by both time
      and purpose, that is referred to as a "category AB" apportionment.

6.    Funds are to be apportioned "as the [apportioning] official considers appropriate." 31
      U.S.C. § 1512(b)(2). Apportionments involve exercising significant discretion and
      judgment regarding the budgetary resources a program requires, including when those
      resources will be needed and for what purpose.  Circular A-11 makes clear that officials
      cannot exceed apportionments. Apportionments, being an exercise of delegated
      authority from the President, are legally binding upon the Executive Branch officials.
      The apportionment, however, does not bind OMB, which remains free to change it
      whenever it so chooses, as Circular A-11 also makes clear. Circular A-11, an Executive
      Branch guidance document, merely confirms that agencies must follow instructions
      from the President, acting through OMB.

7.    With narrow exceptions, OMB must apportion appropriated funds before an agency
      may obligate those funds during each fiscal year. The Government Accountability
      Office (GAO) defines an obligation as "[a] definite commitment that creates a legal
      liability of the government for the payment of goods and services ordered or received,
      or a legal duty on the part of the United States that could mature into a legal liability by
      virtue of actions on the part of the other party beyond the control of the United States."

U.S. Gov't Accountability Office, A Glossary of Terms Used in the Federal Budget Process, GAO-05-734SP, at 70 (2005), available at https://www.gao.gov/assets/gao-05-734sp.pdf. An agency enters an obligation where, for example, it places an order, signs a contract, awards a grant, purchases a service, or takes other actions that require the government to make payments to the public or from one government account to another. OMB Circular A-11 § 20.5(a).

8.  An "expenditure" or "outlay" occurs when an agency makes a payment to liquidate an obligation. OMB Circular A-11 § 20.6.

9.  Obligations and expenditures that exceed an apportionment are a violation of, and are subject to reporting under, the Antideficiency Act. 31 U.S.C. 1517(a)(1), (b). An apportionment authorizes an agency, but does not require it, to make an obligation of funds. An apportionment does not in any way entitle an outside party to funds. Rather, apportionments are internal directives from OMB, exercising the President's delegated authority, to agencies.

10. OMB communicates apportionment decisions to agencies through Excel sheets that include designated funds for times, periods, projects, or activities. Apportionments reflect a snapshot of time of OMB's best judgment in the moment about how an agency should use its funds during the period when those funds are legally available for obligation. This time period could be one quarter, one fiscal year, many fiscal years, or indefinite. Because apportionments are forward-looking, they are required by statute to be periodically reviewed and often are updated (or "reapportioned") to reflect changes in circumstances or policy goals. 31 U.S.C. 1512(a).

11. OMB routinely also includes informational or legally binding footnotes on apportionments. Footnotes give an agency additional information or instructions beyond

the dollar amounts provided for a time period, project, or activity. Frequently, footnotes will provide additional restrictions on the use of funds, or will condition the availability of funds on further action by the agency, or on other future circumstances. Footnotes can disclose ongoing negotiations between an agency and OMB. An iterative approach to footnotes can assist in gathering information from agencies that are less inclined to provide information to OMB for oversight. They may reflect OMB's current policy deliberations, assumptions about program needs, and even future economic assumptions. As circumstances change, OMB's judgment about such considerations may also change, necessitating a reapportionment.

12.    If, for example, funds for several agency programs are each given a category B apportionment that lists a particular dollar amounts for each program, that reflects the Administration's current view on what those programs may need in the future. But if a significant economic, foreign, or other policy shift occurs, the funds apportioned for those programs may need to change. One program might then have its apportionment reduced, while another program's apportionment would be increased. As long as the agency has not expended the funds for a program, those funds can be reapportioned for other purposes, within the scope of the appropriation.

13.    In 2022, OMB began operating a publicly available automated apportionment reporting system in accordance with section 204 of division E of the Consolidated Appropriations Act, 2022 (Public Law 117-103). The system included each document apportioning an appropriation beginning in fiscal year 2022, including any associated footnotes (in a format that qualified each such document as an Open Government Data Asset) and a written explanation stating the rationale of any footnotes for apportioned amounts. The reporting requirements made OMB's administration of apportionments more difficult.

OMB believed it was prudent to promulgate apportionment documents omitting key information that would assist OMB and agencies in guiding allocations of resources throughout the funding process.

14.    To provide a more specific example, OMB has, in the past, apportioned the Department of Energy's funds for the Title 17 loan guarantee program as category B in manner that included estimated credit subsidy amounts for the loans obligated by the agency during that fiscal year. The category B descriptions included identifying references for the individual loan borrowers, and the category B apportionments reflected provisional financial commitments subject to ongoing review and potential re-apportionment. Following the requirement to publish apportionments, OMB had to change its process to protect sensitive information about who would receive Government funding in advance of public announcements, and only included such information after the funds had been obligated and a public announcement had been made. An example of such an apportionment is attached as Exhibit A.

15.    In another example, OMB apportioned funds with a footnote that detailed OMB's preliminary understanding of an agency's financial controls, indicating ongoing analysis subject to future verification. Following the publication requirement, OMB was reluctant to include such a footnote due to the deliberative nature of the facts surrounding the apportionment, which has impeded OMB's ability to most efficiently provide direction to and receive information from agencies. The apportionment itself can be part of a larger deliberative process and viewing these as stand-alone documents without additional context could reveal information about the Executive Branch's internal planning and strategy.

16.    Apportionments are not fixed in place once signed. They are part of an iterative, internal Executive branch decision-making process that involves ongoing conversations and instructions to the agencies to ensure that apportionments are updated to reflect current

realities and future estimates. Apportionments are an internal Executive branch fiscal control mechanism designed to ensure that funds are being spent in accordance with the law and policy. By their nature, they are estimates of the amounts of budgetary resources that OMB anticipates that programs will likely require in the future. But they must and do change throughout the fiscal year. It is only when the agency, not OMB, takes actions to obligate or expend the funds that any entity outside the Executive branch, is affected. After appropriations Acts are enacted, apportionment of these appropriated funds is one of the first steps in the process before a program or activity can be carried out – it is not the last. Following an apportionment, OMB continues to monitor agency funding, and works with agencies to determine the best use of appropriated funds. It may advise agencies regarding the President's priorities for the use of the funds or on sensitive matters touching on national security or foreign policy.

17. For example, a recent apportionment for the Department of the Interior included a footnote that stated, "Of the amounts apportioned, funding for the Bureau of Reclamation's proposed 'Sustainable Water for Agriculture Program' may be obligated ten days after the Bureau of Reclamation provides a report to OMB on how it will coordinate with USDA on implementation of such program to avoid duplication of programs.  [Rationale: An agency spend plan or other documentation is necessary to better understand how the agency intends to obligate some or all of the apportioned funds.]" In another case, an apportionment for the Department of Homeland Security included a footnote that provided, "…these funds are apportioned with the understanding that DHS will submit written reports to OMB on ongoing projects within 10 business days of the close of each quarter, detailing the: DHS component(s) supported; project purpose; desired project outcome; project timeline; number of AI Corps members

working on the project; and data on outcome measures (e.g., number of work hours saved; number/value of contracts reduced). [Rationale: OMB requests additional information on programmatic spending for some or all of the apportioned funds.]" These apportionments demonstrate the iterative nature of OMB's apportionment decisions because additional engagement was necessary with the agencies before the funding could be provided for the purposes in question. These apportionments are included as Exhibit B. Apportionments and footnotes may contain deliberative information that, while not classified, could nevertheless reveal sensitive information about national security, foreign affairs, the industrial base, critical infrastructure, and the like. An apportionment may indicate predecisional details regarding the timing for an infrastructure project, or may indicate the recipient of foreign aid. Apportionments and footnotes can also contain predecisional information that can move markets or create financial disruption, such as apportionments for funding intended to assist an industry.

18.     The requirement in the Consolidated Appropriations Act, 2022, to disclose OMB's apportionments within 48 hours of signing, and to provide a rationale for any footnotes, caused OMB to have to amend the manner in which it apportioned funds that has implications for OMB's ability to use the full scope of its apportionment authority. Even if the OMB apportioning "official considers [it] appropriate" under 31 U.S.C. § 1512(b)(2) to apportion funds with legally binding specific instructions in a Category B apportionment line or a footnote, following the requirement to publish those instructions may mean that in fact, the OMB apportioning official cannot apportion in the manner deemed appropriate. In some instances, it has forced OMB to choose between compromising confidentiality and using its apportionment authority as Congress intended.

17.    On March 29, 2025, OMB Director Russell Vought informed the House and Senate

Committees on Appropriations that OMB would no longer operate and maintain the

automated apportionment system. Those letters are attached as Exhibit C.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct. Executed in Washington, D.C., on

the 30th day of April, 2025.

Kelly Kinneen

# EXHIBIT A

## SF 132 APPORTIONMENT SCHEDULE

FY 2024 Apportionment
Funds provided by PL 117-169

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------|--------------|
| | | **Department of Energy** | | |
| | | **Bureau: Energy Programs** | | |
| | | **Account: Title 17 Innovative Technology Loan Guarantee Program** | | |
| | | **TAFS: 089-2022-2026-0208** | | |
| IterNo | 9 | Last Approved Apportionment: 2024-07-05 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| | | **Budgetary resources** | | |
| 1000 | MA | Mandatory Actual - Unobligated balance brought forward, Oct 1 - Direct | 327,210,687 | |
| 1000 | MA4 | Mandatory Actual - Unobligated balance brought forward, Oct 1 - Other | 8,222,314,951 | B4 |
| 1010 | | Unob Bal: Transferred to other accounts | -17,200,000 | B5 |
| 1021 | | Unob Bal: Recov of prior year unpaid obligations | 121,240 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 1,878,760 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **8,534,325,638** | B2 |
| | | **Application of budgetary resources** | | |
| | | **Category B Projects** | | |
| 6011 | | IRA - Administrative Expenses - Section 50141 (sec. 1703 of EPA) | 82,632,915 | |
| 6012 | | IRA - Administrative Expenses - Section 50144 (sec. 1706 of EPA) | 246,577,772 | |
| 6015 | | Subsidy on Loan 1412 - LongPath Development Company LLC | 10,519,255 | |
| 6016 | | Subsidy on Loan EIR0007 - Holtec Palisades LLC | 18,056,245 | |
| 6017 | | Subsidy on Loan 1365 - Plug Power Energy Loan Borrower LLC | 29,178,402 | |
| 6018 | | Subsidy on Loan 1448 - Bioforge Marshall LLC | 2,063,376 | |
| 6019 | | Subsidy on Loan EIR0029 - Clean Flexible Energy LLC | 74,327,590 | |
| 6020 | | Subsidy on Loan EIR0017 | 43,250,951 | |
| | | **Category C, Apportioned for future fiscal years** | | |
| 6170 | | Apportioned in FY 2025 | 8,027,719,132 | |
| **6190** | | **Total budgetary resources available** | **8,534,325,638** | |

Submitted _____ Date _____

SF 132 APPORTIONMENT SCHEDULE

FY 2024 Apportionment
Funds provided by PL 117-169

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|------------|--------------|
| | | | | |

See Approval_Info sheet for OMB approval information

FY 2024 Apportionment
OMB Footnotes


**<u>Footnotes for Apportioned Amounts</u>**


**<u>Footnotes for Budgetary Resources</u>**

**B2**  Pursuant to the authority in OMB Circular A-11 section 120.21 one or more lines on the apportionment
(including lines above line 1920) may have been rounded up and as such those rounded lines will not match the
actuals reported on the SF-133. DOE will ensure that its funds control system will only allot actuals.

**B4**  $ 7,200,000.00 Shifting to Admin for OIG 0.2% transfer
$ 10,000,000.00 Shifting to Admin for OIG 0.2% transfer
$3,465,114,950.26 Subsidy for Section 50141
$4,740,000,000.00 Subsidy for Section 50144
$ 0.74 Rounding
-----------------------
$8,222,314,951.00

**B5**  Reflects appropriation transfer of two-tenths of one percent to the Office of the Inspector General from
unobligated balances of amounts made available under sections 50141 and 50144 of Public Law 117-169, in
accordance with Public Law 118-42, Division D, Sec. 307(b), as follows:
-$ 7,200,000 Section 50141
-$10,000,000 Section 50144
-----------------
$ 17,200,000


End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



| | |
|---|---|
| **Mark Affixed By:** | Kelly Colyar |
| | Acting Deputy Associate Director for Energy, Science and Water Programs |
| **Signed On:** | 2024-09-10 03:51 PM |
| **File Name:** | FY24_DOE_089-2226-0208_09ReApp_v1_Updated.xlsx |
| **Sent By:** | John Dick |
| **Sent On:** | 2024-09-10 04:20 PM |
| **TAF(s) Included:** | 089-2022-2026-0208 (Title 17 Innovative Technology Loan Guarantee Program) |

# EXHIBIT B

**Exhibit B**

SF 132 APPORTIONMENT SCHEDULE

FY 2025 Apportionment
Funds Provided by N\A - Carryover

| Line No | Line Split | Line Description | OMB Action |
|---|---|---|---|
| | | **Department of the Interior** | |
| | | **Bureau: Bureau of Reclamation** | |
| | | **Account: Water and Related Resources** | |
| | | **TAFS: 014-2022-2026-0680** | |
| IterNo | 2 | Last Approved Apportionment: 2024-09-06 | |
| RptCat | NO | Reporting Categories | |
| AdjAut | YES | Adjustment Authority provided | |
| | | **Budgetary resources** | |
| 1000 | E43 | Estimated - Estimated - Unob Bal: Brought forward, October 1 - Supplemental - Direct (Mand) Inflation Reduction Act, 2022, P. L. 117-169 | 2,957,265,248 |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 800,000 |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,958,065,248** |
| | | **Application of budgetary resources** | |
| | | **Category B Projects** | |
| 6011 | | All Projects | 800,000 |
| 6012 | | SEC. 50233 Drought Mitigation in the Reclamation States | 2,944,778,679 |
| 6013 | | Sec 80004 Emergency Drought Relief for Tribes | 12,486,569 |
| **6190** | | **Total budgetary resources available** | **2,958,065,248** |

Submitted _____   Date _____

See Approval_Info sheet for OMB approval information

FY 2025 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A1**  To the extent authorized by law, this estimated amount is apportioned for the current fiscal year. This estimated amount may be increased or decreased without further action by OMB if the actual indefinite appropriations; actual reimbursements earned, including reimbursements and offsetting collections from non-Federal/Federal sources; actual recoveries of prior year obligations; and actual contributions from non-Federal/Federal sources differ from the estimate. If the actual unobligated balance (excluding reimbursable funding) differs by more than 20 percent from the estimate in this apportionment, the agency must request a reapportionment of the account. Transfers of funds authorized by law (except for Section 102 transfers and transfers from the Wildfire Suppression Operations Reserve fund), to or from any of the accounts listed, may be processed without further action by OMB. Any of these funds that are not needed for this purpose may be used for current year obligations without further action by OMB. [Rationale: Footnote signifies that this TAFS has received or may receive an automatic apportionment.]

**A5**  Of the amounts apportioned, funding for the Bureau of Reclamation's proposed "Sustainable Water for Agriculture Program" may be obligated ten days after the Bureau of Reclamation provides a report to OMB on how it will coordinate with USDA on implementation of such program to avoid duplication of programs. [Rationale: An agency spend plan or other documentation is necessary to better understand how the agency intends to obligate some or all of the apportioned funds.]

**Footnotes for Budgetary Resources**

End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



**Mark Affixed By:**      John Pasquantino
                        Deputy Associate Director for Energy, Science and Water Programs

**Signed On:**          2025-01-16 12:30 PM
**File Name:**          FY2025_DOI_BURREC_TAFS014-2022-2026-0680_IterNo_2_2025-01-15_16.29pm_Updated OMB Edit.xlsx
**Sent By:**            Sherron White
**Sent On:**            2025-01-17 09:55 AM

**TAF(s) Included:**    014-2022-2026-0680 (Water and Related Resources)

## SF 132 APPORTIONMENT SCHEDULE

FY 2025 Apportionment
Funds Provided by Public Law N/A

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of Homeland Security** | | |
| | | **Bureau: Management Directorate** | | |
| | | **Account: Operations and Support, MD** | | |
| | | **Treasury Account: Operations and Support** | | |
| | | **TAFS: 070-2025-2025-0112** | | |
| | | | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| | | | | |
| | | **Budgetary resources** | | |
| 1100 | | BA: Disc: Appropriation | 1,722,204,000 | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | -1,340,046,932 | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 390,428,577 | |
| 1920 | | **Total budgetary resources avail (disc. and mand.)** | **772,585,645** | |
| | | | | |
| | | **Application of budgetary resources** | | |
| 6001 | | Category A -- 1st quarter | 379,935,384 | |
| 6002 | | Category A -- 2nd quarter | | |
| 6003 | | Category A -- 3rd quarter | | |
| 6004 | | Category A -- 4th quarter | | |
| | | **Category B Projects** | | |
| 6011 | | General Reimbursable Authority | 390,428,577 | |
| 6012 | | AI Corps | 2,221,684 | |
| 6190 | | **Total budgetary resources available** | **772,585,645** | A2 |

Submitted: Ann M.Tipton, Ph.D., PMCEd, CDFM
Budget Director, Office of the Chief Financial Officer
Date:10.28.2024

FY 2025 Apportionment
OMB Footnotes


**<u>Footnotes for Apportioned Amounts</u>**

**A2**  Of the amounts apportioned, only the amount on line 6012 may be obligated in support of DHS's Artificial Intelligence (AI) Corps or any successor entity, including for no more than 50 positions. Further, these funds are apportioned with the understanding that DHS will submit written reports to OMB on ongoing projects within 10 business days of the close of each quarter, detailing the: DHS component(s) supported; project purpose; desired project outcome; project timeline; number of AI Corps members working on the project; and data on outcome measures (e.g., number of work hours saved; number/value of contracts reduced). [Rationale: OMB requests additional information on programmatic spending for some or all of the apportioned funds.]


**<u>Footnotes for Budgetary Resources</u>**


End of File

**OMB Approved this apportionment request using
the web-based apportionment system**



**Mark Affixed By:**    Andrew Abrams
                         Deputy Asso Director for Transportation, Homeland, Justice and Service Programs

**Signed On:**    2024-11-01 05:49 PM
**File Name:**    FY_2025_DHS_MGMT_070_25_0112.xlsx
**Sent By:**    Andrew Abrams
**Sent On:**    2024-11-01 05:49 PM

**TAF(s) Included:**    070-2025-2025-0112 (Operations and Support)

# EXHIBIT C



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Susan Collins
Chair
Committee on Appropriations
United States Senate
Washington, D.C. 20510

Dear Chair Collins:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Rosa DeLauro
Ranking Member
Committee on Appropriations
U.S. House of Representatives
Washington, D.C. 20515

Dear Ranking Member DeLauro:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending.  Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Patty Murray
Vice Chair
Committee on Appropriations
United States Senate
Washington, D.C. 20510

Dear Vice Chair Murray:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director



**EXECUTIVE OFFICE OF THE PRESIDENT**
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C. 20503

**THE DIRECTOR**

March 29, 2025

The Honorable Tom Cole
Chairman
Committee on Appropriations
U.S. House of Representatives
Washington, D.C. 20515

Dear Chairman Cole:

I write to inform you that the Office of Management and Budget will no longer operate and maintain the publicly available automated system to which apportionments are posted envisioned in section 204 of division E of the Consolidated Appropriations Act, 2023.

OMB has determined that it can no longer operate and maintain this system because it requires the disclosure of sensitive, predecisional, and deliberative information. By their nature, apportionments and footnotes contain predecisional and deliberative information because they are interim decisions based on current circumstances and needs, and may be (and are) frequently changed as those circumstances change.

Such disclosures have a chilling effect on the deliberations within the Executive Branch. Indeed, these disclosure provisions have already adversely impacted the candor contained in OMB's communications with agencies and have undermined OMB's effectiveness in supervising agency spending. Moreover, apportionments may contain sensitive information, the automatic public disclosure of which may pose a danger to national security and foreign policy.

I value OMB's longstanding relationship with the Committee and I am committed to working with you to provide information on apportionments that may be of interest to the Committee.

Sincerely,

Russell T. Vought
Director