**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PROTECT DEMOCRACY PROJECT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-01111-EGS |
| | ) |
| OFFICE OF MANAGEMENT AND | ) |
| BUDGET, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**<u>DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT</u>**

**INTRODUCTION**

Protect Democracy's request for preliminary injunction and partial summary judgment fails. First, Protect Democracy has failed to establish an informational injury because its claimed harm—its inability to operate an apportionment reporting website—is not the type of harm Congress sought to redress when it enacted the 2022 and 2023 Acts. Second, Protect Democracy cannot enforce unconstitutional statutory provisions that require the Executive's disclosure of predecisional, deliberative information. The apportionment information Protect Democracy seeks contains OMB's interim allocation of budgetary resources based on evolving policy considerations. Forcing OMB's disclosure of such deliberations constitutes an improper infringement on Executive power. Finally, because Protect Democracy seeks to redress an economic harm, it cannot establish irreparable injury. The Court should, therefore, deny Protect Democracy's motion in its entirety.

**ARGUMENT**

I.    **Protect Democracy Has Failed To Establish Injury In Fact.**

First, Protect Democracy claims that its inability to access the apportionment database constitutes an injury in fact as a matter of law because the 2022 and 2023 Acts require disclosure of apportionment information. Reply at 4. Protect Democracy improperly relies on a case involving a statute in which Congress expressly provided a private cause of action to redress non-disclosure of information to the public. *See Friends of Animals v. Jewell*, 824 F.3d 1033, 1040 (D.C. Cir. 2016) (analyzing standing under the Endangered Species Act, which contains a citizens' suit provision). While the plaintiff in that case still had to show an injury-in-fact to establish standing, in passing the statute, Congress explicitly contemplated private redress for an agency's non-compliance with statutory provisions and created an informational right.

1

"Deprivation of this right to information that should be disclosed under [the statute], therefore, inflicts an injury in fact when the plaintiff fails to obtain information which must be publicly disclosed pursuant to the statute." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, No. 22-CV-3281 (CRC), 2023 WL 6141887, at *5 (D.D.C. Sept. 20, 2023). In contrast here, the 2022 and 2023 Acts do not provide a private cause of action for OMB's non-compliance with disclosure provisions. As a result, Protect Democracy cannot rely on a right to information and a deprivation of that right for its standing. Instead, Protect Democracy is required to show that it has suffered a concrete and particularized injury stemming from OMB's non-disclosure of apportionment documents.

Second, Protect Democracy argues that it is "suffering economic injury due to the lost value of the significant investments [it] made in creating and maintaining its website." Reply at 7. As Protect Democracy recognizes, in order to establish a sufficiently concrete and particularized informational injury, a plaintiff must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity ("EPIC")*, 878 F.3d 371, 378 (D.C. Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)); *see also* Reply at 4 (citing *Air All. Houston v. U.S. Chem. & Safety Hazard Investigation Bd.*, 365 F. Supp. 3d 118, 124 (D.D.C. 2019) (applying the *EPIC* test) and *Ethyl Corp. v. E.P.A.*, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (concluding that a plaintiff's claimed injury was within a regulation's "zone of interest" because the plaintiff was a manufacturer who operated under the agency's regulatory framework and would be affected by a modification to that framework)).

Here, Protect Democracy argues that it satisfies that second prong of the *EPIC* test because Defendants' actions have caused a "severe diminution of value of Protect Democracy's investments." Reply at 8. However, Congress did not pass the 2022 and 2023 Acts to create a marketplace for companies purporting to analyze government documents, or to protect those companies' investments. The Acts were enacted to enable Congress and the public's oversight of the Executive's spending decisions. Protect Democracy cannot base an informational injury on its decision to establish a business around Congressional oversight. This is not the type of harm Congress sought to prevent by requiring disclosure, and it is not sufficient to establish an informational injury.

## II.     The 2022 And 2023 Act Are Unconstitutional.

Protect Democracy claims that "[j]ust as Congress conditioned the use of appropriations on the fund being apportioned, Congress has now conditioned the apportionment process on apportionments being made public." Reply at 11. But once Congress appropriates funds to the Executive Branch, "its participation ends" and "can thereafter control the execution of its enactment only indirectly—by passing new legislation." *Bowsher v. Synar*, 478 U.S. 714, 733–34 (1986). Congress cannot maintain an "active role" in its "supervision" of Executive officers. *Id.* at 722. Doing so amounts to an unconstitutional impairment of Executive functions. *See Mistretta v. United States*, 488 U.S. 361, 397–08 (1989). The 2022 and 2023 Acts, therefore, call for unconstitutional infringement upon Executive power.

Moreover, Congress cannot, as Protect Democracy suggests, Reply at 15, legislate away privileges that are grounded in the separation of powers. *See Comm. on Oversight & Gov't Reform v. Holder*, No. CV 12-1332 (ABJ), 2014 WL 12662665, at *1 (D.D.C. Aug. 20, 2014), *modified*, No. CV 12-1332 (ABJ), 2014 WL 12662666 (D.D.C. Sept. 9, 2014) (noting that the

3

deliberative process privilege as a constitutional doctrine is rooted in separation of powers). The common law deliberative process privilege protects the Executive from being "forced to operate in a fishbowl." *EPA v. Mink*, 410 U.S. 73, 87 (1973); *see Comm. on Oversight & Gov't Reform, United States House of Representatives v. Sessions*, 344 F. Supp. 3d 1, 15 (D.D.C. 2018) (noting that "the executive branch could invoke the deliberative process prong of the executive privilege to shield records from production to the legislature"). The privilege shields predecisional and deliberative documents that are "part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (quotation marks omitted).

Here, the apportionment documents are predecisional and deliberative because—unlike Protect Democracy suggests, Reply at 11—they are merely OMB's interim allocation of funds and are subject to ongoing policy considerations with agencies within the Executive Branch. Apportionments reflect OMB's initial distribution of appropriated funds based on the Executive's assessment of priorities and goals. Upon issuance, OMB engages with agencies to understand their needs and circumstances, as well as evolving policy goals and considerations of the President, and OMB adjusts its initial considerations based on changing circumstances and desired policy outcomes. Disclosure of apportionment documents not only forces the Executive to disclose its evolving policy considerations, but also reveals the deliberations with subordinate agency officials to effectuate desired agenda outcomes. While Congress and the public may be entitled to information regarding how agency funds are ultimately obligated for expenditure, they are not entitled to predecisional and deliberative information that infringes upon the Executive's ability to apportion funds as he "considers appropriate." 31 U.S.C. § 1512(b)(2).

### III.  Protect Democracy Cannot Establish Irreparable Harm.

Protect Democracy concedes that it seeks to redress economic harm.  Reply at 17.  The D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  As a general matter, "economic loss does not, in and of itself, constitute irreparable harm."  *Nat'l Mining Ass'n v. Jackson*, 768 F.Supp.2d 34, 50 (D.D.C. 2011) (citing *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Only "economic loss that threatens the survival of the movant's business can amount to irreparable harm."  *Jackson*, 768 F. Supp. 2d at 50 (citing *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005), *supplemented*, No. 05CV2027 (RBW), 2005 WL 3312962 (D.D.C. Dec. 7, 2005)).

Protect Democracy claims that it "has invested substantial time, resources, and money into building, maintaining, and operating OpenOMB."  Ford Supp. Decl. ¶ 1.  Protect Democracy states that it "pays approximately $175 per month to host OpenOMB on Amazon Web Services. Since Defendants stopped disclosing apportionments, Protect Democracy has incurred these costs without enjoying the core benefit of OpenOMB."  *Id*. ¶ 2b.  Protect Democracy's claimed injuries are the quintessential types of economic losses that preclude injunctive relief.  The circumstances in this case are not comparable to *Nat'l Lifeline Ass'n v. Fed. Communications Comm'n*, No. 18-1026, 2018 WL 4154794 (D.C. Cir. Aug. 10, 2018).  *See* Reply at 17.  In that case, the court found that the plaintiffs would be irreparably harmed by an FCC order that sought to reduce or eliminate telecommunication services for tribal residents, threatening "vital for day-to-day medical, educational, family care, and other functions."  *Nat'l Lifeline*, 2018 WL 4154794, at *1.  Unlike *National Lifeline*, by its own admission, Protect Democracy has allegedly suffered quantifiable, economic and limited losses.  Protect Democracy

5

has not claimed that the survival of its core business is at stake—it has merely alleged that its OpenOMB website is currently not functional and that Protect Democracy as a business is accruing losses. These economic injuries are not irreparable. As a result, Protect Democracy is not entitled to injunctive relief.

Additionally, it is clear that Protect Democracy will not suffer any irreparable harm in the absence of a preliminary injunction. Protect Democracy claims "[e]very day that goes by without disclosure of apportionments is a day that [it] cannot carry out its mission of scrutinizing and informing others on whether and how the President is using apportionments." *See* Reply at 16. While Protect Democracy generally claims that it has been impeded from reporting on apportionments, it has not identified any impending events that would necessitate preliminary relief at this juncture. Protect Democracy's overarching demand for all apportionment documents is not sufficiently tailored to address any harm that Protect Democracy may be enduring at this instant. Protect Democracy's failure to identify any imminent, irreparable harm is dispositive. *Wis. Gas Co.* 758 F.2d at 674.

## CONCLUSION

For all the foregoing reasons, and the reasons set forth in Defendants' Opposition, the Court should deny Protect Democracy's motion for a preliminary injunction and for partial summary judgment.

Dated: May 5, 2025

                Respectfully submitted,

                YAAKOV M. ROTH
                Acting Assistant Attorney General

                MARCIA BERMAN
                Assistant Branch Director

/s/ *Heidy L. Gonzalez*
HEIDY L. GONZALEZ
(FL Bar #1025003)
CARMEN M. BANERJEE
(D.C. Bar #497678)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Tel: (202) 598-7409
Email: heidy.gonzalez@usdoj.gov

*Attorneys for Defendants*