**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

PROTECT DEMOCRACY PROJECT,

                     Plaintiff,

     v.

U.S. OFFICE OF MANAGEMENT & BUDGET
et al.,

                    Defendants.

---

Case No. 1:25-cv-01111

## PROTECT DEMOCRACY'S SUPPLEMENTAL BRIEF

Pursuant to this Court's June 1, 2025 Minute Order, Plaintiff Protect Democracy hereby provides this supplemental brief addressing (1) why Protect Democracy is entitled to the types of relief sought in the attached Proposed Order, (2) whether the Court must perform the balancing test for permanent injunctive relief prior to granting a permanent injunction as part of the final judgment on the merits, and (3) if the Court grants partial summary judgment to Protect Democracy, how the Court should proceed on entering a final, appealable judgment given that Protect Democracy has remaining claims before the Court. Protect Democracy has attached a Proposed Order to this supplemental brief.

As shown in the attached Proposed Order, Protect Democracy seeks an order that vacates and sets aside the challenged unlawful agency actions in removing the public database (the "Public Apportionments Database") required by the 2022 and 2023 Appropriations Acts, and in ceasing to publicly post apportionment information as required by the 2022 and 2023 Appropriations Acts. Protect Democracy further seeks an order that permanently enjoins

Defendants from taking such unlawful actions in the future, and that declares that Defendants' actions violate the 2022 and 2023 Appropriations Acts.

For the reasons explained below, Protect Democracy is entitled to each form of relief. And as elaborated below, the Court should apply the multi-factor test relevant to permanent injunctions in determining Protect Democracy's entitlement to such relief on Count I.

Finally, Protect Democracy sets forth two options for how the Court could proceed to ensure its order is appealable. Protect Democracy notes that, after further research on this issue following its now-withdrawn June 4 submission, this filing presents different suggestions on this question than the June 4 submission. Specifically, the court may dismiss Protect Democracy's remaining counts as "prudentially moot" to enable entry of a final, appealable judgment, or Defendants may take an interlocutory appeal of the Court's entire order as long as the order contains permanent injunctive relief.

## I.    Background

Protect Democracy brought this case to challenge Defendants' unlawful actions to remove the Public Apportionments Database and to cease publicly posting apportionment information in the manner and on the timeline specified by the 2022 and 2023 Appropriations Acts. Although Protect Democracy's Complaint raised several claims, Protect Democracy moved for relief only on one of its Administrative Procedure Act (APA) claims: that Defendants' actions violate the 2022 and 2023 Appropriations Acts' requirements that the Office of Management and Budget (OMB) implement an "automated system to post," "in a format that qualifies [it] as an Open Government Data Asset," "each document apportioning an appropriation, … including associated footnotes" (together with a "written explanation by the [approving official … stating the rationale for any footnotes for apportioned amounts"), "on a publicly accessible website"

"not later than 2 business days after the date of approval" of the apportionment."[1] *See* Pls.' Br. at 6, ECF No. 18-1; Compl., ECF No. 1.

Protect Democracy has demonstrated that Defendants' actions violate the 2022 and 2023 Appropriations Acts (and thus the APA, as described in Count I), and Protect Democracy should obtain complete relief for this unlawful conduct.

## II.    Protect Democracy Should Receive Each Form of Relief Sought

To remedy the legal violations and provide complete relief, the Court should: (1) vacate and set aside Defendants' actions; (2) permanently enjoin Defendants from taking similar actions in the future; and (3) declare the actions unlawful. Each type of relief is warranted.

### A.  Vacate and Set Aside

First, Protect Democracy seeks an order vacating and setting aside Defendants' unlawful decisions to remove the Public Apportionments Database and to cease publicly posting apportionment information in the manner and on the timeline specified by the 2022 and 2023 Appropriations Acts.

The APA directs reviewing courts to "hold unlawful and set aside agency action … found to be … not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). "[T]o 'set aside' a rule is to vacate it." *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) (quoting *Corner Post, Inc. v. Board of Governors*, 144 S. Ct. 2440, 2463 (2024) (Kavanaugh, J., concurring)). Adhering to this APA mandate, courts in this Circuit have reiterated time and time again that "[t]he ordinary practice is to vacate unlawful agency action." *United Steel v. Mine Safety and Health Administration*, 925 F.3d 1279, 1287 (D.C. Cir. 2019); *see also Anderson v. U.S. Dep't of*

---

[1] Pub. L. No. 117-103, div. E, tit. II, § 204(b)-(c), 136 Stat. 49, 256-57 (2022) (codified at 31 U.S.C. § 1513 note) (2022 Appropriations Act); Pub. L. No. 117-328, div. E, tit. II., § 204, 136 Stat. 4459, 4667 (2022) (codified at 31 U.S.C. § 1513 note) (2023 Appropriations Act).

*Housing and Urban Development*, 731 F. Supp. 3d 19, 44 (D.D.C. 2024) ("Vacatur is the normal remedy under the APA.").

Accordingly, if the Court concludes that Protect Democracy prevails on the merits of its APA claim, the Court must hold unlawful, vacate, and set aside Defendants' actions, which would result in the restoration of the Public Apportionments Database operating in the manner that it did prior to Defendants' unlawful actions, including the posting of any apportionments made in the interim while Defendants ceased publication.

### B. Permanent Injunction

Second, Protect Democracy seeks a permanent injunction prohibiting Defendants in the future from removing the Public Apportionments Database and from ceasing to publicly post all of the apportionment information required to posted in a specific manner and on a specific timeline by the 2022 and 2023 Appropriations Acts.

The Court must consider certain factors before entering a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The multi-factor test for entering a permanent injunction is "essentially the same" as for a preliminary injunction, "with the exception that the plaintiff must show … actual" (rather than likely) success on the merits to obtain permanent relief. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546, n. 12 (1987). Thus, after showing "that it is entitled to prevail on the merits," *Clark v. District of Columbia*, No. 23-cv-1564, 2024 WL 3181440, *7 (D.D.C. June 26, 2024), the plaintiff must show that "(1) [it] suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships shakes out in [its] favor; and (4) the public interest would not be disserved by a permanent injunction." *Mahoney v. United States Capitol Police Bd.*, 734 F. Supp. 3d 114, 132 (D.D.C. 2024) (internal

quotation marks omitted). The final two factors merge when the government is a defendant. *Anatol Zukerman and Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Here, Defendants conceded at oral argument that there are no disputed facts relevant to the merits, and for the reasons Protect Democracy has previously outlined, Protect Democracy should prevail on the merits as a matter of law. Protect Democracy is suffering irreparable injury for the reasons explained in its briefs, and an injunction would also ensure that Defendants do not continue to, or again in the future, harm Protect Democracy in the same way. Moreover, a permanent injunction is needed to ensure that the unlawful actions do not recur. For example, if Defendants in the future removed *some* portion of the Public Apportionment Database required by law, or ceased posting some subset of the information that the 2022 and 2023 Apportionments Acts require to be posted. Defendants have particularly objected to posting their legally binding footnotes online, and a permanent injunction would ensure that Defendants do not in the future post the other required information online without the footnotes. *See* Defs.' Resp. Br. at 5-6, ECF No. 19; Hearing Tr. at 74:7–74:10; *id.* at 83:20–83:23.

Protect Democracy cannot obtain damages or another remedy at law for the violations, and the public interest and balance of equities overwhelmingly favors requiring Defendants to comply with the law and post vital information about their activities.

### C. Declaratory Judgment

Protect Democracy seeks a declaration that Defendants' decisions to remove the Public Apportionments Database and to cease publicly posting information in the manner and on the timeline specified by the 2022 and 2023 Appropriations Acts violate those Acts.

The Declaratory Judgment Act authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Whether to enter a declaratory judgment "rests within the sound discretion of the court." *President v. Vance*, 627 F.2d 353, 365 n.76 (D.C. Cir. 1980). Regardless of the "existence of another adequate remedy," Fed. R. Civ. P. 57, the Court may grant declaratory relief where warranted. It is here.

The D.C. Circuit has enumerated a number of nonexhaustive considerations to guide courts' exercise of discretion, all of which focus "on what matters most: the usefulness of a declaratory judgment, the role of such relief in ending the dispute between the parties, and the incentives for parties' behavior." *Gravity Defyer Med. Tech. Corp. v. Fed. Trade Comm'n*, No. CV 22-1157 (RDM), 2023 WL 2571758, at *5 (D.D.C. Mar. 20, 2023); *see also Printing Packaging & Prod. Workers Union of N. Am. v. Int'l Bhd. of Teamsters*, No. CV 23-1872, 2024 WL 3835353, at *9 (D.D.C. Aug. 15, 2024).

A declaratory judgment here would serve each of these ends. A declaration would serve a useful purpose, because it would both bring clarity to Defendants' obligations under the 2022 and 2023 Appropriations Acts to publicly post apportionment information and resolve whether Defendants have any lawful defense for taking down the Public Apportionments Database (they do not). A declaration also would play a key role in ending the dispute between the parties, and it would incentivize behavior to comply with the law in the future—e.g., it would give authoritative guidance on whether Defendants' refusal to follow the statutory commands is legally justified and, if not, what Defendants must do to comply with the law. In these circumstances, a declaratory judgment is appropriate. *See Printing Packaging*, 2024 WL

3835353, at *9 (finding both a declaratory judgment and permanent injunction warranted to afford full relief).

### III.    Entering an Appealable Order

The Court also requested briefing on how to proceed on entering a final, appealable judgment given that Protect Democracy did not move on all its claims in the Complaint.

Upon further research, Protect Democracy suggests that it may be preferable for the Court to dismiss the remaining counts as "prudentially moot," rather than for Protect Democracy to voluntarily dismiss those counts. The D.C. Circuit has held that "party-initiated dismissals without prejudice are generally insufficient to render final and appealable a prior order disposing of only part of the case." *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1026 (D.C. Cir. 2020) (quotations omitted). Rather, "[i]t is the district court, not the parties, that must control the terms of dismissal so as to prevent manipulation of the courts' jurisdiction." *Id.* Here, if Protect Democracy voluntarily dismissed its other counts, Protect Democracy would not be "hijacking the district court's control over final resolution of the litigation" given that it would be done in consultation with the court, *id.*, but the better course nonetheless may be for the Court rather than Protect Democracy to dismiss the counts.

One way for the court to dismiss the remaining counts would be to deem them "prudentially moot." *Center for Biological Diversity v. Regan*, 729 F. Supp. 3d 37, 50-51 (D.D.C. 2024). As Judge Moss explained, "courts often have the discretion to treat alternative claims, which offer the plaintiff no prospect of obtaining any further relief, as prudentially moot." *Id.* at 52. Prudential mootness "does not concern the Court's power to grant relief, but rather its exercise of discretion in the use of that power," particularly where a plaintiff has already obtained complete relief via another claim. *Id.* at 50 (quotations omitted).

Here, if the Court were to grant Protect Democracy all three forms of relief requested above, Protect Democracy would have obtained complete relief and the remaining counts would offer "no prospect of obtaining any further relief." *Id.* at 52. The Court therefore could dismiss the remaining counts as prudentially moot and enter a final, appealable judgment. However, Protect Democracy respectfully submits that dismissal on prudential mootness grounds would not be warranted if the Court does not grant all three forms of relief set forth in the attached Proposed Order, and particularly the permanent injunctive relief. Protect Democracy's remaining counts, including its claims seeking equitable relief outside the APA, seek a permanent injunction that would provide relief beyond vacating and setting aside Defendants' actions.

If the Court prefers not to dismiss the remaining counts as prudentially moot, another option would be to simply grant judgment on Count I, and Defendants could appeal the order if it includes a permanent injunction. Under 28 U.S.C. § 1292(a)(1), Defendants may appeal any order awarding injunctive relief, and the entire order would be reviewable on appeal. "Although an order granting partial summary judgment is usually considered a nonappealable interlocutory order," where the "order granted an injunction," the Court of Appeals "may consider the entire appeal pursuant to 28 U.S.C. § 1292(a)(1)." *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 445 (D.C. Cir. 2018) (quotations omitted). In other words, "once an order has been deemed appealable under § 1292(a)(1), the entire order, not merely the propriety of injunctive relief, comes within [the Court of Appeals'] scope of review *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 520 n.3 (5th Cir. 2002) (citing *In re Seabulk Offshore, Ltd.,* 158 F.3d 897, 899 n.2 (5th Cir.1998)). To the extent the Court's concern is ensuring that Defendants have appellate recourse from the Court's order, Defendants would have that opportunity as long as the order contains an injunctive component.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should enter either a partial or full judgment that: (1) vacates and sets aside Defendants' actions to remove the Public Apportionments Data and to cease posting the information required to be disclosed by the 2022 and 2023 Consolidated Appropriations Act; (2) permanently enjoins Defendants from taking similar actions in the future; and (3) declares the actions unlawful.

Dated: June 9, 2025

/s/ Daniel F. Jacobson
Daniel F. Jacobson (D.C. Bar # 1016621)
Kyla M. Snow*
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington DC, 20006
(301) 823-1148
dan@jacobsonlawyersgroup.com

* Not admitted in the District of Columbia. Practice limited to matters before U.S. courts. (admitted *pro hac vice*)

*Counsel for Plaintiff Protect Democracy*