**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PROTECT DEMOCRACY PROJECT, | Case No. 1:25-cv-01111 |
| Plaintiff, | |
| v. | |
| U.S. OFFICE OF MANAGEMENT & BUDGET, et al., | |
| Defendants. | |

<u>**PLAINTIFF PROTECT DEMOCRACY'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO ENFORCE**</u>

## INTRODUCTION

Following this Court's entry of final judgment and the D.C. Circuit's emphatic denial of a stay pending appeal, Defendants began posting information on the apportionments they had kept hidden for months. It quickly became apparent why Defendants fought so hard to shield these apportionments from public scrutiny. The data revealed that the Office of Management and Budget (OMB) has been leveraging binding apportionment footnotes in unprecedented ways to prevent agencies from spending funds and to micromanage how agencies can spend those funds.

In particular, it came to light that in more than one hundred instances, OMB has included in its apportionments a footnote that conditions the agency's use of apportioned funds on the contents of an "agreed-upon spend plan," meaning a plan that OMB must approve for how the agency may spend the money. OMB thus incorporated by reference these "agreed-upon spend plans" into the binding footnotes that the 2022 and 2023 Appropriations Act require to be disclosed. And in so doing, OMB has made the contents of the spend plans legal conditions on the agency's use of the funds, meaning OMB has made the spend plans part and parcel of the apportionment.

Yet Defendants have refused to publicly disclose these agreed-upon spend plans. When Protect Democracy Project ("Protect Democracy") and CREW inquired as to the basis for not disclosing the spend plans, Defendants' response was simply to claim (erroneously) that the Biden administration also did not release many comparable spend plans referenced in footnotes. Defendants have pointedly not provided any textual argument why the spend plans need not be disclosed under the Court's injunction and the plain text of the disclosure statutes.

Protect Democracy therefore is left with no choice but to move to enforce the Court's order and injunction. The Court should reject Defendants' attempt to hide details of its

2

apportionment decisions by burying binding, OMB-approved conditions on the use of agency funds in undisclosed documents expressly incorporated into binding footnotes. If such were permitted, Defendants could evade the entire transparency regime by including footnotes that do nothing more than incorporate by reference external documents, with no information provided in the text of the footnotes at all. The apportionment transparency statutes and this Court's order are not so easily circumvented.[1]

## BACKGROUND

### A. Background on Apportionments

Protect Democracy provides a brief overview of OMB apportionments, and footnotes in particular, as relevant to this motion to enforce.

OMB's primary budgetary guidance to federal agencies is its Circular A-11. *See* OMB Circular A-11 (Aug. 2025). Section 120.1 of the Circular defines an apportionment as "an OMB-approved plan to use budgetary resources" that "limits the obligations [an agency] may incur for specified time periods, programs, activities, projects, objects, or any combination thereof." "An apportionment is legally binding, and obligations and expenditures (disbursements that exceed an apportionment are a violation of, and are subject to reporting under, the Antideficiency Act (31 U.S.C. 1517(a)(1), (b))." *Id.* Agencies must submit apportionment requests to OMB, and OMB must make apportionments in response to those requests, within time periods prescribed by the Antideficiency Act. *See* 31 U.S.C. § 1513. OMB typically conveys a final apportionment in an Excel file that includes the amounts apportioned for specific

---

[1] In filing this motion to enforce, Protect Democracy takes no view on whether OMB's deployment of footnotes incorporating the contents of spend plans, and requiring OMB approval of the spend plans, violates 31 U.S.C. §§ 1512-13 of the Antideficiency Act or any other law. This motion is limited to the requirement that OMB disclose these spend plans under the transparency statutes and this Court's order.

purposes, and any conditions that attach to the expenditure of funds. *See* OMB Circular A-11, §
120.15 ("Additional tabs").

Apportionments are often accompanied by footnotes, some of which are categorized as
"A" footnotes. *See id.* ("Footnotes"). "A" footnotes generally impose binding conditions on an
agency's use of apportioned funds. *Id.*; *see also id.* § 120.34. They appear in the "OMB Action"
column of the Application of Budgetary Resources section of an apportionment. *Id.* § 120.15
According to OMB, the conditions provided in "A" footnotes "have legal effect[] and are subject
to the Antideficiency Act." *Id.* § 120.34. The Antideficiency Act, in turn, precludes agencies
from obligating funds that exceed the limits set by an apportionment, with the threat of civil or
criminal penalties. *See* 31 U.S.C. §§ 1517 -19.

Circular A-11 explains that some apportionments contain "attachments," which "may
include Word, PDF, or Excel files with a wide range of information that pertains to the [agency's]
apportionment request, but that is not included in the Excel file containing the request." OMB
Circular A-11, § 120.15. Attachments are "part of the apportionment" and are "subject to the
Antideficiency Act if they are specifically referenced in a footnote in the OMB Action column of
the Application of Budgetary Resources section of the apportionment," that is, in an "A"
footnote. *Id.* § 120.36

## B.  Background on Agency Spend Plans and Apportionments

Over the years, OMB has often referenced agency "spend plans" in its apportionments. A
spend plan is a plan setting forth how the agency intends to use its appropriated funds. Prior to
the current Administration, OMB sometimes referenced spend plans in apportionment footnotes.
However, as described in greater detail below, in the majority of these cases, OMB conditioned
the agency's use of funds only on the submission of a spend plan, not on the contents of the plan,

4

and not on OMB's approval of the plan. In the small number of cases where OMB did condition

spending on the contents of a spend plan, OMB almost always included a disclaimer that the

"details" in the "footnote worksheets" were "not subject to to 31 U.S.C. 1517," the provision of

the Antideficiency Act that legally prohibits agencies from spending funds in excess of OMB's

apportionment and that serves as the basis for criminal liability and administrative penalties for

agency employees. *See* 31 U.S.C. §§ 1517-19.

### C.  This Action and the Court's Injunction

The 2022 and 2023 Appropriations Acts require OMB "to post each document

apportioning an appropriation . . . , including any associated footnotes."[2] On or around March 24,

2025, after complying with that mandate since it was enacted, Defendants suddenly took down

OMB's public apportionments database (located at https://apportionment-public.max.gov/) and

ceased publicly posting apportionment information required by the Acts.

On July 21, 2025, this Court granted Protect Democracy's motion for partial summary

judgment. *See* ECF Nos. 33 (Order), 34 (Op.).[3] The Court entered declaratory and injunctive

relief, ordering in relevant part:

> Defendants shall restore the Public Apportionments Database and make publicly
> available the apportionment information required to be disclosed by the 2022 and
> 2023 Acts, including the apportionment information from the time the database
> was taken offline on or about March 24, 2025, through the time the database is
> restored[.]

Order 2. The Court also ordered:

> Defendants are PERMANENTLY ENJOINED from removing the Public
> Apportionments Database or otherwise ceasing to post apportionment information

---

[2] *See* Pub. L. 117-103, div. E, tit. II, § 204(b)-(c), 136 Stat. 49, 256-57 (2022) (codified at 31 U.S.C. § 1513 note) ("2022 Appropriations Act"); Pub. L. 117-328, div. E, tit. II., § 204, 136 Stat. 4459, 4667 (2022) (codified at 31 U.S.C. § 1513 note) ("2023 Appropriations Act").
[3] In the same Opinion and Order, the Court granted in part and denied in part the motion for partial summary judgment filed by Citizens for Responsibility in Washington (CREW) in the related case, *see* ECF Nos. 32, 33, *CREW v. OMB*, No. 25-cv-1051.

on a publicly available website in the time and manner required by the 2022 and 2023 Acts without statutory authorization.

*Id.*

Although the injunction was scheduled to take effect on July 24 at 10:01 A.M., *see id.*, Defendants obtained a brief administrative stay from the D.C. Circuit while that court considered Defendants' request for a stay of the injunction pending appeal. *See Protect Democracy v. OMB*, No. 25-5267, Admin. Stay Order, Doc. 2127007. On August 9, 2025, the D.C. Circuit denied the motion for a stay pending appeal and dissolved the administrative stay, making this Court's injunction effective on August 15. *See id.*, Doc. 2129438. In a concurring statement, Judge Henderson explained that, on standing, Defendants' argument that Protect Democracy presented only a generalized grievance had "no foothold in precedent or in the record," and that, on the merits, "[t]he Constitution's text, structure and history uniformly cut against declaring the [2022 and 2023 Appropriations Acts] unconstitutional." *Id.* at 9, 19.

### D. Defendants' Posting of Partial Apportionment Information

On the evening of August 15, Defendants began slowly posting certain apportionment information to OMB's public apportionments database at https://apportionment-public.max.gov/. Initially, OMB posted almost only apportionments that pre-dated when the website was taken down (March 24); it posted only a few apportionments made after March 24. After Protect Democracy raised the prospect of moving to enforce and counsel for all parties had subsequent discussions, Defendants agreed that they would post all apportionments (including footnotes) issued since March 24 by the evening of August 17, and would post any rationales for the apportionments over the days that followed.

Once the additional apportionments were posted, it became clear why Defendants had fought so hard to keep them secret. The data revealed OMB's rampant use of footnotes to

6

prevent agencies from spending funds and to enable OMB to control every last dollar that agencies spent. OMB accomplished this through footnotes that limited agencies to obligating funds consistent with the "last agreed upon spending plan" between the agency and OMB. In other words, OMB made the agency's obligation of funds contingent upon the *contents* of the spend plan, and upon OMB's *approval* of the contents of the spend plan. OMB could have sought to shape agencies' use of funds by other means, but by including this footnote, OMB made its control over agency spending legally binding under the Antideficiency Act. Indeed, to further ensure that agencies would not spend the funds unless and until OMB approved how they would be spent, OMB provided in many of the footnotes that "[i]n the absence of an agreed-upon spend plan between [the agency] and OMB, [the agency] may obligate funds . . . only as necessary for" limited purposes, such as "for Federal salary and payroll expenses or payments otherwise required by law." TAFS[4] 012-3510 2024/2025, https://openomb.org/file/11424278.

OMB incorporated spend plans into binding footnotes in this or a similar manner in more than 100 apportionments since the website was taken down in March.[5] In almost none of the apportionments did OMB include the disclaimer used by the prior administration that the details of the attachments were not legally binding under 31 U.S.C. § 1517.

Over the course of 2025, OMB added footnotes incorporating the contents of spend plans in apportionments to virtually every agency, for apportionments large and small. *See, e.g.*, TAFS 012-3510 2024/2025, *supra* ($7.6 billion apportionment for the Special Supplemental Nutrition Program for Women, Infants, and Children program); TAFS 075-1552 /2025, https://openomb.org/file/11424629 ($12.5 billion apportionment for the Temporary Assistance

---

[4] The "TAFS" (Treasury Appropriation Fund Symbol) is a Treasury-assigned code that identifies specific funds.
[5] Alicia Parlapiano *et al.*, *In Budget Logs It Tried to Hide, White House Wrests More Control Over Spending*, N.Y. Times, Aug. 29, 2025, https://www.nytimes.com/2025/08/29/upshot/trump-congress-federal-budget.html.

for Needy Families program); TAFS 091-0900 /2025, https://openomb.org/file/11435289 ($10.9 million apportionment for the Department of Education's Disadvantaged account); TAFS 075-1502 /2025, https://openomb.org/file/11423498 ($4 billion apportionment for the Department of Health and Human Service's (HHS) Low Income Energy Assistance Program); TAFS 019-0113 /2025, https://openomb.org/file/11455480 ($7.2 billion apportionment for Department of State Diplomatic Programs); TAFS 016-0181 2024/2027, https://openomb.org/file/11437343 ($123 million apportionment for Department of Labor's Office of Job Corps); TAFS 016-0175 2025/2026, https://openomb.org/file/11444842#tafs_11444842--016-0175-2025-2026--2--2025 ($400 million apportionment for Department of Labor Community Service Employment for Older Americans); TAFS 012-1500 /2025, https://openomb.org/file/11451799 ($7 million apportionment for Department of Agriculture Research and Education Activities); TAFS 014-1109 /X, https://openomb.org/file/11447277 ($473 million apportionment for Department of Interior Management of Lands and Resources).

Despite conditioning agencies' use of appropriated funds on the contents of spend plans that OMB incorporated into binding "A" footnotes, OMB has not included any agreed-upon spend plans on its public apportionments website.

Protect Democracy brought this failure to post the spend plans to Defendants' attention and inquired whether and when Defendants would post the spend plans online. Protect Democracy explained the legal reasons why the spend plans must be disclosed under the Court's order and the text of the 2022 and 2023 Appropriations Acts.

In response, Defendants offered no substantive explanation why the spend plans need not be legally disclosed. Instead, their response was essentially that spend plans were referenced in

footnotes in the Biden administration without being disclosed. Defendants provided a list of purportedly comparable examples of footnotes during the prior administration, but as explained below, those apportionments were almost all different from the ones that Defendants have employed.

## LEGAL STANDARD

"[F]ederal courts are not reduced to issuing injunctions . . . and hoping for compliance." *Hutto v. Finney*, 437 U.S. 678, 690 (1978). "Once issued, an injunction may be enforced." *Id.* "A court's powers to enforce its own injunction by issuing additional orders is broad." *Kifafi v. Hilton Hotels Ret. Plan*, 79 F. Supp. 3d 93, 100 (D.D.C. 2015) (quotation marks omitted).

## ARGUMENT

### I.    Spend Plans Made Binding in Footnotes Must Be Disclosed

The Court's injunction requires Defendants to "make publicly available the apportionment information required to be disclosed by the 2022 and 2023 Acts." Order 2. The 2022 and 2023 Acts, in turn, mandate that OMB post "each document apportioning an appropriation . . . including any associated footnotes." *See* 136 Stat. 256-57; 136 Stat. 4667. Defendants have not complied with this mandate, because they have not disclosed the spend plans whose contents OMB made binding conditions on the use of apportioned funds by incorporating the spend plans into an "A" footnote.[6]

These spend plans must be disclosed because, by incorporating them by reference into binding footnotes, OMB has made these spend plans part of the apportionment. The legal principle of incorporation of reference is black-letter law: the "secondary document" incorporated by reference becomes "part of [the] primary document." Black's Law Dictionary,

---

[6] To be clear, Protect Democracy does not argue that spend plans that are not legally binding on the use of apportioned funds must be disclosed.

Incorporation by Reference (12th ed. 2024). That is, "[w]here a writing refers to another document, that other document . . . becomes constructively a part of the writing, and in that respect the two form a single instrument." 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 2008). In other words, "[t]he incorporated matter is to be interpreted as part of the writing." *Id.* Here, the relevant footnotes incorporate by reference the contents of the agreed-upon spend plans, and thus the spend plans are "part of" the footnotes that must be disclosed. *Id.*

Beyond these principles of incorporation by reference, the contents of the agreed-upon spend plans are part of the apportionments because the footnotes make them binding terms of the apportionment. OMB itself recognizes in Circular A-11 that external documents can be "part of the apportionment" where they are made binding components of the apportionment—by being "specifically referenced in a footnote." OMB Circular A-11, § 120.36. OMB states that "footnotes *and additional tabs/attachments* become part of the apportionment," and are "subject to the Antideficiency Act," "if they are specifically referenced in a footnote in the OMB Action column of the Application of Budgetary Resources section of the apportionment." *Id.* (emphasis added).

The spend plans here are such attachments or their functional equivalent. OMB explains that "[a]ttachments may include Word, PDF, or Excel files with a wide range of information that pertains to the apportionment request, but that is not included in the Excel file containing the request." OMB Circular A-11, § 120.15. The agreed-upon spend plans are Word or PDF files not included in the apportionment Excel files but certainly "pertain[] to the apportionment request." They go much further—they impose *binding, OMB-required conditions* on agencies' use of appropriated funds. Whether the spend plans are literally appended to OMB's apportionment

approval package is immaterial. OMB's definition of attachments does not require that, and in any event, it does not matter whether the spend plans are labeled attachment or something different. The key point is that OMB chose to make the external documents binding on agencies by "specifically referenc[ing]" them in "A" footnotes, thereby making them "part of the apportionment." *Id.* § 120.36.

That conclusion also follows directly from OMB's definition of an "apportionment." "An apportionment is an OMB-approved plan to use budgetary resources" that "limits the obligations [an agency] may incur for specified time periods, programs, activities, projects, objects, or any combination thereof." *Id.* § 120.1. The spend plans are, quite literally, "OMB-approved plan[s] to use budgetary resources" that "limit" the "programs, activities, projects, [or] objects" for which an agency may spend the appropriated funds. The spend plans are part of—and inseparable from—the broader "OMB-approved plan" that is the entire apportionment.

Any other conclusion would allow OMB to evade the statutes' disclosure requirements by incorporating by reference into a footnote an external document with binding conditions, rather than listing those conditions directly in the footnote. For instance, OMB could have a legally binding footnote that simply provides "See Document A for Binding Conditions." Under Defendants' theory, they would not need to disclose Document A because its contents are not spelled out in the footnote itself. Such a reading of the apportionment-disclosure statutes would violate the statutes' text and their undisputed purpose to provide transparency on the conditions that OMB is placing on agencies. It would also contravene the legal principle that parties may not utilize incorporation by reference to avoid the legal consequences that would come with including the incorporated materials directly in a document. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine

provides that if a plaintiff mentions a document in his complaint," the court may consider the document on a motion to dismiss to "prevent[] a plaintiff from evading dismissal . . . simply by failing to attach [the document] to his complaint." (citations omitted)); *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) (prohibiting incorporation by reference that could be "used to evade word limits").

Finally, even if the spend plans were somehow not considered part of the apportionment files that OMB transmits upon approving an apportionment, the plans would still be subject to disclosure under the 2022 and 2023 Appropriations Act because they would themselves be "document[s] apportioning an appropriation." 136 Stat. 256-57; 236 Stat. 4667. The spend plans are "documents" and they meet the definition of an "apportionment" because they are "OMB-approved plan[s] to use budgetary resources" by an agency. OMB Circular § 120.1.

In short, where OMB specifically references "agreed-upon spend plans" in binding footnotes, and makes agencies' use of apportioned funds conditioned on the contents of those spend plans, the spend plans must be disclosed under the 2022 and 2023 Appropriations Acts.

## II. References to Spend Plans by Prior Administrations Do Not Relieve Defendants of Their Legal Duties

As described, it appears that Defendants main argument against disclosure of the spend plans will be that prior administrations, including the Biden administration, also referenced footnotes in apportionment footnotes. Whether that is true is legally irrelevant. The question is whether the 2022 and 2023 Appropriations Acts, as enforced through this Court's order, require Defendants to disclose the contents of the agreed-upon spend plans because they are legally part of the footnotes and apportionments. Finger pointing is not a legal defense.

In any event, the footnotes that referenced spend plans in the prior administration appear to almost all be distinguishable from the footnotes being deployed by OMB now. The footnotes

that conditioned an agency's use of funds on the agency's mere *submission* of a spend plan to OMB are obviously distinguishable. *See, e.g.*, TAFS 019-1078 /X, https://openomb.org/file/11407754 ("[a]mounts apportioned … are available for obligation 10 days after a spend plan is submitted to OMB."). The *contents* of those spend plans were not referenced in the footnote and were not made binding conditions of the apportionment.

As for the few footnotes from the prior administration that did incorporate the contents of spend plans, to the extent that OMB disclaimed that the footnotes were legally binding under the Antideficiency Act—by including a footnote stating that "[d]details on attachments are not subject to 31 USC 1517," and [t]he term 'attachments' includes . . . this footnote worksheet" —those are distinguishable as well. *See, e.g.*, TAFS 075-0943 /X, https://openomb.org/file/11199469. If the spend plans were not legally binding on agencies under 31 U.S.C. § 1517, then they were not "part of" the apportionment in the same way as the spend plans incorporated into the current Administration's footnotes.[7]

Indeed, it bears emphasis that almost none of the footnotes referencing spend plans in the current Administration appear to include this or a similar disclaimer, meaning OMB clearly intended to make the contents of the agreed-upon spend plans binding on agencies. That is how OMB seeks to exert maximal control over whether, and how, agencies spend the money. It is precisely such conditions on spending imposed via apportionments that Congress sought to cast sunlight on through the disclosure requirements of the 2022 and 2023 Appropriations Acts.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff Protect Democracy's Motion to Enforce and enter the attached proposed order.

---

[7] To the extent any footnotes in the prior Administration did make the contents of a spend plan legally binding conditions of the apportionment under the Antideficiency Act, those spend plans must be disclosed just like the spend plans incorporated by the current Administration.

Dated: September 19, 2025          */s/ Daniel F. Jacobson*
                                          Daniel F. Jacobson (D.C. Bar # 1016621)
                                          Kyla M. Snow (D.C. Bar # 90036400)
                                          JACOBSON LAWYERS GROUP PLLC
                                          1629 K Street NW, Suite 300
                                          Washington DC, 20006
                                          (301) 823-1148
                                          dan@jacobsonlawyersgroup.com

                                        *Counsel for Plaintiff Protect Democracy*