**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY<br>AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF MANAGEMENT AND<br>BUDGET, et al.,<br><br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-01051-EGS |
| PROTECT DEMOCRACY PROJECT,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICE OF MANAGEMENT AND<br>BUDGET, et al.,<br><br><br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1: 25-cv-01111-EGS |

**DECLARATION OF DAVID ROWE**

I, David Rowe, make the following declaration based upon my personal knowledge, upon information provided in my official capacity, and upon conclusions I reached based on that knowledge or information:

1. I am the Deputy Assistant Director for Budget of the Office of Management and Budget (OMB) in the Executive Office of the President, in Washington, D.C. I have served in this position since 2010, and have worked at OMB since 1997.

2. I am the second most-senior career official responsible for supporting the OMB

Director in developing all aspects of the President's Budget. Additionally, I advise OMB leadership and Federal agencies on matters of execution relating to OMB's apportionment authority, 31 U.S.C. § 1512 et seq.

3. I am familiar with OMB's efforts to comply with the 2022 and 2023 Consolidated Appropriations Acts, including with OMB's compliance with the Court's orders regarding publication of spend plans.

4. I have reviewed Plaintiffs' Motions for the Court to Set Compliance Deadlines and submit this declaration in support of OMB's opposition to Plaintiffs' Motions.

5. Prior to the Court's order, OMB did not post spend plans on the public apportionment database, even under the previous Administration, nor was there any requirement to do so. Spend plans are not specific to the apportionment process, and are not required by OMB's apportionment authority (31 U.S.C. §§ 1512-13). Rather, spend plans are developed by agencies and serve the purpose of informing the allocation of resources for such agencies, and OMB sometimes requests that an agency provide OMB with a spend plan to assist in fiscal management and oversight. Prior to the Court's order, in these situations, OMB and agencies would routinely develop agreed-upon spend plans bespoke to the subject programs, with varying format and structure based on the needs of each agency.

6. The public apportionment database was never designed to facilitate publication of these agency spend plans bespoke to particular subject programs, and especially not designed to facilitate publication within two days of approval. By contrast, the public apportionment database required by the 2022 and 2023 Consolidated Appropriations Acts was designed to publish apportionment actions using Standard Form 132. Even with a pre-formatted standardized form, that publication process requires a complex,

internal apportionment system of pre-assigned functions and pre-formatted, machine-readable templates that permit agencies and OMB to collaboratively manage federal appropriations and programs.

7. This complex system was specifically designed with one end in mind – expeditious publication of approved apportionment actions within two days of approval. Compliance with that two day timeframe is solely possible because of those pre-assigned functions and pre-formatted, machine-readable templates specifically designed for that purpose. OMB did not design the public apportionment database and its internal systems with functionality to post bespoke spend plans, with structures and formats varied by agency, in a machine-readable format – let alone within two business days of that spend plan's approval.

8. In spite of these practical hurdles, OMB has endeavored in good faith to comply with the orders of this Court. Since the Court's January 28th Order, OMB has conducted initial retrospective reviews of all apportionments from March 24, 2025 to the date of the order to identify binding A footnotes incorporating an agreed-upon spend plan by reference. Now that these incorporated spend plans are subject to publication, OMB staff have been and continue to be actively reviewing these finalized spend plans, in part, to prevent the inadvertent disclosure of sensitive information contained in these documents, such as source selection information or sensitive but unclassified information. According to systems developed after the Court's January 28th Order, OMB staff manually upload the spend plan to an internal database running in tandem with the established apportionment system, wherein OMB components review the uploaded spend plan. Once reviewed, contractors manually review the spend plans for 508 compliance and readability. Upon completion of this process, OMB staff manually

promote the reviewed spend plans for publication of the relevant document on the public apportionment database.

OMB has been actively working to ensure such incorporated spend plans are expeditiously published on the public apportionment database in an adequate format to maintain data and informational integrity while satisfying the Court's publication requirements. To date, incorporated spend plans from March 24, 2025 onward have been posted to date in a PDF format because of the wide variation in format, structure, and contents across all spend plans and because the public apportionment database does not include pre-assigned functions or preformatted templates for the incorporated spend plans.

9.    Plaintiffs ask the Court to assess OMB's progress in compliance with the Court's order according to the number of approved apportionment actions during the covered period that included an incorporated-by-reference spend plan footnote. However, the number of approved apportionment actions that include an incorporated-by-reference spend plan footnote is not an accurate metric for OMB's compliance with the Court's January 28th Order, nor OMB's progress in publishing incorporated spend plans. Agreement on a spend plan is a discrete event separate from the overarching apportionment action represented by a Standard Form 132 ("SF-132"), and the approval of a spend plan and the approval of a requested apportionment routinely occur asynchronously.  Put differently, there may not even be an approved spend plan until well after OMB approves a binding A footnote that incorporates a spend plan by reference. There is also no certainty that there would be an agreed-upon spend plan at the time of a subsequent reapportionment of that account, wherein the incorporating spend plan footnote is carried forward. The number of approved apportionment requests is not specific to the

4

apportionment actions that first incorporate the spend plans by reference, and it does not account for reapportionments that may have subsequently dropped the agreed-upon spend plan requirement upon reapportionment. Rather than assessing OMB's compliance efforts according to an indiscriminate number of approved apportionment requests having an incorporating spend plan footnote, it is more accurate to assess OMB's efforts based according to the number of identified, agreed-upon spend plans and the number of unique accounts (i.e., Treasury Appropriation Fund Symbol, or "TAFS").

10.  To date, OMB has identified 161 agreed-upon spend plans that satisfy one or more binding A footnotes on approved apportionments. Of these, 121 spend plans have been posted on the public apportionment database as of June 5, 2026. OMB has identified 28 spend plans that have not yet been received from the relevant agency. The remaining 12 spend plans are actively being reviewed by OMB staff, in part, to avoid the inadvertent disclosure of sensitive information or other information requiring specific procedures before disclosure.

11.  When counting according to unique account, OMB has identified 212 TAFS that have one or more apportionment actions that include a binding A footnote incorporating an agreed-upon spend plan. Of these accounts, corresponding spend plans have been posted for 131 TAFS to date, of which 21 TAFS correspond to accounts with apportionment actions post-January 28, 2026. OMB is still waiting for the corresponding spend plan from the relevant agency for 73 TAFS. The remaining 8 TAFS have corresponding spend plans that are actively being reviewed by OMB staff, in part, to avoid the inadvertent disclosure of sensitive information or other information requiring specific procedures before disclosure.

12.     OMB has been expeditiously reviewing and publishing previously approved incorporated spend plans on the public apportionment database, all the while also creating an entirely new system and process for clearance and publication of incorporated spend plans prospectively. As noted above, spend plans approved prior to this court's Order featured varied structures and formats, unsuited for quick-turn public disclosure. Creation of these new internal processes on top of an existing, widely used system is a technically complex undertaking that OMB is working on in good faith to complete as expeditiously as possible. In particular, OMB is actively developing procedures that allow incorporated spend plans to be posted more expeditiously, with less staff-level steps, and greater machine readability.

13.     Prospectively, OMB is actively developing new procedures for spend plans incorporated by reference through binding A footnotes. That process will likely include one or more standardized templates and requirements in a machine-readable format that can be automatically published on the public apportionment database with the goal of publication within two days of finalization where possible.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed in Washington, D.C., on the 5th day of June, 2026.

_____

David Rowe